UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

YOTAM MAROM, MIRIAM ROCEK, and DON
FITZGERALD,

                               Plaintiffs,

       -v-

THE CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT ("NYPD") CHIEF OF
DEPARTMENT JOSEPH ESPOSITO, NYPD
DEPUTY INSPECTOR EDWARD WINSKI,
NYPD LIEUTENANT FRANK VIVIANO,
NYPD SERGEANT FIOR BLANCO, NYPD LEGAL
BUREAU OFFICER OLEG CHARNYAVSKY,
NYPD OFFICER MICHAEL GALGANO,
SHIELD NO. 2671, NYPD OFFICER CYNTHIA
BOYLE, SHIELD 06663, NYPD OFFICER STEVEN
VALENTINE, SHIELD 13585, and NYPD
OFFICERS JOHN and JANE DOE # 1 - 15 (The
names being fictitious, as the true names and shield
numbers are not presently known), in their individual
and official capacities,

                           Defendants.

_____

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**Index No. 15-CV-2017 (PKC)(MHD)**

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Gideon Orion Oliver
*Attorney for Plaintiffs*
277 Broadway, Suite 1501
New York, NY  10007
646-263-3495

# TABLE OF CONTENTS

TABLE OF CONTENTS………………………………...………...………………..i

TABLE OF AUTHORITIES…………………………………………...…………..iii

STATEMENT OF FACTS……………………………………………...……………1

ARGUMENT

APPLICABLE PLEADING STANDARDS ………………………..……………1

A.    The Court should not consider the purported charging information contained in the Certificates of Disposition (Exh. C to the Winslow Decl.) in ruling on this motion……………………...3

POINT I

PLAINTFFS' FALSE ARREST CLAIMS ARE ADEQUATELY PLEADED……………………………………………………………………….5

POINT II

PLAINTFFS' EXCESSIVE FORCE CLAIMS ARE ADEQUATELY PLEADED……………………….…………….……………..……15

POINT III

PLAINTIFFS' FIRST AMENDMENT-BASED CLAIMS ARE ADEQUATELY PLEADED …………….……….……….……….……….20

POINT IV

PLAINTIFFS' MALICIOUS ABUSE OF PROCESS CLAIMS ARE ADEQUATELY PLEADED………….……….……. …….…………..…26

POINT V

PLAINTIFFS' DEPRIVATION OF FAIR TRIAL RIGHTS CLAIMS ARE ADEQUATELY PLEADED…………. …….…….……..……28

POINT VI

PLAINTIFFS' *MONELL* AND EQUAL PROTECTION-BASED CLAIMS ARE ADEQUATELY PLEADED …..……………………………32

**POINT VII**

**PLAINTIFFS' EXCESSIVE DETENTION CLAIMS ARE ADEQUATELY PLEADED** ……………………………………………..34

**POINT VIII**

**PLAINTIFFS HAVE ADEQUATELY PLEADED EACH DEFENDANT'S INVOLVEMENT IN INJURING THEM**………………35

**POINT IX**

**DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY** ……………………………………………….............…36

**POINT X**

**IF THE COURT DISMISSES ANY OF PLAINTIFFS' CLAIMS, THE COURT SHOULD DO SO WITHOUT PREJUDICE**………………38

**CONCLUSION**………………………………………………………38

# TABLE OF AUTHORITIES

*Adams v. City of New York*, 993 F.Sup.2d 306 (EDNY 2014)……………………………9

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2008) …………………………………….......1, 2

*Atwater v. City of Lago Vista*, 532 U.S. 318 (2004) ……………………...……….6, 7

*Barham v. Ramsey*, 434 F.3d 565 (D.C. Cir. 2006) ……………………………………8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) …………………………….1, 2

*Bellows v. Dainack*, 555 F.2d 1105 (2nd Cir. 1997) …………………………………19

*Blue Tree Hotels Inc. v. Starwood Hotels & Resorts*, 369 F.3d 212 (2nd Cir. 2004)…..….3

*Boos v. Barry*, 485 U.S. 312 (1988) ……….….….….….….….….….…..…22

*Brodeur v. City of New York*, 2002 WL 4246 (SDNY March 18, 2002) …………....…1

*Broughton v. State*, 37 N.Y.2d 451 (1975) …….….….….….….….….….…7-8

**Brown v. City of New York, 2015 WL 4924395**, (2nd Cir. Aug. 19, 2015)…6, 11, 16, 17

*Bryant v. City of New York*, 404 F.3d 128 (2nd Cir. 2005) ……. …..….…..….…34, 35

*Calamia v. City of New York,* 879 F.2d 1025 (2d Cir.1989) …………………………8, 19

*Carpenter v. City of New York*, 984 F. Supp. 2d 255 (S.D.N.Y. 2013)………9, 13, 15, 36

*Clark v. Community for Creative Non-Violence*, 468 U.S. 288 (1984) …………………21

*Coggins v. Buonaro*, 776 F.3d 108 (2nd Cir. 2015) …………………………………30, 37

*Colon v. City of New York*, 2009 WL 4264462 (EDNY Nov. 25, 2009)…….......…….3, 33

*Conario v. City of New York*, 2006 WL 2015651 (SDNY July 12, 2006) ……......…….29

*Cook v. Sheldon*, 41 F.3d 73 (2nd Cir. 1994) …….….….….….….….…..26, 28

*Cnty of Riverside v. McLaughlin*, 500 U.S. 44 (1991) …….….….….….….….….35

*Davis v. City of New York*, 2007 WL 755190 (EDNY Feb. 15, 2007) …………….....6, 19

*Davis v. City of New York*, 373 F.Supp.2d 322 (SDNY 2005) ……….….….….….….38

*Davis v. Rodriguez*, 364 F.3d 242 (2nd Cir. 2004) ……………………………………..6

*Devenpeck v. Alford*, 543 U.S. 146 (2004) ……………………………………….9

*Dickerson v. Napolitano*, 604 F.3d 732 (2nd Cir. 2010) ………………………………7

*DiFolco v. MSNBC Cable LLC*, 622 F.3d 104 (2nd Cir. 2010) …………..…….……1, 3

*Dinler v. City of New York,* 2012 WL 4513352 (SDNY Sept. 30, 2012) ……………7, 8

*Dorsett v. County of Nassau,* 732 F.3d at 157 (2nd Cir. 2013) …………………………23

*Dotson v. Farrugia,,* 2012 WL 996997 (SDNY Mar. 26, 2012) ………………………18

*Downing v. City of New York*, 2013 WL 5502867 (EDNY Sept. 30, 2013) ……………30

*Escalera v. Lunn*, 361 F.3d 737 (2nd Cir. 2004) ………………………………………36

*Faulkner v. Beer,* 463 F.3d 130 (2d Cir.2006)…… ……………………………………3

*Field Day, LLC v. Cnty. Of Suffolk*, 463 F.3d 167 (2nd Cir. 2006) …………..…………37

*Freeman v. Port Authority*, 243 A.D.2d 409 (1st Dept. 1997) …………………..…….20

*Garcia v. Does*, 779 F.3d 84 (2nd Cir. 2015) ………………………………………36

*Garnett v. City of New York,* 2014 WL 395094 (SDNY Aug. 13, 2014) …...22, 29, 30, 36

*Garnett v. Undercover Officer CO309,* 2015 WL 1539044 (SDNY April 6, 2015)...28, 29

*Gianullo v. City of New York*, 322 F.3d 39 (2nd Cir. 2003)……………………………11

*Goldring v. Zumo*, 2015 WL 148451 (E.D.N.Y. Jan. 12, 2015) ………………………26

*Gomez v. City of New York*, 2007 WL 5210469 (SDNY May 28, 2007) ………………7

*Graham v. Connor*, 490 U.S. 386 (1989) ………………………………………………16

*Griffin v. Crippen*, 193 F.3d 89 (2nd Cir. 1999) ………………………………………19

*Guntlow v. Barbera*, 907 NYS2d 86 (3rd Dept. 2010) ………………………………8

*H.E.R.E. v. City of New York*, 311 F.3d 534 (2nd Cir. 2002) …………………………25

*Hague v. CIO*, 307 U.S. 496 (1939) ………………………………………………24

iv

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ……………………………………………37

*Harvey v. Brandt*, 254 A.D.2d 718 (4th Dept. 1998)……………………………………18

*Henry v. City of New York*, 2003 WL 22077469 (SDNY Sept. 8, 2003) ………………30

*Hershey v. Goldstein*, 938 F. Supp. 2d 491 (S.D.N.Y. 2013) ………………………18, 37

*Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995) …………………………………………38

*Hickey v. City of Seattle,* 2006 WL 3692658 (W.D. Wash. 2006)………………………8

*Higginbotham v. City of New York*, 2015 WL 2212242
    (SDNY May 12, 2015)… …………………………………5, 16, 18, 22, 24, 36, 37

*Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438 (E.D.N.Y. 2012) …………...…26

*Hoffman v. Town of Southampton*, 523 F. App'x 770 (2d Cir. 2013) …………………26

*Holland v. City of Poughkeepsie*, 90 A.D.3d 841 (2nd Dept. 2011) ……………………18

*Jackson v. City of New York*, 939 F.Supp.2d 219 (EDNY 2013). ……….…..…..……36

*Jocks v. Tavernier,* 316 F.3d 128 (2d Cir.2003) …………………………………9, 29

*Johnson v. Doherty*, 713 F. Supp. 69 (S.D.N.Y. 1989) …………………………………19

*Jones v. Parmley*, 465 F.3d 46 (2nd Cir. 2006) ……………………………………21, 22

*Keller v. Sobolewski*, 2012 WL 4863228 (EDNY Oct. 12, 2012) ……………………30

*Kerman v. City of N.Y.,* 261 F.3d 229 (2d Cir.2001) ……………………………………18

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2nd Cir. 1991)…..………………………3

*Landy v. Irizarry*, 884 F. Supp. 788 (S.D.N.Y. 1995) …………………………………18

*Lebowitz v. City of New York*, 2014 WL 772349
    (SDNY Feb. 25, 2014) …………………………………………………12, 14, 25

*Lebowitz v. City of New York*, 606 Fed.Appx. 17
    (2nd Cir. June 2 2015) …………………………………………14, 21, 34, 35

*Lippay v. Christos*, 996 F.2d 1490 (3rd Cir. 1993) ……………………………………38

*Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996)……………………………9

*Mack v. Town of Wakill*, 253 F.Supp.2d 552 (SDNY 2003) ……… .........................… 36

*MacNamara, et al. v. City of New York, et al.,* 2007 WL 3196295
  (S.D.N.Y. Oct. 30, 2007) …… …… …… …… …… …… …… …… …… …31

*Maldonado v. City of New York*, 2014 WL 78714 (SDNY Feb. 26, 2014)……………30

*Manganiello v. City of New York*, 612 F.3d 149 (2nd Cir. 2010) ………………………30

*Maryland v. Pringle*, 540 US 366 (2003) …………………………………………………8

*McKenna v. Wright*, 386 F.3d 432 (2nd Cir. 2004) ………………………………………37

*Meagher v. Safir*, 272 AD2d 114 (1st Dept. 2000) ………………………………………17

*Meagher v. Safir*, 272 AD2d 114 (96 N.Y.2d 32 (2001)………… ……………………...17

*Mikulec v. Town of Cheektowaga*, 909 F.Supp.2d 214 (WDNY 2012)………………6, 7

*Morse v. Fusto*, ___ F.3d ___, 2015 WL 5294862, (2nd Cir. Sept. 11, 2015) …29, 30, 37

*Mejia v. City of New York*, 119 F.Supp.2d 232 (EDNY 2000)…………………………9

*Nibbs v. City of New York*, 800 F.Supp.2d 574 (SDNY 2011) ………………………31

*Nogbou v. Mayrose*, 400 Fed.Appx. 617 (2nd Cir. 2010) ………………………….,.…….3

*Ornelas v. United States*, 517 U.S. 690 (1996)…………………………….,,………….....5

*Osterhoudt v. City of New York*, 2012 WL 4481927 (SDNY Sept. 27,2012)………3, 32

*Ostrowski v. Town of Southold*, 443 F.Supp.2d 325 (EDNY 2006) …………………20

*People v. Balmuth*, 178 Misc.2d 958 (Crim.Ct., N.Y. County 1994) …………………22

*People v. Leonard*, 62 NY2d 404 (1984) ……………………………………………25

*People ex rel. Maxian o/b/o Roundtree v. Brown,* 77 N.Y.2d 422 (1991) ……………35

*People v. Nunez*, 36 Misc.3d 857 (NY City Crim. Ct. 2012…………………12, 13, 14, 25

*Palmer v. Richards*, 364 F.3d 60 (2nd Cir. 2004) ………………………………………37

*Parker v. City of Long Beach*, 563 Fed.Appx. 390 (2nd Cir. April 21, 2014) ……………2

*Paulsen v. County of Nassau*, 925 F.2d 65 (2nd Cir. 1991) …………………………25

*Phelps v. City of New York*, 2006 WL 1749528 (SDNY June 27, 2006) …………23, 28

*Pierre-Antoine v. City of New York*, 2006 WL 1292076 (SDNY May 9, 2006) ………19

*Pluma v. City of New York*, 2015 WL 1623828 (SDNY March 31, 2015) ………….22, 23

*Provost v. City of Newburgh*, 262 F.3d 146 (2nd Cir. 2001). ……………………………36

*Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2227 (June 18, 2015) ………………………26

*Ricciuti v. NY City Transit Authority*, 124 F.3d 123 (2nd Cir. 1997) ……………28, 29, 37

*Roberts v. United States Jaycees*, 468 U.S. 609 (1984) …………………………………21

*Robison v. Via*, 821 F.2d 913 (2nd Cir. 1987) …………………………………………18, 19

*Sash v. United States*, 674 F.Supp.2d 531 (SDNY 2009) ………………………………20

*Savino v. City of New York*, 331 F.3d 63 (2nd Cir. 2003) ………………………10, 26, 27

*Schiller, et al. v. City of New York*,  2008 WL 200021 (January 23, 2008) ……29, 30, 37

*Sforza v. City of New York,* 2009 WL 857496  (SDNY March 31, 2009)...17, 19, 26, 27

*Shamir v. City of New York*, 2014 WL 4291851 (SDNY Aug. 27, 2014) ………………21

*Singer v. Fulton Cnty*, 63 F.3d 110 (2nd Cir. 1995)…… …………………………..........14

*Soares v. Connecticut*, 8 F.3d 917 (2nd Cir. 1993) ……………………………………18

*Spence v. Washington*, 418 U.S. 405 (1974) ……………………………………………21

*Sullivan v. City of N.Y.,* 2011 WL 3806006 (S.D.N.Y. Aug. 29, 2011) ………………18

*Tellier v. Fields*, 280 F.3d 69 (2nd Cir. 2000) …………………………………………37

*Texas v. Johnson*, 491 U.S. 397 (1989) …………………………………………….........21

*Thimmesch v. NYC*, 2013 U.S. Dist. LEXIS 53587 (SDNY April 9, 2012) ………12, 15

*Tolan v. Cotton*, 134 S.Ct. 1861 (2014) …………………………………………….........1

*Tomaino v. State of New York*, 22 Misc.3d 1013 (NY Ct. Claims 2008) ……………...20

*Trueman v. New York State Canal Corp.*, 451 Fed. Appx. 27 (2nd Cir. 2011) ……...……7

*United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008)…. ……………………11

*United States v. Colon*, 240 F.2d 130 (2nd Cir. 2001) …..……………….…………….11

*United States v. Cruz*, 834 F.2d 47 (2nd Cir. 1987) …………………..……………11

*United States v. Shareef*, 100 F.3d 1491 (10th Cir. 1996) ………………………….11

*Vega v. Hempstead Union Free School Dist.*, 2015 WL 5127519
(2nd Cir. September 2, 2015…………………......…………………………….2

**Waller v. City of New York, 933 NYS2d 541 (Sup.Ct.NY Cty. Nov. 15, 2011)**……...25

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989) ……………………………….26

*Weyant v. Okst,* 101 F.3d 845 (2d Cir.1996)…………......…….………………….5

*Wu v. City of New York*, 934 F.Supp. 581 (SDNY 1996)……………………………7

*Ybarra v. Illinois*, 444 U.S. 85 (1979) …………………………………………8

*Zahrey v. Coffey*, 221 F.3d 342 (2nd Cir. 2000) ……………………………………29

*Zellner v. Summerlin*, 494 F.3d 344 (2nd Cir. 2007) …………………………...2, 9, 11

## STATE STATUTES

New York State Criminal Procedure Law §140.10(1)(a) ………………………...………6

New York State Criminal Procedure Law §140.10(1)(b) …………………………....6

New York State Criminal Procedure Law §140.20…………………………………….4

New York State Criminal Procedure Law §140.20(1) ……………………………….35

New York State Criminal Procedure Law §160.10…………………………………….4

New York State Penal Law § 10.00(1) ………………………………………...………6

New York State Penal Law § 10.00(3) ………………………………………………6

New York State Penal Law § 10.00(6) ………………………………………………6

New York State Penal Law § 140.00(5) …………………………………………12, 13

New York State Penal Law § 240.20(6) …………………………………………12

New York State Penal Law § 195.05……………………………………………12

## **FEDERAL STATUTES**

Fed.R.Civ.P. 8(a) ………………………………………………………….......…1

Fed.R.Civ.P. 8(a)(2)….. …………………………………………………………..1

Fed.R.Civ.P. 8(e) ………………………………………………………….......…1

Fed.R.Civ.P. 12(b)(6) ………………………………………………………….....1

**STATEMENT OF FACTS**

The First Amended Complaint and the September 15, 2015 Declaration of Gideon

Orion Oliver set forth the relevant facts, very few of which are cited to or repeated only

as necessary below. This MOL adopts the abbreviations set forth in the Oliver Dec.

**ARGUMENT**

**APPLICABLE PLEADING STANDARDS**

Under Fed.R.Civ.P. 8(a), a plaintiff need only plead "a short and plain statement

of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).

Additionally, under Fed.R.Civ.P. 8(e), "[p]leadings must be construed so as to do

justice." Fed.R.Civ.P. 8(e). Against that backdrop, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2008)

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The allegations must

"allow the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id*.

"In ruling on a motion pursuant to Fed.R.Civ.P. 12(b)(6), the duty of a court "is

merely to assess the legal feasibility of the complaint, not to assay the weight of the

evidence which might be offered in support thereof." *DiFolco v. MSNBC Cable LLC*,

622 F.3d 104, 113 (2nd Cir. 2010) (citation omitted). In considering defendants' motion,

the Court "must accept the material facts alleged in the complaint as true and construe all

reasonable inferences in plaintiff's favor." *Brodeur v. City of New York*, 2002 WL 4246,

at *2 (SDNY March 18, 2002) (internal citations omitted); *see also Tolan v. Cotton*, 134

S.Ct. 1861 (2014) (reversing summary judgment where Court had failed properly to draw

inferences in plaintiff's favor); *Parker v. City of Long Beach*, 563 Fed.Appx. 39, at *40 (2nd Cir. April 21, 2014) (Amended Summary Order) (Court was required to view evidence in plaintiff's favor "[a]bsent incontrovertible evidence 'utterly discredit[ing]' [plaintiff's] position," *citing Zellner v. Summerlin*, 494 F.3d 344, 371 (2nd Cir. 2007)).

"While 'detailed factual allegations' are not required, 'a formulaic recitation of the elements of a cause of action will not do.' *Twombly,* 550 U.S. at 555. At the same time, the court must assume the factual allegations in the complaint to be true, 'even if [they are] doubtful in fact,' *id.,* and a complaint may not be dismissed 'based on a judge's disbelief of a complaint's factual allegations.'" *Vega v. Hempstead Union Free School Dist.*, 2015 WL 5127519, at *11 (2nd Cir. September 2, 2015) (pointing out "several considerations" that "guide the inquiry" about "what 'plausibility' means" in the context of reversing grant of dismissal in retaliation and discrimination case). In determining the plausibility of plaintiffs' claims, the Court must "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "Of course, the court must proceed at all times in a fair and deliberative fashion, alert to any unconscious bias that could affect decisionmaking." *Vega*, 2015 WL 5127519, at *11.

If the allegations in the pleadings sufficiently "raise a right to relief about the speculative level," dismissal is inappropriate. *Twombly*, 550 U.S. at 555. As long as there is enough factual matter to "'nudge[] [plaintiffs'] claims… 'across the line from conceivable to plausible,'" the case should proceed to discovery. *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570). Thus, a Rule 12 motion should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief." *Nogbou v. Mayrose*, 400 Fed.Appx. 617, 619 (2nd Cir. 2010) (citation omitted).

In addition to the facts in the FAC, the Court "may consider . . . documents attached as exhibits, and documents incorporated by reference in the complaint," *Difolco*, 622 F.3d at 111, as well as "matters of which judicial notice may be taken," *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2nd Cir. 1991), including, where appropriate, other "complaints filed in…court," *Blue Tree Hotels Inc. v. Starwood Hotels & Resorts*, 369 F.3d 212, 217 (2nd Cir. 2004); *see also Osterhoudt v. City of New York*, 2012 WL 4481927, at *2 (SDNY Sept. 27, 2012), *citing Colon v. City of New York*, 2009 WL 4264462, at *2 (EDNY Nov. 25, 2009) ("denying motion to dismiss where plaintiff's allegation that officers manufactured drug evidence plus court's 'knowledge of cases in other federal and state courts' stated plausible *Monell* claim").

> Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint. ... However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer,* 463 F.3d 130, 134 (2d Cir.2006). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Id.*

*DiFolco,* 622 F.3d at 111 (internal citation omitted).

### A. The Court should not consider the purported charging information contained in the Certificates of Disposition (Exh. C to the Winslow Decl.) in ruling on this motion

In this case, defendants urge the Court to accept certain "facts" favorable to their positions purportedly memorialized in Certificates of Disposition obtained by defendants with releases from plaintiffs provided to them under the 1983 Plan.  See, e.g., Winslow Dec. at Paragraph 3; Defs' MOL at pp. 3, 23.

As set forth in the Oliver Dec., those documents were not provided to plaintiffs by defendants before defendants' motion was filed. After receiving the Fitzgerald Certificate of Disposition, plaintiffs' counsel conducted an investigation with Mr. Fitzgerald's defense counsel in the underlying criminal court case, as a result of which plaintiffs concede that Mr. Fitzgerald's case resolved with a guilty plea, without any factual allocution, to a generic, non-criminal Disorderly Conduct violation. *See* Oliver Dec.

Beyond establishing that the other plaintiffs accepted Adjournments in Contemplation of Dismissal to resolve their cases – facts the Court need not look outside the FAC for – it is not clear what permissible inferences defendants want the Court to draw from the Certificates of Disposition. Defendants claim that Mr. Fitzgerald's Certification of Disposition "is fully dispositive of the claims related to his arrest" and rely on the Certificates of Disposition for their arguments that because plaintiffs "were charged with misdemeanors" there was no requirement that an arresting officer personally observe the violating conduct, *see, e.g.,* Defs' MOL at pp. 5; *see also id.* at 23 (apparently relying on the Certificates of Disposition to establish that plaintiffs were "ineligible to receive summonses on [the] scene [of]their arrests] under CPL 140.20 and 160.10, which mandate fingerprinting for misdemeanor arrests"); see also Winslow Aff. at Paragraph 3.

However, as stated in the Oliver Dec., plaintiffs are withdrawing Mr. Fitzgerald's false arrest claim. Additionally, as seen below, the FAC adequately pleads lack of probable cause, and defendants cannot rely on the Certificates of Disposition to establish that there was probable cause to arrest any plaintiff for any violation or offense at the time the plaintiff was arrested. Beyond that, even if an individual officer had probable

cause to arrest any individual plaintiff for a non-criminal violation, such probable cause would not excuse defendants of the other misconduct complained of herein (such as, but not limited to, falsifying evidence related to the arrest and detaining a person in custody while doing so), and there are questions of material fact about which discovery should be taken regarding the circumstances surrounding plaintiffs' arrests, arrest processing, and prosecutions.

Based on the foregoing, the Court should not consider the Certificates of Disposition for the truth of the "facts" advanced by defendants or related inferences because they were not incorporated into or integral to the FAC and because the "facts" defendants urge the Court to take judicial notice of related to plaintiffs' "arrest charges" are in dispute.

## POINT I

**PLAINTFFS' FALSE ARREST CLAIMS ARE ADEQUATELY PLEADED**

Defendants argue at pp. 3-6 and 10 of their MOL that there was at least arguable probable cause to arrest plaintiffs, or defendants were entitled to qualified immunity.[1]

The Fourth Amendment to the United States Constitution protects the "right of an individual to be free from unreasonable seizures." *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). This Court has recently set forth the relevant Fourth Amendment standards related to making out a false arrest claim, including that probable cause to arrest for any offense is an absolute defense to a false arrest claim. *See Higginbotham v. City of New York*, 2015 WL 2212242, at *2 (SDNY May 12, 2015). Against that backdrop, plaintiffs

---

[1]     Point IX below address defendants' qualified immunity arguments related to all of plaintiffs' claims.

5

have adequately pleaded that defendants intentionally confined plaintiffs without their consent, that plaintiffs were conscious of the confinement, and that the confinement was not otherwise privileged.

The only element of their false arrest claims defendants truly seek to attack is whether plaintiffs' arrests were otherwise privileged because defendants had probable cause to arrest them. In this connection, probable cause is a "mixed question of law and fact." *Ornelas v. United States*, 517 U.S. 690, 696 (1996). "In analyzing [Section[ 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." *Davis v. Rodriguez*, 364 F.3d 242, 433 (2nd Cir. 2004). In this connection, "New York distinguishes between an 'offense' and a 'crime.' For an 'offense,' which includes a 'violation,' N.Y. Penal Law [Sections] 10.00(1), (3), a police officer may arrest a person 'when he or she has reasonable cause to believe that such person has committed such offense in his or her presence," N.Y. Crim. Proc. Law [Section] 140.10(1)(a)." *Brown* at *17 FN 9; see also id. at *5 (these provisions require "an officer's personal observation of facts alleged to support an arrest for a violation, such as disorderly conduct"). In contrast, "[f]or a 'crime,' which means a 'misdemeanor or a felony,' N.Y. Penal Law [section] 10.00(6), a police officer may arrest a person 'when he or she has reasonable cause to believe that such has committed such crime, whether in his or her presence or otherwise,' N.Y. Crim. Proc. Law [Section] 140.10(1)(b)." *Id*.

Relying on *Atwater v. City of Lago Vista*, 532 U.S. 318, 324 (2004) and *Mikulec v. Town of Cheektowaga*, 909 F.Supp.2d 214, 225 (WDNY 2012), defendants argue that "state criminal procedure law is of no consequence, or, at best, not a clearly established

pre-requisite to a finding of probable cause." However, as *Mikulec* itself points out,

*Atwater* does not stand for the proposition that state law is of "no consequence" to Fourth

Amendment analysis, but rather explicitly states that "an arrest might be considered

unreasonable under the Fourth Amendment if the officer was not present when an alleged

minor offense occurred." *Mikulec*, 909 F.Supp. at 225 (*citing Atwater*, 532 U.S. at 340, n.

11) (noting that the *Atwater* majority opinion "scrupulously and consistently reminded its

readers that the criminal offense at issue was committed in the officer's presence" and

that "[t]he word 'presence' … appears 22 times"). In this case, plaintiffs have sufficiently

alleged that they were not arrested in defendants' "presence" for probable cause

purposes.

Moreover, as it is undisputed that plaintiffs' arrests were made without a judicial

warrant. When "an arrest is not made pursuant to a judicial warrant, the [government] in

a false arrest case bears the burden of proving probable cause as an affirmative defense."

*Dickerson v. Napolitano*, 604 F.3d 732, 751 (2nd Cir. 2010) (citing *Broughton v. State*,

37 N.Y.2d 451, 458 (1975)), *cited in Dinler v. City of New York,* 2012 WL 4513352, at

*3 (SDNY Sept. 30, 2012); *see also Trueman v. New York State Canal Corp.,* 451 Fed.

Appx. 27, 29 (2nd Cir. 2011) (Unreported Opinion) (citing cases); *Gomez v. City of New*

*York*, 2007 WL 5210469, at *15 (SDNY May 28, 2007) (same) (citing *Wu v. City of New*

*York*, 934 F.Supp. 581, 586 (SDNY 1996).

Under New York law, as well as federal precedent interpreting the Fourth

Amendment, an arrest that is made without a judicial warrant is "presumptively

unlawful." *Trueman v. New York State Canal Corp.,* 451 Fed. Appx. 27, 29 (2nd Cir.

2011) (Unreported Opinion) (citing *Guntlow v. Barbera*, 907 N.Y.S.2d 86, 90 (3rd Dept. 2010)). *See also Broughton*, 37 N.Y.2d at 458.

There is no such thing as "group" probable cause, even (and perhaps especially) in the protest context. *See, e.g, Dinler,* 2012 WL 4513352 at *3-6. "Importantly, probable cause must be particular to the individual being arrested," and the requirement that there be individualized, articulable probable cause to arrest a person "cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another." *Dinler*, 2012 WL 4513352 at *3 (citing *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)); *see also Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006) (same); *Hickey v. City of Seattle,* 2006 WL 3692658, *7 (W.D. Wash. 2006) (same).

The Supreme Court has made clear that the "'substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that belief of guilt must be particularized with respect to the person searched or seized.'" *Dinler*, 2012 WL 4513352 at *3 (quoting *Maryland v. Pringle*, 540 US 366, 370-71 (2003) (internal quotations and citations omitted). Thus, at the time of the arrest, the police must have "knowledge or trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed *by the person to be arrested*." *Calamia v. City of New York,* 879 F.2d 1025, 1032 (2d Cir.1989) (emphasis added). To conclude otherwise "would erode the Fourth Amendment's fundamental requirement that searches and seizures be based on individual suspicion of wrongdoing." *Hickey*, 2006 WL 3692658 at *10.

Where, as here, there are disputed facts about whether there was probable cause to arrest, they are ultimately for a jury to decide. *See, e.g., Zellner*, 494 F.3d at 368 (citing cases). Because "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer **at the time of the arrest**." *Devenpck v.* Alford, 543 U.S. 146, 152 (2004) (emphasis added)," it is "axiomatic that subsequently discovered evidence cannot be used to cure an arrest that was made without probable cause." *Mejia v. City of New York*, 119 F.Supp.2d 232, 253 (EDNY 2000).

Thus, "the Second Circuit has stated that, '[a] court 'must consider [only] those facts available to the officer at the time of the arrest and immediately before it,'' when considering whether an officer has probable cause to arrest. … Thus, in the context of false arrest and malicious prosecution, courts have rejected evidence that arose *subsequent* to an arrest or the initiation of a prosecution as probative of probable cause." *Adams v. City of New York*, 993 F.Sup.2d 306, 328 (EDNY 2014) (internal citations omitted) (citing cases).

> Under New York law, "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." ... In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact. ... The New York Court of Appeals has noted that "the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." ...

*Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996), *amended* (May 21, 1996) (internal citations omitted); see also *Carpenter v. City of New York*, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013), *certificate of appealability denied* (Feb. 13, 2014) (an "officer may not "deliberately disregard facts known to him which establish" an exculpatory defense. *Jocks v. Tavernier,* 316 F.3d 128, 136 (2d Cir.2003). Indeed, an

officer's awareness of the facts supporting an exculpatory defense may eliminate probable cause. *Id.* at 135.")

Against that backdrop, selectively reading and citing the FAC, defendants argue that plaintiffs have alleged merely conclusory allegations, not sufficient facts, to allow the plausible inference that they were falsely arrested. *See, e.g.,* Defs' MOL at pp. 3-4, *citing Savino v. City of New York*, 331 F.3d 63, 75 (2nd Cir. 2003) for the proposition that "Plaintiffs must plead sufficient facts to allow the Court to infer that their 'confinement was not otherwise privileged.'" However, plaintiffs have clearly done so. For example, the FAC alleges that, on March 17, 2012, plaintiffs Yotam Marom, Miriam Rocek, and Don Fitzgerald were each participants in OWS who were lawfully present in Zuccotti Park participating in a First Amendment assembly on the six-month anniversary of OWS, when the NYPD raided Zuccotti Park and made mass arrests. FAC Paragraphs 2, 46, 149, 151-152, 157, 175, 196. Each plaintiff saw a large number of police officers enter the park, after which they were approached, forcibly arrested, and eventually transported to the NYPD's Midtown South Precinct. *See generally,* FAC Paragraphs 158-162 (Marom), 176-188 (Rocek), and 197-200 (Fitzgerald). Those allegations, taken as true in the light most favorable to plaintiffs, coupled with the other factual allegations in the FAC and reasonable inferences that the Court can draw therefrom, adequately establish the elements of false arrest, including lack of probable cause, for pleading purposes.

In this connection, defendants briefly invoke the collective or imputed knowledge doctrine for the proposition that "to the extent any one defendant officer relied upon information obtained from any other officers or sources, the claims against them would

be subject to dismissal under the fellow officer rule." Defs' MOL at p. 6. As the Second

Circuit has recently stated,

> under the "collective or imputed knowledge doctrine," *Zellner v. Summerlin*, 494 F.3d 344, 369 (2nd Cir. 2007), "'an arrest . .. is permissible where the actual arresting . . . officer lacks the specific information to form the basis for probable cause … but sufficient information to justify the arrest … was known by other law enforcement officials initiating … the investigation.'" *Id.* (quoting *United States v. Colon*, 240 F.2d 130, 135 (2nd Cir. 2001)), and other officers "have communicated the information they possess individually, thereby pooling their collective knowledge to meet the probable cause threshold." *United States v. Chavez*, 534 F.3d 1338, 1345 (10th Cir. 2008).

*Brown* at *4.

However, where, as here, other officers have not communicated information to

the arresting or arrest processing officer sufficient to establish probable cause to arrest or

prosecute a person, the collective knowledge doctrine cannot create a *post hoc* shield for

an arrest that was otherwise unlawful because no officer observed the arrestee commit a

violation. *See, e.g, Zellner*, 494 F.3d at 375 (where police officer had neither given lawful

dispersal order to arrestee, that the arrestee disregarded, at the time of arrest, observations

made after the time of arrest could not create probable cause); s*ee also United States v.

Cruz*, 834 F.2d 47, 51 (2d Cir. 1987) (collective knowledge doctrine applied only to

officers who were in communication with each other); *Gianullo v. City of New York*, 322

F.3d 139, 142-143 (2d Cir. 2003) (reversing grant of summary judgment, holding

collective knowledge doctrine inapplicable without evidence the arresting officer(s) had

received a communication from another officer); *United States v. Shareef*, 100 F.3d 1491,

1504 & n. 5 (10th Cir. 1996) (declining to extend collective knowledge doctrine where

evidence showed officers had not communicated with each other; "'[i]nformation

scattered among various officers in a police department cannot substitute for possession of the necessary facts by a single officer related to the arrest'").

Beyond that, it is unclear based on defendants' papers which offenses the plaintiffs are alleged to have committed in the presence of defendants such that defendants had probable cause. In this connection, citing to *Thimmesch v. City of New York*, 2013 U.S. Dist. LEXIS 53587 (SDNY April 9, 2012), and claiming that the Court there found "probable cause arising out of the same arrest or conduct," defendants claim there was probable cause for plaintiffs' arrest for "the offense of trespass, as a matter of law." Defs' MOL at p. 4. Defendants also cite *People v. Nunez*, 36 Misc.3d 172 (NY Crim. Ct. 2012) and *Lebowitz v. City of New York*, 2014 U.S. Dist. LEXIS 25515, *9 (SDNY 2014) for the proposition that "the arrests under Plaintiffs' circumstances in the park were sufficient to sustain the charges and probable cause absolutely existed for their arrest" and that "[t]he Courts later affirmed the propriety of the arrests in Zuccotti Park for violating the park rules." Defs' MOL at p. 10.

Beyond that, although, as seen above, the FAC has established, for pleading purposes, the lack of probable cause for their arrests, plaintiffs briefly address each of the cases cited by defendants as well as the offenses discussed in those cases below.

*Nunez* - a case arising from a criminal prosecution arising from the NYPD's November 15, 2011 late-night raid on Zuccotti Park to evict OWS - considered the facial sufficiency of a first-party complaint alleging that the deponent NYPD officer had observed the defendant violate PL Section 140.00(5) (violation-level trespass), PL Section 240.20(6) (Disorderly Conduct, a violation) and PL Section 195.05 (Obstruction of Governmental Administration in the Second Degree ("OGA").

Under New York law, in order to be guilty of trespass on a premises which are at the time open to the public, "a person must defy a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person." *See* PL Section 140.00(5). "An individual accused of criminal trespass may raise as a defense that he 'honestly believe[d] that he [wa]s licensed or privileged to enter.' … It is generally left to a jury to assess the credibility of this defense." *Carpenter*, 984 F.Supp.2d at 265 (internal citations omitted). Defiance of a lawful order to disperse, given after a person congregates with two or more others and creates or recklessly creates the risk of serious public ramifications that go well beyond mere inconvenience, are also required to establish a Disorderly Conduct violation. The prosecutor alleged that purported physical acts involved in refusing to leave the park interfered with the police official function of clearing the park to support the OGA charge's requirements that a person who engages in OGA must use force in efforts to prevent the performance of an official function.

With respect to the trespass charges related to the eviction, accepting the factual allegations in the accusatory instrument it was considering as true – including allegations that there were dispersal orders being given over loudspeakers and bullhorns as well as circulated on paper to occupants of Zuccotti Park for hours, which the *Nunez* plaintiff was allegedly observed defying by the alleged arresting officer - and construing those allegations in light of the applicable facial sufficiency principles, the *Nunez* Court allowed the trespass charge to proceed, noting "that the prosecution [would] have a difficult case to prove an actual intent to trespass … due to the many complexities of the eviction." *Nunez* at *183. With those same reservations, the Court also relied on the

deponent officer's allegations that he observed the defendant "locking arms with others" and "tighten[ing] his arms to prevent the NYPD from removing himself and other persons" in sustaining both the Disorderly Conduct and OGA charges. *Id*. at 184-185.

The FAC in this case does not allege that defendants gave lawful, clearly communicated dispersal orders and that plaintiffs refused to comply with them after a reasonable opportunity to do so. Because the Court must accept the factual allegations in the FAC, not defendants' version of events, as true, *Nunez* does not compel dismissal of plaintiffs' claims. Rather, plaintiffs should be entitled to create a record regarding the circumstances leading up to their arrests, including whether they were given lawful dispersal orders and meaningful opportunities to comply with them.

Defendants' reliance on *Lebowitz* is also misplaced. The plaintiffs in that case were arrested after allegedly violating purportedly clearly posted park rules prohibiting lying down, by lying down, and on the complaint of a security guard whose authority to exclude them for violating the rule was established through discovery, such that the Court's opinion was based on "undisputed evidence." *See, e.g., Lebowitz v. City of New York*, 2014 WL 772349, at *1 (SDNY Feb. 25, 2014) *(Lebowitz I*'). Under those circumstances, the District Court found that, where the police were entitled to rely on the complaint of a security guard whom they recognized and knew had authority to exclude the plaintiffs that he had withdrawn their permission to be in the park and that he had personally given plaintiffs an order to depart, "absent circumstances that give doubt as to the [security guard's] veracity." *Lebowitz I* at *3-4, *quoting Singer v. Fulton Cnty*, 63 F.3d 110, 118 (2nd Cir. 1995); *see also Lebowitz v. City of New York*, 606 Fed.Appx. 17, 18 (2nd Cir. June 2 2015) (Summary Order) ("*Lebowitz II*") (same). Where, however,

circumstances give doubt as a complainant's veracity, or where there may be "a material dispute of fact regarding the officers' knowledge of conduct supporting the elements of the crime of trespass," *see Carpenter*, 984 F.Supp.2d at 265, dismissal is inappropriate.

Finally, to the extent that defendants attempt to rely on allegations or purported facts set forth in *Thimmesch* or their recently-submitted summary judgment papers in *Caravalho*, as set forth in their pre-motion letter opposing defendants' application to move to dismiss, plaintiffs vigorously contest the facts set forth in the *Thimmesch* pleadings and relied upon by the Court in that case, and plaintiffs are opposing summary judgment in *Caravalho*, their summary judgment papers being due before the end of this month. It would therefore not be appropriate for the Court to rely on *Thimmesch* or on the *Caravalho* papers in connection with the present motion to dismiss.

Rather, in this case, the Court must accept all of the allegations in the FAC – not defendants' version of events – as true. Those allegations do not establish that any plaintiff refused any lawful dispersal order, and plaintiffs contest whether any purported orders defendants may characterize as such were lawful, clearly communicated, and whether plaintiffs had a reasonable opportunity to comply with them before plaintiffs'.

On the face of the FAC, plaintiffs are entitled to discovery related to their false arrest claims. Dismissal of plaintiffs' false arrest claims at this juncture is therefore inappropriate.

## POINT II

### PLAINTIFFS' EXCESSIVE FORCE CLAIMS ARE ADEQUATELY PLEADED

Defendants claim that the force used in arresting plaintiffs was objectively reasonable, and that plaintiffs' failure to provide proof of medical treatment or "any long-

lasting injuries as a result of the force used to affect their arrests" establishes as a matter of law that the force used in arresting them and in connection with applying plastic flex-cuffs to them for what plaintiffs allege was an extensive period of time was *de minimis*. Defs' MOL at pp. 6-9.

However, the FAC adequately describes facts related to plaintiffs' arrests, handcuffing, and detentions, based on which a jury could determine that defendants used excessive force against them. See, e.g., FAC Paragraphs 158-162 (Marom); 176-188 (Rocek); 197-200 (Fitzgerald); 228-233 (cuffing generally).

This Court recently analyzed an excessive force claim based on force used during an arrest in a protest context and related tight cuffing claims in *Higginbotham*. "A section 1983 false arrest claim arising in the context of an arrest is analyzed under Fourth Amendment principles." *Higginbotham* at *5, *citing Graham v. Connor*, 490 U.S. 386, 394 (1989). "To prevail, the plaintiff must show that the defendants' use of force was objectively unreasonable 'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id. quoting Graham*, 490 U.S. at 397. Moreover,

> [d]etermining excessiveness requires 'a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake … [which] requires careful attention to the facts and circumstances of each particular case, including' the following three factors:
> 1.    '[T]he severity of the crime at issue,'
> 2.    'whether the suspect poses an immediate threat to the safety of the officers or others,' and
> 3.    'whether he is actively resisting arrest or attempting to evade arrest by flight.'

*Brown* at *5 (reversing grant of summary judgment on excessive force claim), *quoting Graham*, 490 U.S. at 396.

In this case, because plaintiffs have adequately pleaded that there was no probable cause for any plaintiff's arrest and subsequent detention during which they were subjected to handcuffing that was too tight and applied for too long under the circumstances, they have sufficiently established for pleading purposes that the force used in connection with arresting and detaining them was *per se* excessive.

Preliminarily, when a police officer is not authorized to make an arrest, the officer is not authorized to use *any* force on a person. Under New York law, when the encounter "culminated in the unlawful arrest…any force used was excessive." *Meagher v. Safir*, 272 AD2d 114, 115 (1st Dept. 2000), *modified on other grounds*, 96 N.Y.2d 32, 40 (2001).

Beyond that, even assuming, *arguendo*, that there was probable cause for each plaintiff's arrest, and that some uses of force against plaintiffs ere therefore authorized, the existence of probable cause to make an arrest does not justify a use of force that is excessive under the circumstances.

As the Second Circuit's recent decision in *Brown*, at *7 reemphasized, particularly where, as here, "the severity of the [alleged] crime is unquestionably slight," the plaintiffs "posed no threat whatsoever to the safety of the officers or others," and were "not fleeing, …nor physically attacking an offer, … nor even making a move than an officer could reasonably interpret as threatening an attack," it is appropriate to "leave[] the factual determination of excessiveness to a jury, whose collective common sense, informed by their life experiences, may well exceed that of all members of [the] panel." *Brown*, at *7; *see also, e.g., Sforza v. City of New York,* 2009 WL 857496, at *15 (SDNY March 31, 2009) ("A plaintiff need not demonstrate serious injury to prevail in an

excessive force claim; bruising and other nonpermanent injuries are sufficient" (citing cases)); *Holland v. City of Poughkeepsie,* 90 A.D.3d 841, 844, (2nd Dept. 2011) ("Because of its intensely factual nature, the question of whether the use of force was reasonable under the circumstances is generally best left for a jury to decide") (declining to dismiss excessive for claims predicated on use of TASER to restrain plaintiff); *Harvey v. Brandt*, 254 A.D.2d 718, 718 (4th Dept. 1998) ("In this case, as in excessive force cases generally, 'the fact intensive inquiry of whether a particular use of force was reasonable is best left for a jury to decide") (citing *Landy v. Irizarry*, 884 F. Supp. 788, 797 (S.D.N.Y. 1995) (same) (citing cases).

    Moreover, although the Second Circuit has held that handcuffing is reasonable in almost all arrest situations, the Court has rejected "the principle that handcuffing is *per se* reasonable…. In determining whether the force used to effect a particular seizure is reasonable, a court must evaluate the particular circumstances of each case." *Soares v. Connecticut*, 8 F.3d 917, 921 (2nd Cir. 1993).

> Although "a line of cases have held that minor injuries that result from tight handcuffs, such as temporary swelling, inflammation or soreness of an arrestee's wrists, are insufficient on their own to sustain a Fourth Amendment excessive force claim," *Sullivan v. City of N.Y.,* No. 10 Civ. 0038(NRB), 2011 WL 3806006, at *4 (S.D.N.Y. Aug. 29, 2011), the case law also reflects that excessive handcuffing "may constitute use of excessive force," *Dotson [v. Farrugia],* 2012 WL 996997, at *5 [SDNY Mar. 26, 2012)] (citing *Kerman v. City of N.Y.,* 261 F.3d 229, 239–40 (2d Cir.2001)); *see also Robison,* 821 F.2d at 924 (noting that a plaintiff can recover for damages for excessive handcuffing even if the injuries are not severe). Ultimately, "[l]ike all excessive force claims, the pivotal question is whether the officer[s'] behavior was objectively unreasonable in light of the circumstances." *Dotson,* 2012 WL 996997, at *5.

*Hershey v. Goldstein*, 938 F. Supp. 2d 491, 519 (S.D.N.Y. 2013).

    *Higginbotham* and the cases cited therein notwithstanding, "the fact that an injury is neither permanent nor severe or that the victim required no medical treatment is not

fatal to a § 1983 claim. *See id.* Rather, when faced with an incident involving a minor injury, a court should assess whether the force used was unreasonable and excessive." *Johnson v. Doherty*, 713 F. Supp. 69, 71 (S.D.N.Y. 1989), citing *Robison v. Via*, 821 F.2d 913, 924 (2nd Cir. 1987) (allegations of pushes, shoves, and arm-twisting causing bruising); *see also Bellows v. Dainack*, 555 F.2d 1105, 1106 and FN1 (2nd Cir. 1997) (trial involving excessive force claim predicated on arm-twisting and punching coupled with a detention that lasted only minutes); *Calamia v. City of New York*, 879 F.2d 1025, 1035 (2nd Cir. 1989) (denying directed verdict for defendants on excessive force claim where plaintiff was rear-cuffed for around five hours).

The extent of the injury is relevant as to damages, but not the legal viability of the claim in the first instance for pleading purposes. *Pierre-Antoine v. City of New York*, 2006 WL 1292076, at *5 (SDNY May 9, 2006) (rejecting defendants' "contention that the absence of medical evidence necessarily dooms an excessive force claim" in a case where an already-subdued person was repeatedly hit); *accord*, *Sforza*, at *15. Against that backdrop, even relatively minor injuries supported only by a plaintiff's testimony and not accompanied by medical proof of injuries can give rise to viable excessive force claims. *See, e.g., Griffin v. Crippen*, 193 F.3d 89, 91-92 (2nd Cir. 1999) (reversing dismissal where "[a]ppellant informed the court that the only evidence he intended to offer in support of his claims was his own testimony and that the only injuries he suffered were a bruised shin and swelling over his left knew"); *Davis v. City of New York*, 2007 WL 755190, at *12 (EDNY Feb. 15, 2007) (denying summary judgment on excessive force claim where plaintiff was kicked in the shoulder while cuffed on the ground, although she "never sought medical treatment and testified that she was only red and sore for a couple

of days") (citing cases holding that "the Court cannot hold that the alleged use of force by an officer can constitute an objectively reasonable use of force as a matter of law"); *Sash v. United States*, 674 F.Supp.2d 531, 539 (SDNY 2009) ("Just as reasonable force is not unconstitutional even if it causes a serious injury, neither does unreasonable force become immunized because it only causes minor injury") (collecting cases involving tackles and pushes); *Ostrowski v. Town of Southold*, 443 F.Supp.2d 325, 342-343 (EDNY 2006) (precluding summary judgment where police rear-cuffed and then struck plaintiff while she was subdued); *Tomaino v. State of New York*, 22 Misc.3d 1013, 1019 (NY Ct. Claims 2008) (grabbing elbow of person in courtroom forcefully, pushing, pulling, and jerking it backwards, constituted excessive force, as, where there was no real resistance, any force was excessive); *Freeman v. Port Authority*, 243 A.D.2d 409 (1st Dept. 1997) (being thrown to the ground, held down with a foot, kicked, and handcuffed for under an hour constituted excessive force warranting punitive damages).

The FAC sufficiently alleges that plaintiffs were arrested without probable cause and that defendants used excessive force in arresting and handcuffing them with excessively tight plastic flex-cuffs for excessive periods of time, pursuant to retaliatory and otherwise unconstitutional policies and practices aimed at OWS, thereby injuring them. Therefore, plaintiffs' excessive force claims should not be subject to dismissal.

## POINT III

### PLAINTIFFS' FIRST AMENDMENT-BASED CLAIMS ARE ADEQUATELY PLEADED

Plaintiffs' First Amendment-based claims are adequately pleaded.

As a threshold matter, defendants argue that plaintiffs do not plausibly allege either that they were engaged in protected speech or conduct, or that the defendants'

actions were caused by plaintiffs' protected speech or conduct. *See, e.g.,* Defs' MOL at pp. 10-11. In support of this argument, defendants cite a single case, in which the purported expressive conduct at issue was camping out overnight and sleeping in Zuccotti Park in violation of posted rules prohibiting camping, where the defendant had testified that his intention was not to engage in protest by sleeping in the park, and where in any event the police who arrested him did not have cause to understand that he was "'engaging in conduct that would reasonably be understood by a viewer to be communicative.'" *See Shamir v. City of New York*, 2014 WL 4291851, at *1 (SDNY Aug. 27, 2014) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 294 (1984)).

The Second Circuit has recently held that two plaintiffs' "act of lying down in Zuccotti Park under the circumstances presented likely demonstrated" the ' 'intent to convey a particularized message … and [] the likelihood was great that the message would be understood by those who viewed it,' ' such that they were engaged in protected expressive conduct." *Lebowitz II*, 606 Fed.Appx. at 17, quoting *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence v. Washington*, 418 U.S. 405, 410-11 (1974)).

The "right to associate for the purpose of engaging in those activities protected by the First Amendment-speech, assembly, petition for the redress of grievances, and the exercise of religion" is constitutionally guaranteed "as an indispensable means of preserving other individual liberties." *Roberts v. United States Jaycees*, 468 U.S. 609, 609 (1984). "'The right of peaceable assembly is a right cognate to . . . free speech and . . . is equally fundamental.'" *Jones v. Parmley*, 465 F.3d 46, 56 (2nd Cir. 2006) (internal citation omitted). "The Supreme Court has declared that the First Amendment protects

political demonstrations and protests-activities at the heart of what the Bill of Rights was designed to safeguard. *See Boos v. Barry,* 485 U.S. 312, 318, … (1988) (calling organized political protest 'classically political speech' which ['operates at the core of the First Amendment).'" *Id*.

Thus, the FAC adequately pleads that plaintiffs were engaged in activities with obvious and protected expressive characters [2] – the classically protected assembly, speech, association, and related conduct involved in their gathering and associating together in Zuccotti Park participating in a First Amendment assembly on the six-month anniversary of OWS. *See, e.g.,* FAC Paragraphs 2, 46-47, 56, 149, 151, 157, 175, 196. *c.f., Pluma*, at *7 (expressing doubt as to whether Pluma had adequately pleaded that he was engaging in activity protected by the First Amendment where there was nothing in the Complaint "actually alleging that Plaintiff went to the park in order to engage in protest activity or assemble as a member of the Occupy Wall Street movement" and therefore implying that allegations that arrestee had been engaging in protest activity or assembling as an OWS member would pass muster for pleading purposes).

Additionally, defendants argue that plaintiffs' First Amendment-based retaliation claims must fail because the defendants' actions were not motivated or substantially caused by plaintiffs' exercise of protected rights. In this connection, ""'[a] lack of probable cause generally crates an inference of malice,'' . . . and nothing in the complaint rebuts that inference as a matter of law." *Higginbotham* at *5 (citing cases); *see also Garnett I* at *11 ("Furthermore, under both Second Circuit and New York State law, a

---

[2]  Article I, Section 8 of the New York Constitution is even "more protective of free expression than the First Amendment." *See*, e.g., *People v. Balmuth*, 178 Misc.2d 958, 969 (Crim.Ct., N.Y. County 1994).

lack of probable cause to prosecute 'generally creates an inference of malice'") (quoting and citing cases); *Phelps v. City of New York*, 2006 WL 1749528, at *5 (S.D.N.Y. June 27, 2006) (with respect to malicious abuse of process claim, "the absence of probable cause is probative of the lack of justification for the officers' actions and the existence of a collateral objective").

Here, the Court can infer that plaintiffs' arrests and the other constitutional harms complained of in the FAC were retaliatory based on the lack of probable cause, coupled with the facts set forth and incorporated by reference into in the FAC related to defendants' policies and practices related to OWS in general and related to OWS in Zuccotti Park in particular, as well as the reasonable inferences to be drawn therefrom. In this connection, the FAC alleges that the No-Summons Policy, the MAPP, and the NYPD's policies and practices related to restricting First Amendment activities related to OWS and Zuccotti Park specifically targeted people whom the police perceived to be exercising expressive rights related to OWS.

Further, defendants argue that plaintiffs have not adequately alleged First Amendment injuries. However, "the Court of Appeals has recently clarified that '[c]hilled speech is not the *sine qua non* of a First Amendment claim" - rather, a plaintiff may show "*either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm.'" *Pluma v. City of New York*, 2015 WL 1623828, at *7 (SDNY March 31, 2015), *quoting Dorsett v. County of Nassau*, 732 F.3d at 157, 160 (2nd Cir. 2013) (emphasis in original); *see also Pluma, at *7* ("Here, although plaintiff pleads little by way of chilling, he clearly alleges a concrete injury caused by the officers' pushing and deploying pepper spray, which satisfies the standard

recently articulated by the Court of Appeals.") Put simply, in this connection, "[b]eing subjected to criminal charges is a cognizable concrete harm." *Higginbotham* at *11 (citing cases) ("Higginbotham has satisfied the third element by pleading that the defendants arrested him and charged him with disorderly conduct").

Because the FAC alleges that plaintiffs were falsely arrested, subjected to excessive force, forced to appear in court, and otherwise injured, plaintiffs have adequately pleaded First Amendment injuries. Based on the foregoing, contrary to defendants' arguments, plaintiffs have adequately pleaded First Amendment-based retaliation claims.

Moreover, defendants argue that Zuccotti Park is "privately owned" and not a traditional public forum for First Amendment purposes. However, the FAC adequately alleges that Zuccotti Park was, at all times relevant herein, such a park. *See, e.g., Hague v. CIO*, 307 U.S. 496, 516 (1939) ("Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.  Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens").

Based on the allegations in the FAC, including the allegations related to the close and conspiratorial relationship between the NYPD and Brookfield Properties, Inc. with respect to OWS and imposing restrictions in OWS in Zuccotti Park, coupled with other facts about the nature of the forum such as the Special Permit, the applicable provisions of New York City's Zoning Resolution requiring that Zuccotti Park be open and accessible to the public on a 24-hour basis, the historic uses of Zuccotti Park, including as

a location compatible with and used for protest activity, and other allegations, coupled with reasonable inferences to be drawn therefore, this Court cannot and should not rule as a matter of law that Zuccotti Park was anything other than a traditional public forum for First Amendment purposes, and nothing in the only case defendants cite in support of their assertions is to the contrary *see, e.g., H.E.R.E. v. City of New York*, 311 F.3d 534, 548 (2nd Cir. 2002) ("Streets, Parks and sidewalks are the paradigms of a public forum…." (internal quotation omitted)); *see also, e.g., Paulsen v. County of Nassau*, 925 F.2d 65, 70 (2nd Cir.,1991) (considering "the nature of the property and its compatibility with expressive activity," the Court ruled that the Nassau Coliseum was a traditional public forum); *see also Waller*, 34 Misc.3d at 374-375 (assuming that "the First Amendment applies to the actions of the owner" of Zuccotti Park "in enacting the rules" complained of in *Waller*, "thus obviating petitioners' request for a hearing as to whether Zuccotti Park is a traditional public forum, or a limited public forum"); *Nunez,* 36 Misc.3d at 179 ("the park is considered 'public space' for purposes of zoning law"); *People v. Leonard*, 62 NY2d 404, 410 (1984) ("[w]hen the public enjoys broad license to utilize certain property, State trespass laws may not be enforced solely to exclude persons from exercising First Amendment or other protected conduct in a manner consistent with the use of the property"); *Lebowitz II* at *17 (agreeing that plaintiffs' act of lying down in Zuccotti Park was expressive enough to warrant First Amendment protection).

Because plaintiffs have adequately alleged that they were engaging in protected conduct in a traditional public forum for First Amendment purposes, and because they have adequately alleged that the regulations on their protected conduct were not content-neutral (for example, because the rules in Zuccotti Park and the NYPD's policies and

practices related to enforcing them "were adopted by the government 'because of disagreement with the message [the speech] conveys,'" *Reed v. Town of Gilbert*, 135 S.Ct. 2218, 2227 (June 18, 2015), quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989), plaintiffs are entitled to proceed to discovery related to their First Amendment-based claims. *See, e.g.,* FAC at Paragraph 242 (listing various First Amendment-based theories); *see also* FAC at Paragraphs 26, 269 (listing and discussing *Monell* theories).

## POINT IV

**PLAINTIFFS' MALICIOUS ABUSE OF PROCESS CLAIMS ARE ADEQUATELY PLEADED**

"[C]ourts look to state law for the elements of a [Section] 1983 claim based on the malicious abuse of process claim." *Sforza* at *16 (citing *Cook v. Sheldon*, 41 F.3d 73, 80 (2nd Cir. 1994)). Under New York law, a valid malicious abuse of process claim exists against "a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2nd Cir. 2003) (internal citation omitted).

With respect to the first prong, it is indisputable that defendants employed regularly issued legal process, including plaintiffs' arrests and the issuance of DAT's and/or criminal court informations and/or supporting depositions, against plaintiffs. *See, e.g., Goldring v. Zumo*, 2015 WL 148451, at *2 (E.D.N.Y. Jan. 12, 2015) (appearance tickets and arrests are such "legal process"); *Hoffman v. Town of Southampton*, 893 F. Supp. 2d 438, 447 (E.D.N.Y. 2012) *aff'd sub nom. Peter L. Hoffman, Lotte, LLC v. Town*

*of Southampton*, 523 F. App'x 770 (2d Cir. 2013) ("Defendants concede that the appearance tickets and criminal court informations at issue constitute regularly issued legal process").

With respect to the collateral objective prong, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution." *Savino,* 331 F.3d at 77. Rather, the defendant must have "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution," *id.,* such that the proper use of legal process, coupled with malice, spite, ill wire, or a retaliatory desire, will not support a malicious abuse of process claim. *Savino*, 331 F.3d at 77-78. In other words, the proper use of legal process based on a malicious motive, such as spite or ill will towards an adversary or as a desire for retaliation, is insufficient to satisfy the "collateral objective" requirement. *See id.* at 77–78. "'[T]he basis of the tort lies in the use of the process to gain a collateral objective, the accomplishment of which the process in question was not intended to secure.'" *Sforza* at *17 (internal citation omitted).

Defendants first claim that plaintiffs' malicious abuse of process claims must fail because plaintiffs' "arrests were made with[] probable cause." *See* Defs' MOL at p. 13, *citing, inter alia*, *Sforza v. City of New York*, 2009 WL 857496, at *17 ("[w]hile a lack of probable cause is not explicitly an element of an abuse of process claim, the presence of probable cause negates a claim for abuse of process, particularly the second element. … Conversely, the lack of probable cause gives rise to an inference of malice, supporting a finding of 'intent to harm'") (internal citations omitted). Thus, a s the above quotation makes clear, probable cause is not an element of the offense.

Beyond that, plaintiffs have adequately pleaded a lack of probable cause, as well as facts based on which, after sufficient discovery, a jury could conclude that defendants employed legal process against plaintiffs to achieve collateral objectives outside the legitimate ends of the process, such as retribution, including by arresting plaintiffs and acting as complainants in and otherwise pursuing plaintiffs' prosecutions after their arrests, thereby subjecting plaintiffs to legal process requiring their appearances in court. *See Cook v. Sheldon*, 41 F.3d 73, 80 (2nd Cir. 1994) ("'collateral objective' includes retribution"); *see also Phelps v. City of New York*, 2006 WL 1749528, at *5 (SDNY June 27, 2006) (Officers who promote or facilitate an arrest and prosecution may be liable for abuse of process. ….Furthermore, the absence of probable cause is probative of the lack of justification for the officers' actions and the existence of a collateral objective") (internal citation omitted).

Therefore, dismissal of plaintiffs' malicious abuse of process claims is not warranted.

### POINT V

**PLAINTIFFS' DEPRIVATION OF FAIR TRIAL RIGHTS CLAIMS ARE ADEQUATELY PLEADED**

The Second Circuit Court of Appeals has clearly held that "[n]o arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee. To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice." *Ricciuti v. NY City Transit Authority*, 124 F.3d 123, 130 (2nd Cir. 1997).

*Garnett v. Undercover Officer CO309,* 2015 WL 1539044 at *1 (SDNY April 6, 2015) ("*Garnett II*"). Last Friday, the Second Circuit reaffirmed that key holding of *Ricciuti*.

*See, e.g., Morse v. Fusto,* ___ F.3d ___, 2015 WL 5294862, at *7 (2nd Cir. Sept. 11, 2015). Relatedly, "[E]veryone possesses the . . . 'right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity.'" *Morse,* 2015 WL 5294862 at *6, *quoting Zahrey v. Coffey,* 221 F.3d 342, 349 (2nd Cir. 2000).

> A plaintiff establishes a denial of the right to fair trial claim by showing that the defendant fabricated evidence that was likely to influence a jury, forwarded that information to prosecutors, and that the plaintiff suffered a deprivation of liberty as a result. *Ricciuti,* 124 F.3d at 129-130. **The existence of probable cause is not a defense.** *Id.* at 130.

*Garnett v. City of New York,* 2014 WL 395094, *12 (SDNY Aug. 13, 2014) ("*Garnett I*") (emphasis added); *see also Jocks v. Tavernier*, 316 F.3d 128, 138 (2nd Cir. 2003) (citing *Ricciuti* for proposition that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial....") (cited in *Garnett II* at *4, *8).

A trial is not a "prerequisite to such a claim. Indeed, the plaintiffs in *Ricciuti* were not tried; the charges against them were dismissed after a number of adjournments." *Schiller, et al. v. City of New York, et al.* 2008 WL 200021 at *9 (January 23, 2008), citing *Ricciuti,* 124 F.3d at 127 and *Conario v. City of New York*, 2006 WL 2015651, at *2-4 (SDNY July 12, 2006) ("the Court noted that a fair trial claim would have been available to a plaintiff who did not proceed to trial"); *accord, Garnett II* at *4 ("In *Ricciuti,* the court did not require that the false information submitted to the prosecutor be used at trial, or even that a trial ever take place—the claim accrues when the officer forwards the false information to the prosecutors").

"The limiting factor appears to be not whether the plaintiff went to trial but whether the falsification caused material harm." *Schiller,* 2008 WL 200021 at *10, *citing Henry v. City of New York*, 2003 WL 22077469, at *4 (SDNY Sept. 8, 2003) ("plaintiff entitled to damages for violation of right to fair trial '[i]f [his] deprivation of liberty' between arrest and release 'was caused by the fabrication of evidence'"). Falsifying affidavits and fabricating evidence

> such as a post-arrest affidavit that contained allegedly false information, *Downing v. City of New York*, No. 11 Civ. 4954 (2013 WL 5502867, at *7 (EDNY Sept. 30, 2013) . . . ("On the facts most favorable to Plaintiff, Officer Gasquez's report was at best inaccurate in a way likely to increase Plaintiff's chances of conviction."); an allegedly false and misleading police report, *Keller v. Sobolewski*, No. 10 Civ. 5198, 2012 WL 4863228, at *4 (EDNY Oct. 12, 2012); and an allegedly false narrative of events preceding plaintiff's arrest provided to another officer, who in turn forwarded the information to the prosecutor, *Maldonado v. City of New York*, No. 11 Civ. 3514, 2014 WL 787814, at *10 (SDNY Feb. 26, 2014)"

all run afoul of the Sixth Amendment. *Garnett I* at *12; *see also Coggins v. Buonaro*, 776 F.3d 108, 113 (2nd Cir. 2015) (no qualified immunity where an allegedly falsified police report "laid the groundwork" for the prosecution).

"Information may be 'false' if material omissions render an otherwise true statement false." *Morse v. Fusto*, ___ F.3d ___, 2015 WL 5294862, at *7 (2nd Cir. Sept. 11, 2015), *citing and discussing Manganiello v. City of New York*, 612 F.3d 149 (2nd Cir. 2010) ("The *Manganiello* Court acknowledged that the integrity of the judicial process can be unlawfully compromised by a government official's submission of information to a jury that implicates the accused based in part on material omissions"); *see also id.* at *8 ("*Manginiello* does not suggest that deliberate omissions of material facts are qualitatively different from affirmative misstatements, or that omissions alone cannot support a successful section 1983 action for using fabricated evidence to deprive a

plaintiff of his constitutional rights"); ("As the district court observed, 'other areas of law … make no legal distinction between misleading statements or omissions and affirmative falsehoods.'" (internal quotation omitted) (citing cases that "treat made up evidence and misleading evidence the same way" including *Manganiello* and *Nibbs v. City of New York*, 800 F.Supp.2d 574, 575 (SDNY 2011) (allegations were that police officers "filed police reports containing false and misleading information about the circumstances surrounding his arrest")).

Defendants allege that plaintiffs have not plausibly alleged that Legal Bureau attorneys were involved in directing or assisting in the falsifications complained of herein, citing one of the RNC cases mentioned by plaintiffs in the FAC. Elsewhere, the Court explicitly held that plaintiffs could establish that NYPD Legal Bureau attorneys could be personally involved in such violations. *See, e.g., MacNamara*, *et al. v. City of New York, et al.,* 2007 WL 3196295, at *1 (S.D.N.Y. Oct. 30, 2007) (considering deposition testimony developed in the RNC cases, the Court's held that "one reasonable interpretation of Officer Cai's testimony is that he included false information in the narrative section of his booking report because he was instructed to do so by a Lieutenant in the NYPD Legal Bureau. More disturbing still, Officer Cai's testimony appears to indicate that this unlawful act was not an isolated incident"); *id.* at *2 (holding that Cai's testimony "can be construed as indicating that Sergeant Cai recorded events that he did not witness as if he had personally observed them. That could well constitute a fraud, since subsequent participants in the arrest procedure-and ultimately the criminal court-would be expected to rely on the accuracy and reliability of the arresting officer's narrative," and that if plaintiffs could make a "showing that an arresting officer recorded

false information and did so in response to instructions that he or she received. Those instructions would then be discoverable, even if they would otherwise have been protected by the attorney-client privilege).

Beyond that, as set forth in the Oliver Dec., defendants have identified defendant Chernavsky as the Legal Bureau supervisor related to the incident in the form of a letter-response to an order from the Court in *Caravalho* as well as through deposition testimony. Defendants' Rule 11 threats are therefore wildly inappropriate, particularly given that if he was not the Legal Bureau supervisor for plaintiffs' mass arrest processing, defendants have violated the Court's orders related to identifying supervisors involved in *Caravalho* by mis-identifying him as that supervisor, and by failing to inform plaintiffs of the appropriate supervisor.

Plaintiffs have adequately pleaded that defendants included false and misleading information in their arrest processing paperwork and in criminal court complaints, which they forwarded to prosecutors, injuring plaintiffs, including by causing them to suffer liberty deprivations. Therefore, plaintiffs' Sixth Amendment-based claims should not be subject tto dismissal.

## POINT VI

### PLAINTIFFS' *MONELL* AND EQUAL PROTECTION-BASED CLAIMS ARE ADEQUATELY PLEADED

As described in the paragraphs in the FAC describing plaintiffs' *Monell* claims related to defendants' mass arrest and mass arrest processing-related policies and practices, including (but not limited to) at Paragraphs 26 and 269 and in the cases cited to in Pagraph 26, plaintiffs' Equal Protection-based claims, as well as their *Monell* claims, are adequately pleaded. *See, e.g., Osterhoudt v. City of New York*, 2012 WL 4481927, at

*2 (SDNY Sept. 27, 2012) , *citing Colon v. City of New York*, 2009 WL 4264462, at *2 (EDNY Nov. 25, 2009) ("denying motion to dismiss where plaintiff's allegation that officers manufactured drug evidence plus court's 'knowledge of cases in other federal and state courts' stated plausible *Monell* claim").

The *Osterhoudt* plaintiff was arrested on election night in November 2008 in Williamsburg, New York. After observing "NYPD officers picking fights and indiscriminately arresting bystanders," he was "swept up in the mass arrests, . . . charged with obstructing governmental administration, resisting arrest, and disorderly conduct and detained for 17 hours before his charges were adjourned in contemplation of dismissal" and he alleged that "he was unlawfully arrested as part of the NYPD's custom of sweeping up arrestees at demonstrations without making individualized determinations of probable cause" and that "[t]o prop up these bad arrests, the NYPD . . . customarily encourages officers to swear false criminal complaints and discourages honest officers from reporting misconduct."

The Court denied defendants' bid to dismiss his *Monell* claims, which  Osterhoudt supported "by citing other lawsuits against the City for mass arrests at Critical Mass bike rides, the 2004 Republican National Convention, and the World Economic Forum" including "a number of complaints alleging that the NYPD conducted mass arrests at demonstrations and in crowd control situations, plausibly alleging a widespread departmental policy of arresting political demonstrators without determining probable cause on an individual basis . . . [that] Osterhoudt alleges . . . caused his own arrest on November 5, 2008" and that "the NYPD failure to train officers how to determine

individual probable cause, instead of sweeping up arrestees *en masse*, is the same failure that led to his own unlawful arrest," 2012 WL 4481927, at *1-2.

Among the cases cited to in *Osterhoudt* and herein is *Callaghan, et al. v. City of New York, et al.,* 07-CV-9611 (SDNY) (PKC)(JLC). The Third Amended Complaint in *Callaghan* sets forth almost identical *Monell* claims. *See*, e.g., *Callaghan* Dkt. No. 14 at Paragraph 143. As is reflected in the *Callaghan* docket, when the defendants sought leave to move to dismiss and/or to bifurcate discovery as to plaintiffs' *Monell* claims toward the end of discovery in *Callaghan*, both Magistrate Judge Cott and this Court denied defendants' applications.

<u>**POINT VII**</u>

**PLAINTIFFS' EXCESSIVE DETENTION CLAIMS ARE ADEQUATELY PLEADED**

"'[T]he Fourth Amendment provides the proper analytical framework' for claims related to police activities that allegedly 'prolonged [arrestees'] postarrest detention[s].'" *Lebowitz II*, 606 Fed.Appx. at 18, *quoting Bryant v. City of New York*, 404 F.3d 128, 138 (2nd Cir. 2005).

Defendants' primary argument against plaintiffs' excessive detention claims is that any "detention of less than forty-eight hours is presumptively reasonable" and that they cannot prevail on their claim because they cannot "identify a defendant legally responsible for" violating their rights by excessively detaining them.

In this connection, although detentions attendant to custodial arrests of up to 48 hours prior to initially appearing before a court to face charges are presumptively reasonable under the Fourth Amendment, under New York State

law, including CPL §140.20(1), and the New York State constitution, as well as pursuant to the policies of defendant City (and specifically the NYPD's Criminal Justice Bureau), a delay in arraignment of anything over 24 hours is presumptively unreasonable. *See, e.g., People ex rel. Maxian o/b/o Roundtree v. Brown,* 77 N.Y.2d 422, 426 (1991).

Beyond that, it is well settled that any presumptive reasonableness attaching to plaintiffs' detentions can be rebutted by showing that their releases from custody "were delayed by 'ill will,' 'delay for delay's sake,' [or] officers' attempts to gather more evidence against them, *Cnty of Riverside v. McLaughlin,* 500 U.S. 44, 56 (1991), or any other 'extraordinary circumstances,' *Bryant,* 404 F.3d at 138." *See Lebowitz II,* 606 Fed. Appx. at 18.

In this case, the FAC establishes for pleading purposes that defendants unreasonably delayed plaintiffs' releases from custody, and plaintiffs should be entitled discovery on their excessive detention claims.

## POINT VIII

### PLAINTIFFS HAVE ADEQUATELY PLEADED EACH DEFENDANT'S INVOLVEMENT IN INJURING THEM

Defendants argue that plaintiffs have not adequately pleaded defendants' involvement in injuring them. However, the FAC establishes that each of the defendants was sufficiently involved in injuring plaintiffs for pleading purposes. Therefore, the Court should reject defendants' arguments that plaintiffs have not adequately pleaded defendants' involvement in injuring them.

"The Second Circuit has defined 'personal involvement' to mean direct participation, such as 'personal participation by one who has knowledge of the facts that

35

rendered the conduct illegal,' or indirect participation, such as 'ordering or helping others to do the unlawful acts.'" *Garnett I* at *7, *quoting Provost v. City of Newburgh*, 262 F.3d 146, 155 (2^(nd) Cir. 2001). Multiple officers can be held liable for a single false arrest, malicious prosecution, or other constitutional tort. *See, e.g., Jackson v. City of New York*, 939 F.Supp.2d 219 (EDNY 2013). A particular officer who was not the "arresting" officer may still face liability if the officer assisted in the arrest or arrest processing in some other fashion. *See, e.g., Mack v. Town of Wakill*, 253 F.Supp.2d 552, 558 (SDNY 2003); *see also, e.g., Carpenter*, 984 F.Supp.2d at 268-269. Additionally, where defendant officers who knew or should have known of constitutional violations, but failed to intervene, they may also be liable.

The FAC adequately pleads that each defendant engaged in acts and omissions proximately injuring each plaintiff, or that they knew or should have known about them and failed to intervene to prevent them or to cure the harms.

## POINT IX

**DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY**

The FAC does not establish as a matter of law that defendants had even arguable probable cause to arrest or otherwise injure any plaintiff. "'Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Garcia v. Does*, 779 F.3d 84, 92 (2^(nd) Cir. 2015) (*quoting Escalera v. Lunn*, 361 F.3d 737, 743 (2^(nd) Cir. 2004)), *quoted in Higginbotham* at *4.

"On a motion to dismiss, however, a qualified immunity defense based on arguable probable cause ''faces a formidable hurdle…' and is usually not successful.'

*Field Day, LLC v. Cnty. Of Suffolk*, 463 F.3d 167, 191-92 (2nd Cir. 2006) (quoting

*McKenna v. Wright*, 386 F.3d 432, 434 (2nd Cir. 2004)).” *Higginbotham* at *4; *see also*

*Schiller, et al. v. City of New York, et al.,* 2008 U.S. Dist. LEXIS 4253, at *21 (SDNY,

January 3, 2008); *see also Hershey v. Goldstein*, 938 F.Supp.2d at 52;  *Tellier v. Fields*,

280 F.3d 69, 84 (2nd Cir. 2000) (“Because qualified immunity is an affirmative

defense…the defendants bear the burden of showing that the challenged act was

objectively reasonable in light of the law existing at that time”) (internal citation and

quotation omitted); *Palmer v. Richards*, 364 F.3d 60, 67 (2nd Cir. 2004) (same).

Moreover, government officials who take official actions with malicious intent to

cause deprivations of constitutional rights or injury, or who falsify evidence and engage

in similar, related dishonest practices, cannot enjoy qualified immunity. *See, e.g., Harlow*

*v. Fitzgerald*, 457 U.S. 800, 815 (1982) (qualify immunity inappropriate if defendant

official “knew or reasonably should have known” his official actions “would violate the

constitutional rights of the [plaintiff], or if he took the action with the malicious intention

to cause a deprivation of constitutional rights or other injury”); *Morse II,* at *1 (“the

knowing creation of false or misleading evidence by an officer acting in an investigative

capacity . . . qualifies as an unconstitutional deprivation of the victims’ rights…[that]

was, moreover, clearly established at the time of the defendants’ conduct. The defendants

are therefore not entitled to qualified immunity”) and at *7 and *10; *see also Coggins,*

776 F.3d at 114 (“As the District Court properly concluded, the alleged falsification of

evidence and the related conspiracy, if true, constitute a violation of clearly established

law, and no objectively reasonable public official could have thought otherwise”);

*Riccuti,* 124 F.3d at 130 (2nd Cir. 1997) (no qualified immunity where plaintiffs alleged

that defendants had intentionally fabricate evidence against them); *Lippay v. Christos*, 996 F.2d 1490, 1504 (3rd Cir. 1993) ("If a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the office obviously failed to observe a right that was clearly established. Thus, he is not entitled to qualified immunity") (internal citations omitted); *Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir. 1995) ("In a civil rights case, if an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements…he cannot said to have acted in an objectively reasonable manner, and the shield of qualified immunity is lost") (internal quotations and citations omitted); *Davis v. City of New York*, 373 F.Supp.2d 322, 338 (SDNY 2005) ("where, as here, there is a question of fact as to whether defendants acted with malice in initiating a prosecution against plaintiffs, summary judgment on qualified immunity is inappropriate").

For the foregoing reasons, and based on the FAC, the Court should deny defendants' motion to dismiss based on qualified immunity.

## POINT X

### IF THE COURT DISMISSES ANY OF PLAINTIFFS' CLAIMS, THE COURT SHOULD DO SO WITHOUT PREJUDICE

Finally, if the Court dismisses any of plaintiffs' claims, the Court should do so without prejudice, so that plaintiffs can move to amend the FAC to conform with the proof developed in *Caravalho*, after the Court receives all of the summary judgment papers in that case, or otherwise.

## CONCLUSION

**WHEREFORE**, plaintiffs respectfully pray that the Court deny defendants'

motion, or for such other and further relief as the Court may deem just and proper.

DATED:      Queens, New York
               September 15, 2015

                                  Respectfully submitted,

                                    /S/

                                _____
                                Gideon Orion Oliver
                                *Attorney for Plaintiffs*
                                277 Broadway, Suite 1501
                                New York, NY  10007
                                646-263-3495