# Gideon Orion Oliver

**Attorney at Law**
277 Broadway, Suite 1501
New York, New York  10007

(646) 263-3495 (phone)                                                                    Gideon@GideonLaw.com*
(646) 349-2914 (fax)*                                                                                *Not for service

October 31, 2016

**BY ECF**
Hon. Sarah Netburn, U.S.M.J.
United States Courthouse
40 Foley Square
New York, NY  10007

>  Re:  Joint Discovery Status Letter
>         <u>Marom, et al. v. Blanco, et al.,</u> 15–cv-2017 (PKC)(SN)

Your Honor:

I am counsel for Plaintiffs. The parties submit this joint status letter in accordance with the Court's order dated October 24, 2016, in which the parties were directed to meet and confer regarding certain discovery issues brought to the Court's attention via the parties' correspondence with the Court at docket entries Nos. 69, 72 and 73, and to write to the Court jointly with respect to the results of their discussions.

**Defendants' Position**

By way of background, on September 19, 2016, plaintiffs served interrogatories, fifty-five document requests and their second set of requests for admissions, which included five sets of notices to admit directed to different defendants.  The parties made progress in today's in-person meet and confer, however, several areas of disagreement remain, and it appears that judicial resolution will be required on these issues.  The following are the areas of disagreement:

- Whether defendants are required to respond to five sets of requests for admissions that are duplicative of basic information that can readily be obtained in depositions of the five defendants that counsel has already notice.

- Whether, and to what extent, defendants are required to identify "each person who used force in any manner on each plaintiff in connection with each plaintiff's arrest," when the Court rejected plaintiffs' force claims save the force claim made by defendant Fitzgerald against a John Doe officer in which plaintiff has provided no identifying physical description. (Interrogatory No. 5).

- Whether and to what extent defendants are required to produce NYPD training materials and NYPD documents reflecting official policies regarding crowd control, policing First Amendment assemblies, use of force and use of force monitoring when the Court has dismissed plaintiffs' Monell claim and the City of New York is no longer a party in this matter. (Document Request Nos. 6-9).

- Whether and to what extent defendants are required to produce disciplinary records of the defendant officers when no named defendant officer is alleged to have arrested any plaintiff nor used any force on any plaintiff when the Court has dismissed plaintiffs' Monell claim and the City of New York is no longer a party in this matter. (Interrogatory No. 21, Document Request Nos. 46-48).

- Whether and to what extent defendants are required to produce all documents reflecting when Zuccotti Park was closed and cleaned between November 15, 2011, and March 17, 2012, when the Honorable P. Kevin Castel concluded that the closing of Zuccotti Park on March 17, 2012, for a limited period of time to allow for cleaning of the Park was lawful in the motion for summary judgment decision in the related case, Caravalho v. City of New York, 13-cv-4174. (Document Request Nos. 11-12).

- Whether and to what extent defendants are required to produce documents and information pertaining to the arrests of non-parties. (Document Request Nos. 20, 22-28, 30).

- Whether and to what extent defendants are required to produce non-party officers' line of duty injury paperwork for injuries sustained by officers on the date of incident but which are wholly unrelated to this matter. (Document Request No. 54).

- Whether and to what extent defendants are required to produce every OWS Unusual Occurrence Report prepared by the NYPD between November 15, 2011, and March 17, 2011, in light of the fact that the Unusual Occurrence Report for the incident in this matter has been produced.

 The parties have met and conferred in good faith but have been unable to resolve these issues. Defendants respectfully request, (1) a protective order to strike plaintiffs' second request for admissions in their entirety, (2) a protective order to strike plaintiffs' interrogatories and requests for documents that are outside of the scope of this litigation and (3) that plaintiffs' request for a second supplemental response to their first set of requests for admissions be denied. Additionally, the defendants anticipate filing a motion for summary judgment in this matter, however, believe that it may be premature to suggest a briefing schedule as an extension for the completion of discovery currently set for November 30, 2016, may need to be extended.

**Plaintiffs' Position:** By way of background, Plaintiffs rely on the procedural histories in Dkt. No. 59 and Dkt. No. 73, including at pp. 2-3 therein, and the attachments. Plaintiffs agree with defense counsel that the in-person meet and confer conducted today was productive in terms of narrowing some of the disputes regarding Plaintiffs' D+I, almost all of which the parties discussed in substance for the first time. Below, Plaintiffs briefly address Defendants' stated remaining concerns with Plaintiffs' D+I in the order Defendants raised them above.[1]

1. **Defendants' inadequate prior RFA responses, refusals to make good faith amendments to the initial RFA responses, and refusals to respond to the pending RFA's (*See, e.g.,* Dkt. Nos. 72-1, 73, 73-4, and 73-5):** Contrary to Defendants' position, the information sought through the prior and pending RFA's is not duplicative of information that can be obtained at depositions.[2] Having taken the depositions of Defendants Galgano and Blanco, as well as third-party assigned arresting officers, in *Caravalho*, and many other, similar cases, counsel is confident representing to the Court – and prove through deposition testimony, if necessary, on a more fulsome written application - that deposition testimony is no substitute for meaningful RFA responses, or deposition

---

[1] Defendants' refusals to provide meaningful RFA and D+I responses have frustrated Plaintiffs' abilities to prosecute the case effectively within the timetable the Court set. For example, in September 19, 2016, Plaintiffs served Notices of Deposition to take the depositions of all Defendants on October 19-21 and 27-28. It was not until many weeks later that Defendants began to raise concerns about the scope of the discovery Plaintiffs sought. Relatedly, it is Plaintiffs' understanding that, although Defendants Galgano and perhaps Chernyavsky may be available to be deposed soon after the resolution of the pending applications, Defendants Blanco, Valentine, and Boyle are all retired and it does not appear that defense counsel have current contact information for them – undermining Defendants' position that their RFA responses, apparently made without the benefit of those Defendants' input, were adequate under Fed.R.Civ.P. 36(a)(4).

[2] The Court should be aware that Defendant Galgano testified during his deposition in *Caravalho* that he did not see any of the five arrestees whose arrests he was assigned to process, in Zuccotti Park. So did all of the *Caravalho* defendants. The Court relied on that presumably truthful testimony in *Caravalho*. Yet at least 2 of the 5 total OLBS Reports Defendant Galgano filled out - *Caravalho* Plaintiff Joseph Sharkey's and *Marom* Plaintiff Yotam Marom's – state that the "A/O" – Defendant Galgano – informed them that they were under arrest and that after that they resisted by lying on the ground, interlocking arms with others and refusing to place their arms behind their backs. Lest there be any confusion as to what "A/O" means in that instance, the criminal court complaint he swore out specifically says that *he* observed them in the park and informed them they were under arrest, resisting, and the like. In Defendant Galgano's *Caravalho* deposition, he testified that he did not swear out an accusatory instrument related to the five arrestees whose arrests he was assigned to process. But the Criminal Court Complaint he swore out says otherwise. *See* Dkt. No. 73-6. And Defendants' RFA responses in this connection do not align with, or harmonize, that other evidence, as meaningful RFA responses should under such circumstances.

3

testimony conducted with the benefit of meaningful RFA responses. For example, in contrast to deposition testimony, meaningful RFA responses would require Defendants to make reasonable inquiries and to demonstrate that the information Defendants know or can reasonably obtain is insufficient after doing so to admit or deny each RFA, if they cannot respond, *see* Fed. R.Civ.P. 36(a)(4). As argued in Dkt. No. 73, meaningful responses could only be made after asking Defendants, reviewing their deposition testimony from *Caravalho* (where appropriate), accessing information Defendants may be authorized to access, but unable as a matter of policy to disclose (such as sealed arrest processing documents authored by Defendants and/or under their supervision), and otherwise making "reasonable attempts" to obtain information to provide meaningful responses. Plaintiffs would be entitled to use the RFA responses from one defendant at the depositions of the others. Meaningful RFA responses would provide basic information that Plaintiffs could make immediate use of in applications to the Court, including related to the compelling need for third-party processing documents. And had Defendants previously provided meaningful responses to Plaintiffs' prior RFA's, discovery in the case would have progressed meaningfully and on the schedule set by the Court.

      2.      **Defendants' refusals to identify eyewitnesses to Plaintiffs' arrests (Int No. 5):** Plaintiffs' position as it relates to this topic is outlined at Dkt. No. 73-2, p. 2, ¶ 1. Additionally, Judge Dolinger ordered Defendants to identify all "percipient witnesses" to the arrests in *Caravalho. See, e.g., Caravalho* Dkt. No. 73 (Transcript of the October 20, 2014 Oral Argument in *Caravalho* - the "10/20 Trans." – a copy of which is attached as Appendix 1).

      3.      **NYPD policy and training materials (Doc. Reqs. Nos. 6-9):** Plaintiffs' position as it relates to these topics is outlined at Dkt. No. 73-3, pp. 2-3. Additionally, Judge Dolinger ordered Defendants to produce these materials in *Caravalho,* and they represented that they would not be burdensome to produce. *See* 10/20 Trans at pp. 26 and 62.

      4.      **"Officer Disciplinary" records (Docs. Reqs. Nos. 46-48):** Plaintiffs' position as it relates to this topic is outlined at Dkt. No. 73-3, p. 2 and n. 1 (citing cases). Additionally, Judge Dolinger ordered Defendants to produce these records in *Caravalho*, where there were no *Monell* claims. *See, e.g.,* 10/20 Trans at pp. 22, 51-52; *Caravalho* Dkt. No. 131, 158 (March 23, 2015 and April 28, 2015 Orders from Magistrate Judge Dolinger).

      5.      **Unusual Occurrence Reports regarding Zuccotti Park Cleanings or Closures (Doc Reqs. Nos. 11-12):** Plaintiffs' position as it relates to this topic as well as to No. 8 above is outlined at Dkt. No. 73-2, p. 3, ¶ 3, and Dkt. No. 73-3, pp. 1-2.

      6.      "**Non-Party" Arrest Processing Documents (Documents Requests Nos. 20, 22-28, 30):** Plaintiffs believe that each of Defendants Galgano, Boyle, and Valentine were each assigned to process the arrests of five arrestees whose conduct they had not observed, including Plaintiffs, and then swore under penalties of perjury that they had observed some or all of those 15 people engage in that conduct, when they had not made those observations. Plaintiffs anticipate they will either claim that they did make those observations with respect to those 5 arrestees they were each later assigned to process in Zuccotti Park – which claims would be belied and/or significantly called into question by testimony from Defendant Galgano and other third-party witnesses in *Caravalho* – or they

will claim that their sworn testimony in the criminal court complaints sworn out against Plaintiffs and other "non-party" people whose arrests they were assigned to process that they observed them within Zuccotti Park was a "mistake." In either case, their prior statements about what they observed will be critically relevant.  Plaintiffs respectfully submit that Defendants should respond to these and other, similar demands and requests as they always have in the past – by producing such documents to the extent they are within their care, custody, or control and not protected from disclosure by some privilege or other grounds for withholding, and creating a privilege log sufficiently identifying the arrest processing documents at issue consistent with Local Civil Rules. The parties can then come back to the Court if there are concerns about the scope of the discovery or the assertions of privilege. Without responses from Defendants identifying the third-party arrest processing paperwork by at least Arrest Number, Plaintiffs cannot even seek necessary third-party discovery from the Office of the District Attorney for New York County ("DANY") and the New York State Office of Court Administration ("OCA") related to statements Defendants made regarding their activities in connection with making and processing arrests and participating in criminal prosecutions related to the March 17, 2012 mass arrests, including Plaintiffs'. To the extent Defendants may claim there is some privilege or other basis for withholding these documents, Plaintiffs request that the Court allow Plaintiffs to make a formal motion to compel, as Judge Dolinger did in *Caravalho*. *See* 10/20 Trans. at pp. 35-36.

7. **Documents Regarding Purported Officer Injuries (Document Req. No. 54):** Defendants have disclosed some documents indicating that there were officers injured in connection with policing the incident (though not, apparently, in connection with Plaintiffs' arrests). On October 18, 2016, Defendants also produced documents indicating that Defendant Galgano had been injured as a result of his arresting Plaintiff Marom. Additionally, Judge Dolinger ordered Defendants to produce such materials in *Caravalho*, or face preclusion. *See* 10/20 Trans. at pp. 19, 40-42. Plaintiffs seek the same relief.

The parties thank the Court for its attention to these matters and look forward to the morning's conference with the Court.

Respectfully submitted,

/S/

Gideon Orion Oliver

cc:   Opposing counsel (by ECF)