# Gideon Orion Oliver

**Attorney at Law**
277 Broadway, Suite 1501
New York, New York  10007

(646) 263-3495 (phone)                                   Gideon@GideonLaw.com*
(646) 349-2914 (fax)*                                              *Not for service

November 28, 2016

**<u>BY ECF</u>**
Hon. Sarah Netburn, U.S.M.J.
40 Foley Square - U.S Courthouse
New York, NY  10007

      Re:     *<u>Marom, et al. v. Blanco, et al.,</u>* <u>15–cv-2017 (PKC)(SN)</u>

Your Honor:

      I represent Plaintiffs in the above-captioned matter. I write as a result of the representations in Defendants' November 23, 2016 letter, a copy of which is attached as Exhibit 1, to seek a pre-motion conference regarding Plaintiffs' proposed applications for (1) an order compelling Defendants to identify the NYPD Legal Bureau attorney who was present at the Midtown South Precinct in connection with Plaintiffs' arrest processing on March 17-18, 2012 by a date certain, (2) leave to file an application to amend the First Amended Complaint in this matter to substitute that attorney for Defendant NYPD Legal Bureau attorney Oleg Chernyavsky by a reasonable date certain after that, (3) an opportunity to depose the NYPD Legal Bureau attorney as early as next week if possible, and (4) such other relief as the Court may deem appropriate under the circumstances, particularly given the wastes of time, energy, and resources as a result of Defendants' failures to identify the proper NYPD Legal Bureau attorney in a timely fashion and the confusion created thereby about Defendant Chernyavsky's involvement. The parties met and conferred telephonically about these disputes on November 28, 2016 and were not able to resolve them.

      The November 23, 2016 letter represents based on Defendant Chernyavsky's "overtime reports" that "it appears that [NYPD Legal Bureau attorney and] defendant Chernyavsky was not … present on March 18, 2012 to assist or supervise" in Plaintiffs' arrest processing.[1] If true, it is now apparent not only that the wrong NYPD Legal Bureau attorney has been named as a Defendant in this case, but also that Defendants have not yet disclosed the identity of the NYPD Legal Bureau attorney who was present at the Midtown South Precinct on March 17-18, 2012 and who assisted in and/or supervised in Plaintiffs' arrest processing. Plaintiffs have no other means of identifying that person, short of the present application. Counsel had previously noticed Defendant Chernyavsky's deposition. Without the identity of the correct NYPD Legal Bureau attorney, Plaintiffs are critically shortchanged in making an application to amend the operative pleading, as well as in

---

[1]     Defendants provided that November 23, 2016 letter in response to a reminder from counsel for Plaintiffs of this Court's November 1, 2016 order from the bench that Defendants provide such a letter by November 10, 2016 describing Defendant Chernyavsky's role in arrest processing related to the Plaintiffs' arrests in light of the complaints raised by Plaintiffs in their pre-motion conference letter at p. 4 of Dkt. No. 77 in this matter.

pursuing discovery in this case, including the deposition of that NYPD Legal Bureau attorney.

The representation made in the November 23, 2016 letter that Defendant Chernyavsky was not present at the Midtown South Precinct on March 17-18, 2012 when Plaintiffs' arrests were processed, explicitly or apparently contradicts (1) Defendant Blanco's deposition testimony from the related *Caravalho v. City of New York*, 13-cv-4174 (PKC)(MHD) matter naming Defendant Chernyavsky as the NYPD Legal Bureau attorney who assisted and/or supervised in the creation of arrest processing paperwork on March 17-18, 2012 at the Midtown South Precinct, (2) defense counsels' representations regarding the apparent identity of the NYPD Legal Bureau attorney involved in the incident to counsel for Plaintiffs, to Judge Dolinger in *Caravalho*, and to this Court on November 1, 2016[2], and (3) Defendants' representation in a December 18, 2014 letter in *Caravalho* provided in response to Judge Dolinger's order to identify Legal Bureau supervisors, disclosing only Defendant Chernyavsky's name as the sole Legal Bureau supervisor in connection with the detail, including with respect to Plaintiffs' arrest processing.

As described more fully below, counsel has been seeking the identity of the NYPD Legal Bureau attorney from Defendants in *Caravalho* since January of 2014. In October of 2014 and again in December of 2014, Judge Dolinger ordered Defendants to identify the NYPD Legal Bureau agent in writing. Defendants named Defendant Chernyavsky (and no other Legal Bureau attorney) as the NYPD Legal Bureau supervisor regarding the incident in alleged compliance with those orders. Defendants never identified any other NYPD Legal Bureau attorney in the context of *Caravalho* or in this case as having been potentially involved in the *Caravalho* or *Marom* Plaintiffs' arrest processing. Plaintiffs have also repeatedly sought the identity of the correct Legal Bureau supervisor through discovery in this case, including through two rounds of Requests for Admissions, and most recently through the written discovery demands Plaintiffs served in September of 2016 and Defendants responded to by mail on November 10, 2016. In their disclosures in this matter pursuant to Fed.R.Civ.P. 26 dated October 18, 2016, Defendants represented that Defendant Chernyavsky was "likely to have discoverable information that….defendants may use to support their claims or defenses" (without "identifying the subjects of the information" as required by Fed.R.Civ.P. 26). True copies of those disclosures are attached as Exhibit 2. No other NYPD Legal Bureau supervisor is named in the initial disclosures or in any other discovery respones by Defendants in this case. True copies of relevant excerpts of Defendants' November 10, 2016 Defendants' Responses and Objections to Plaintiffs' Interrogatories and Document Demands (including Defendants' Responses to Ints. Nos. 7-10, 14 and Doc. Request Nos. 35-37), along with the Overtime Reports provided therewith, are attached collectively hereto as Exhibit 3.[3] As Defendants' responses to those interrogatories and document requests

---

[2]   The relevant portions of the October 20, 2014 *Caravalho* transcript are included herewith and discussed below. Counsel has not yet ordered the transcript of the November 1, 2016 conference in this case, but counsel's recollection is that defense counsel stated that there was perhaps a "semantic" reason for not calling Defendant Chernyavsky a "supervisor" based on his status within the NYPD hierarchy and/or his role in the incident but there was no revelation that Defendant Chernyavsky had not been present and assisting in arrest processing at the Midtown South Precinct on March 17-18, 2012.

[3]   Although it appears to counsel for Plaintiffs that defense counsel have been in possession of these records at least since August of 2015 (*see* Dkt. No. 26 at p. 23), defense counsel did not disclose the records until November of 2016.

2

show, Defendants are resisting discovering and disclosing the identity of the NYPD Legal Bureau agent who was present at the Midtown South Precinct on March 17-18, 2012 and who assisted and/or supervised Defendants Blanco, Galgano, Boyle, and Valentine in processing Plaintiffs' arrests.

In March 2014 responses to discovery demands served by Plaintiffs in the *Caravalho* case on around January 21, 2014 (*see Caravalho* Dkt. No. 66-1 and 66-2), Defendants objected and/or refused to disclose the identities of NYPD Legal Bureau attorneys who had "Personal Knowledge" regarding the creation of arrest processing paperwork regarding the incident (where "Personal Knowledge" was defined to include knowledge as a result of direct observation or participation).[4] Those discovery demands were annexed to an October 14, 2014 pre-motion conference letter (*Caravalho* Dkt. No. 66) as a result of which the parties had an in-person discovery conference before Judge Dolinger on October 20, 2014. Relevant portions of the transcript of that conference are attached as Exhibit 4. As of October 20, 2014, counsel in *Caravalho* had conducted five *Caravalho* Defendants' depositions, and the only deponent who had been able to remember the identity of an NYPD Legal Bureau attorney who was involved in the incident testified that the attorney was "Oleg" (which is Defendant Chernyavsky's first name). Attached as Exhibit 5 are true copies of the relevant portions of that October 17, 2014 *Caravalho* deposition testimony from NYPD Captain Nicole Papamichael.

At the October 20, 2014 discovery conference in *Caravalho*, among the very first issues raised by Plaintiffs was Defendants' failure and/or refusal to provide "information identifying NYPD agents who have personal knowledge regarding…the plaintiffs'…arrest processing" including "the supervisors…who were in charge of the mass arrest processing. Those are going to be the Criminal Justice Bureau and Legal Bureau supervisors at least." Exh. 4 at pp. 3:21-4:9, 12.:9-12, 22-25. To the extent there may have been any confusion about the ways the terms "Legal Bureau supervisors" were being used in that context, counsel described the role those supervisors played in arrest processing at the Midtown South Precinct on March 17-18, 2012 in open court on October 20, 2014 (*i.e.*, "Some of the officers have said they put…information in…[their arrest processing paperwork] because they were told to by somebody from the Legal Bureau") and by describing the Legal Bureau supervisor as the attorney whom the officers testified assisted them in the creation of arrest processing paperwork at the Precinct. Exh. 4 at pp. 13:1-15:5. In response to inquiries from Judge Dolinger about whether Defendants had identified all such supervisors in connection with the incident, Defendants represented that "on Friday there was a deposition of [a NYPD] Captain [Papam]ichael, who in turn informed plaintiff that a NYPD Legal representative by the name of Oleg was present at the time of the incident." Judge Dolinger ordered Defendants to "provide a list of "all of the supervisors" by the end of the week of

---

[4]     *See, e.g.,* Int. No. 1 ("Identify any and all …persons who has [sic] Personal Knowledge of…any Plaintiff's…arrest processing (including filling out NYPD arrest processing and mass arrest processing paperwork, property vouchering, prisoner movement and transportation, and all other aspects of mass arrest and mass arrest processing"), at *Caravalho* Dkt. No. 66-1, p. 4 (where such references are to the "X of Y Pages" notation at the top of the document rather than the numbers at the bottoms of each page); *see also* Int. No. 3 (same) at *Caravalho* Dkt. No. 66-1, pp. 6-7; Int. No. 6 (seeking identities of NYPD supervisors with respect to "plaintiffs' arrest processing"); Doc. Request No. 2 (seeking, *inter alia*, overtime records related to the incident) at *Caravalho* Dkt. No. 66-2, pp. 4-5; Doc. Request No. 3 (seeking production of other documents identifying NYPD agents assigned to police the incident) at *Caravalho* Dkt. No. 66-2, p. 5).

October 20, 2014. Exh. 4 at 32:25-35:20. There can be no question that list was to include the NYPD Legal Bureau attorney who assisted Defendants in creating mass arrest processing paperwork at the Midtown South Precinct on March 17-18, 2012.

When Defendants ignored the Court's October 24, 2014 deadline, Plaintiffs followed up in writing, including in November 20, 2014 and December 3, 2014 letters, in anticipation of making another pre-motion conference. Counsel was clear to make sure that Defendants knew to identify the Legal Bureau supervisor who had assisted in mass arrest processing at Midtown South. For example, the December 3, 2014 letter specifically complained, among other things, that Defendants "were required to provide a complete list of supervisors involved in the incident, including Criminal Justice Bureau and Legal Bureau supervisors involved in mass arrest processing supervision, as well as supervisors who participated in the determination that Plaintiffs would not be released with a Summons or Desk Appearance Ticket, by October 24, 2014, which we have not received." Following a meet and confer on or before December 4, 2014, the parties made a joint application December 4, 2014 to Judge Dolinger (*Caravalho* Dkt. No. 75) to extend the deadline by which defense counsel was to provide the required list of supervisors, as well as other documents and information that the Court ordered Defendants to produce, and, also on December 4, 2014, the Court extended the October 24, 2014 deadline that Defendants had ignored until December 18, 2014.

Almost two months after the October 20, 2014 conference at which Judge Dolinger first ordered Defendants to identify the NYPD Legal Bureau attorney involved in assisting with and/or supervising Plaintiffs' arrest processing, in their December 18, 2014 letter purporting to comply with that order, Defendants identified Defendant Chernyvasky in writing as the only "Legal Bureau supervisor assigned to the Occupy Wall Street detail" on March 17-18, 2012. A true copy of that letter is attached as Exhibit 5.

After the October 20, 2014 conference, counsel conducted the depositions of five additional NYPD officers related to *Caravalho*, including *Marom* Defendant Blanco. Only one officer – Defendant Blanco – was able to identify the NYPD Legal Bureau supervisor who assisted and/or supervised her and Defendants Galgano, Boyle, and Valentine at the NYPD's Midtown South Precinct in connection with arrest processing related to the incident on March 17-18, 2012 – and Defendant Blanco named Defendant Chernyavsky. Attached as Exhibit 6 is a true copy of the transcript of the relevant portions of Defendant Blanco's May 14, 2015 deposition testimony, in which Defendant Blanco also testified that "all of" the officers under her supervision who created arrest processing paperwork related to the incident – including Defendants Galgano, Boyle, and Valentine - met with Defendant Chernyavsky in connection with creating their arrest processing paperwork.

As a result of the representations made by Defendants and defense counsel prior to March and May of 2015, counsel for Plaintiffs in this case named Defendant Chernyavsky as the NYPD Legal Bureau attorney who was personally involved in assisting and/or supervising Defendants Galgano, Boyle, Valentine, and Blanco in connection with creating the arrest processing paperwork related to Plaintiffs in this matter in the March 2015 Complaint (Dkt. No. 1) initiating this action, as well as in the First Amended Complaint (Dkt. No. 21), filed in July of of 2015. Based on the FAC, the Court determined a motion to dismiss brought by Defendants pursuant to Fed.R.Civ.P. 12, in March of 2016 (Dkt. No. 48) and a motion to reconsider in July of 2016 (Dkt. No. 66). Additionally, in this case, Plaintiffs

have wasted time and energy seeking discovery from and/or about Defendant Chernyavsky as if he were the NYPD Leal Bureau attorney who assisted and/or supervised in the creation of arrest processing paperwork on March 17-18, 2012 at the NYPD's Midtown South Precinct.

As part of Defendants' August 2015 motion to dismiss in this case, Defendants represented: "Defendants have documentary evidence that Agency Attorney Chernyavvsky was actually off-duty at the time of Plaintiffs' arrest processing. The infirmities in Plaintiffs' pleading are therefore subject to remediation by either the instant motion or a motion for sanctions under Fed.R.Civ.P. 11, since Plaintiff lacks any good faith basis whatsoever to assert this accusation against Agency Attorney Chernyavsky, who indisputably had no personal involvement in any constitutional violation." *See* Dkt. No. 26 at p. 23. A true copy of that portion of Defendants' Memorandum of Law in support of their motion to dismiss is attached as Exhibit 8 hereto for the Court's convenience. In response, counsel for Plaintiffs submitted a Declaration dated September 15, 2015 stating that "Defendants have identified defendant 'Oleg Chernyavsky' as the Legal Bureau supervisor related to the incident in the form of a letter-response to an order from the Court in *Caravalho* dated December 18, 2014" and that "defendants have otherwise identified him as the Legal Bureau supervisor related to plaintiffs' mass arrest processing" - referring to Defendant Blanco's identification of him as such in her deposition. *See* Dkt. No. 30. A true copy of Dkt. No. 30 (omitting its attachments – the December 18, 2014 letter and Defendant Blanco's deposition testimony – as duplicative) is attached as Exhibit 9 hereto. Counsel for Plaintiff also argued, in their corresponding September 16, 2015 Memorandum of Law: "[A]s set forth in the Oliver Dec., defendants have identified defendant Chernavsky as the Legal Bureau supervisor related to the incident in the form of a letter response to an order from the Court in *Caravalho* as well as through deposition testimony. Defendants' Rule 11 threats are therefore wildly inappropriate, particularly given that if he was not the Legal Bureau supervisor for plaintiffs' mass arrest processing, defendants have violated the Court's orders related to identifying supervisors involved in *Caravalho* by mis-identifying him as that supervisor, and by failing to inform plaintiffs of the appropriate supervisor." Dkt. No. 32 at p. 42. A true copy of that portion of Plaintiff's Memorandum of Law in opposition to Defendants' motion to dismiss is attached as Exhibit 10 hereto for the Court's convenience. Defendants' reply papers (*see* Dkt. No. 46) did not mention that point.

And finally, after all that the parties had two further meet-and-conferrals in which the parties discussed Defendant Chernyavsky's role in Plaintiffs' arrest processing. The first took place in response to Defendants' first responses to Plaintiffs' first set of Requests for Admissions, in which Defendants flatly denied that Defendant Chernyavsky had supervised Plaintiffs' arrest processing. During the parties' meet and confer, defense counsel took the position that Defendant Chernyavsky could not properly be characterized as a "supervisor" based on his rank and/or role within the NYPD and that it was therefore appropriate to deny that he had been the Legal Bureau "supervisor" related to the incident. They did *not* say or take the position that Defendant Chernyavsky had not been present at the Midtown South Precinct on March 17-18, 2012 assisting with Plaintiffs' arrest processing. Defense counsel took essentially the same position during the in-person meet-and-confer this Court directed the parties to conduct prior to the November 1, 2016 discovery conference and, as far as counsel for Plaintiffs recalls, at that conference itself.

Plaintiffs' counsel therefore respectfully requests a pre-motion conference regarding Plaintiffs' proposed application for the relief outlined on Page 1 above. Thank you for your attention to these matters.

Respectfully submitted,

/S/

Gideon Orion Oliver

cc:     Opposing counsel (by ECF)