UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
YOTAM MAROM AND MIRIAM ROCEK,

                *Plaintiffs*,

     -against-

NYPD SERGEANT FIOR BLANCO, NYPD LEGAL
BUREAU LIEUTENANT DANIEL ALBANO,
NYPD LEGAL BUREAU DETECTIVE KENNETH
O'DONNELL, NYPD OFFICER MICHAEL
GALGANO, SHIELD NO. 2671, NYPD OFFICER
CYNTHIA BOYLE, SHIELD 06663,

                *Defendants*.

-----------------------------------------------------------------X

15 CV 2017 (PKC)(SN)

---

## PLAINTIFF'S MEMORANDUM OF LAW
## IN SUPPORT OF PLAINTIFF'S MOTION *IN LIMINE*

---

Gideon Orion Oliver
*Attorney for Plaintiff*
Miriam Rocek
277 Broadway, Suite 1501
New York, NY 10007
Tel: (646) 263-3495
Fax: (646) 349-2914
Email: gideon@gideonlaw.com

Jessica Massimi
*Attorney for Plaintiff*
Miriam Rocek
99 Wall Street, Suite 1264
New York, NY 10005
jessica.massimi@gmail.com
646-241-9800

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ........................................................................................ iv

INTRODUCTION .......................................................................................................... 1

LEGAL STANDARD ON A MOTION *IN LIMINE* ......................................................... 1

   I.    THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM DEPICTING ROCEK AS A CRIMINAL CHARACTER BY PRESENTING TO THE JURY INFORMATION ABOUT PRIOR ARRESTS, DETENTIONS OR OTHER CONTACTS WITH LAW ENFORCEMENT ................................................. 2

     A.   PLAINTIFF'S THREE PRIOR ARRESTS, NONE OF WHICH RESULTED IN A CONVICTION, ARE INADMISSIBLE FOR ANY PURPOSE ...................... 2

   II.   THE COURT SHOULD PRECLUDE PLAINTIFF'S PRIOR CONTACTS WITH POLICE OR LAW ENFORCEMENT UNDER FED. R. EVID. 402 AND 403 4

   III.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM INQUIRING INTO PLAINTIFF'S PRIOR CONDUCT AT OTHER DEMONSTRATIONS OR PROTESTS ................................................................................................. 8

   IV.   THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM REFERRING TO OR INQUIRING ABOUT PLAINTIFF'S POLITICAL OR SOCIAL BELEIFS, OR HER OPINIONS REGARDING OCCUPY WALL STREET ............. 10

   V.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCEING CERTAIN SOCIAL MEDIA POSTINGS DISCLOSED BY PLAINTIFF ................. 10

   VI.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERING TO ROCEK'S PRIOR CIVIL LAWSUITS OR SETTLEMENTS ..................................... 11

   VII.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM MISLEADING THE JURY BY PRETENDING DEFENDANTS WILL NOT BE INDEMNIFIED FOR ANY DAMAGES AWARD ................................................................................ 13

   VIII.   IF THE COURT MIGHT PERMIT SPECIAL INTERROGATORIES, THE COURT SHOULD ORDER THE DEFENDANTS TO PROVIDE PROPOSED SPECIAL INTERROGATORIES BEFORE TRIAL STARTS ................................... 15

   IX.   THE COURT SHOULD PRECLUDE DEFENDANTS OR OTHER WITNESSES FROM TESTIFYING OR OTHERWISE PRESENTING DOCUMENTARY EVIDENCE OF MILITARY SERVICE, AWARDS OR COMMENDATIONS THEY RECEIVED DURING THE COURSE OF THEIR EMPLOYMENT AS LAW ENFORCEMENT OFFICERS ....................................... 16

   X.   THE COURT SHOULD PERMIT PLAINTIFF TO EXAMINE NYPD-AFFILIATED WITNESSES THROUGH THE USE OF LEADING QUESTIONS ... 17

XI.     THE COURT SHOULD PRECLUDE DEFENDANTS FROM
REFERENCING PREVIOUSLY-DISMISSED CLAIMS, PARTIES, OR OTHER
LAWSUITS STEMMING FROM THE SUBJECT INCIDENT ................................. 19

XII.    THE COURT SHOULD PRECLUDE DEFENDANTS FROM
REFERENCING PLAINTIFF'S MENTAL HEALTH HISTORY ............................. 20

XIII.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM INQUIRING
INTO PLAINTIFF'S DRUG AND ALCOHOL USE .................................................. 22

CONCLUSION .......................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bixby v. KBR, Inc.*,
No. 09 Civ. 632(PK), 2012 U.S. Dist. LEXIS 143807 (D. Or. Oct. 4,
2012) ................................................................................................................18

*Chonich v. Wayne Cty. Cmty. Coll.*,
874 F.2d 359 (6th Cir. 1989) ..........................................................................19

*Daniels v. Loizzo*,
986 F. Supp. 245 (S.D.N.Y. 1997) .....................................................................3

*Davis v. Velez*,
15 F. Supp. 3d 234 (E.D.N.Y. 2014), *aff'd*, 797 F.3d 192 (2d Cir.
2015) ....................................................................................................................5

*Eng v. Scully*,
146 F.R.D. 74 (S.D.N.Y. 1993) .......................................................................12

*Furlong v. Circle Line Statue of Liberty Ferry*,
902 F. Supp. 65 (S.D.N.Y. 1995) ....................................................................22

*Gardner v. Federated Dep't Stores, Inc.*,
907 F.2d 1348 (2d Cir.1990) ..............................................................................6

*In re: Gen. Motors LLC Ignition Switch Litig.*,
No. 14-MC-2543 (JMF), 2016 WL 4410008 (S.D.N.Y. Aug. 18, 2016) ...................22

*Gordy Co. v. Mary Jane Girls, Inc.*,
No. 86-CV-6814 (RWS), 1989 WL 28477 (S.D.N.Y. Mar. 24, 1989) .....................22

*Gropper v. David Ellis Real Estate, L.P.*,
2014 U.S. Dist. LEXIS 22296 (S.D.N.Y. Feb. 14, 2014) ...........................20

*Gyasi v. City of N.Y.*,
No. 05 Civ. 9453 (S.D.N.Y.) ...................................................................14, 15

*Hilburn v. N.J. Dep't of Corr.*,
Civ. No. 7-6064, 2012 WL 3133890 (D.N.J. July 31, 2012) ......................13

*Kemezy v. Peters*,
79 F.3d 33 (7th Cir. 1996) (Posner, J.) ...........................................................15

*Kerman v. City of New York*,
   374 F.3d 93 (2d Cir. 2004)................................................................6

*Kunstler v. City of N.Y.*,
   242 F.R.D. 261 (S.D.N.Y. 2007) .....................................................21

*Luce v. United States*,
   469 U.S. 38 (1984)............................................................................1

*Manessis v. New York City Dep't of Transp.*,
   No. 02-CV-359 (SAS) (DF), 2002 WL 31115032 (S.D.N.Y. Sept. 24,
   2002) ...............................................................................................21

*Marom v. Blanco*,
   No. 15-cv-2017 (PKC), 2019 US Dist LEXIS 124343 (SDNY July 25,
   2019) ...............................................................................................15

*Martinez v. Port Auth. of N.Y. & N.J.*,
   2005 WL 2143333 (S.D.N.Y. Sept. 2, 2005)....................................6

*Mathie v. Fries*,
   121 F.3d 808 (2d Cir. 1997)............................................................14

*Michelson v. United States*,
   335 U.S. 469 (1948)..........................................................................3

*Morales v. New York State Dep't of Labor*,
   530 F. App'x 13 (2d Cir. 2013) ......................................................20

*Nibbs v. Goulart*,
   822 F. Supp. 2d 339 (S.D.N.Y. 2011) ......................................6, 7, 22

*Olutosin v. Gunsett*,
   2019 U.S. Dist. LEXIS 189289, 2019 WL 5616889 (S.D.N.Y. 2019).......................20

*Outley v. City of N.Y.*,
   837 F.2d 587 (2d Cir. 1988)............................................................13

*Palmieri v. Defaria*,
   88 F.3d 136 (2d Cir. 1996)................................................................1

*Pelosi v. Spota*,
   607 F. Supp. 2d 366 (E.D.N.Y. 2009) .............................................21

*Perez v. Duran*,
   11 Civ. 5399 (JGK) (S.D.N.Y. Sept. 18, 2014) ................................7

*Robinson v. Holder,*
  2008 WL 2875291 (S.D.N.Y. July 22, 2008) ...........................................6

*Sims v. Blot,*
  534 F.3d 117 (2d Cir. 2008)...................................................................4, 21

*Stephen v. Hanley,*
  No. 03-cv-6225 (KAM), 2009 WL 1471180 (E.D.N.Y. May 21, 2009).....................3

*United States v. DiPaolo,*
  804 F.2d 255 (2d Cir. 1986)...................................................................22

*United States v. Hicks,*
  748 F.2d 854 (4th Cir. 1984) .................................................................19

*United States v. Krug,*
  2019 U.S. Dist. LEXIS 17016, 2019 WL 416946 (W.D.N.Y. 2019) ..................11

*United States v. Leonardi,*
  623 F.2d 746 (2d Cir.1980)......................................................................3

*United States v. Nazzaro,*
  889 F.2d 1158 (1st Cir. 1989) .................................................................17

*United States v. Washington,*
  106 F.3d 983 (D.C. Cir. 1997) ................................................................17

*Williams v. The City of New York, et al.,*
  11 CV 5202, Docket No. 47......................................................................5

*Young v. Calhoun,*
  No. 85 Civ. 7584, 1995 WL 169020 (S.D.N.Y., Apr. 10, 1995)................................12

*Zellner v. Summerlin,*
  494 F.3d 344 (2d Cir. 2007)....................................................................13

**Other Authorities**

Fed. R. Evid. 401 ...............................................................................19

Fed. R. Evid. 401, 402 .........................................................................1

Fed. R. Evid. 402 ...............................................................................1

Fed. R. Evid. 402 and 403.................................................................1, 2, 4

Fed. R. Evid. 403 .........................................................................*passim*

Fed. R. Evid. 404 ...............................................................................9

Fed. R. Evid. 404(a)(1), 405(a).................................................17

Fed. R. Evid. 404(b)..............................................2, 3, 16, 17

Fed. R. Evid. 608(b)..................................................................3

Fed. R. Evid. 609(a)(2).............................................................3

Fed. R. Evid. 611(c)...............................................................18

Fed. R. Evid. 803..................................................................11

Fed. R. Evid. 611..................................................................17

Fed. R. Evid. 608...................................................................3

Fed. R. Evid. 611(c)(2)...........................................................18

## INTRODUCTION

Plaintiff, Miriam Rocek respectfully requests that the Court grant her pre-trial motions *in limine* in this matter as set forth below.

## LEGAL STANDARD ON A MOTION *IN LIMINE*

Generally, the purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 (1984) (explaining that the motion *in limine* is used to "exclude anticipated prejudicial evidence before the evidence is actually offered"); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). Under Fed. R. Evid. 402, evidence must be "relevant" to be admissible, meaning "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401, 402. Even if evidence has some probative value, Fed. R. Evid. 403 grants a district court discretion to exclude even relevant evidence on the grounds of prejudice, confusion, or waste of time. Although relevant, evidence maybe excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Fed. R. Evid. 403.

Thus, to be admissible, evidence must be both (1) relevant and (2) not outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. See Fed. R. Evid. 402 and 403.

**I.      THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM DEPICTING ROCEK AS A CRIMINAL CHARACTER BY PRESENTING TO THE JURY INFORMATION ABOUT PRIOR ARRESTS, DETENTIONS OR OTHER CONTACTS WITH LAW ENFORCEMENT**

Defendants should be precluded from trying to smear Rocek's character by depicting her as a criminal. Specifically, they should be prohibited from presenting to the jury information about prior arrests, detentions, or other contacts with law enforcement. Each category of evidence has no relevance to any issues in dispute and is extremely prejudicial. *See* Fed. R. Evid. 402, 403.

**A.  PLAINTIFF'S THREE PRIOR ARRESTS, NONE OF WHICH RESULTED IN A CONVICTION, ARE INADMISSIBLE FOR ANY PURPOSE**

On January 5, 2017, Plaintiff testified at her deposition that she has been arrested three times prior to the incident which is the subject of this lawsuit. Plaintiff testified that she was first falsely arrested 11 years prior to her deposition in an incident involving Delaware law enforcement. Rocek was also arrested twice in 2011 in relation to Occupy Wall Street protests. No conviction resulted from any of Plaintiff's arrests. Indeed, Plaintiff filed lawsuits with regard to two of those three prior arrests, which resulted in monetary settlements to Plaintiff. This information should not be admitted at trial because it is irrelevant, prejudicial, and its admission would lead to waste of time and confusion of the jury.

Further, Fed. R. Evid. 404(b) states, in relevant part, "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with their character. This evidence may be admissible for another purpose, such as proving motive, opportunity,

intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Plaintiff's arrest history is not admissible as character evidence under Fed. R. Evid. 404(b). It is not relevant to her state of mind, conduct, or for any other permissible purpose under Fed. R. Evid. 404(b). Her state of mind or previous conduct are irrelevant to her claims. Defendants' only purpose to admit this evidence would be to encourage the jury, improperly, to infer that, since Plaintiff had been arrested on prior occasions, she deserved what she experienced in this case.

Beyond that, Plaintiff's arrests did not result in convictions and are not admissible as specific instances of conduct that would impeach or impair her credibility under Fed. R. Evid. 608(b). "Arrest without more does not ... impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness." *Michelson v. United States*, 335 U.S. 469, 482 (1948); *see also United States v. Leonardi*, 623 F.2d 746,757 (2d Cir.1980). Accordingly, the Court should exclude evidence of Plaintiff's arrests since they did not result in convictions. *Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997) (plaintiff's arrests that did not result in convictions were inadmissible under Fed. R. Evid. 608(b)); *see also Stephen v. Hanley*, No. 03-cv-6225 (KAM), 2009 WL 1471180, at *8 (E.D.N.Y. May 21, 2009) ("[D]efendants reliance on Rule 608…is unavailing. None of the unproven charges or prior arrests bear on [plaintiff's] character for truthfulness"). Additionally, none of the arrests involved charges of dishonest acts or false statements as set forth in Fed. R. Evid. 609(a)(2). Moreover, under the relevant Fed. R. Evid. 403 analysis, admitting such

evidence would have no probative value, and would be highly prejudicial. Thus, there is simply no basis to admit evidence of Plaintiff's prior arrests.

## II.  THE COURT SHOULD PRECLUDE PLAINTIFF'S PRIOR CONTACTS WITH POLICE OR LAW ENFORCEMENT UNDER FED. R. EVID. 402 AND 403

Plaintiff is only seeking damages for loss of liberty, related "garden-variety" emotional distress (*see, e.g, Sims v. Blot*, 534 F.3d 117 (2d. Cir. 2008) and Point XI below), and punitive damages.

Plaintiff is not claiming any particularized diagnosis or event that would be mitigated or lessened by the fact that she had been detained, arrest, or prosecuted previously (related to arrests, detentions, or cases where charges were never brought or were dismissed).

While some courts may have found that a plaintiff's prior confinement or loss of liberty may be relevant as to the degree of her emotional distress at being wrongly imprisoned on another occasion, even assuming, *arguendo*, that it would be relevant in this case, the prejudice to plaintiff from such testimony outweighs any potential limited probative value.

Whatever limited value this evidence might have with respect to Plaintiff's emotional damages related to her liberty deprivations caused by the claimed fair trial rights deprivations would be greatly outweighed by allowing the jury to know that she has had prior contact with the police and the criminal legal system (and thus is a criminal person of poor character who has a propensity for criminal conduct).

The Hon. Jack B. Weinstein addressed this very argument.  The plaintiff in that case "spent at least half of his life incarcerated in jail.' Defendants sought leave to 'get into plaintiff's criminal history— sorry, not his criminal history—but at least his criminal

incarceration,' on the theory that plaintiff 'would not be as—for lack of a better word—damaged [by this experience] as a person who has never been to jail.'" *Davis v. Velez*, 15 F. Supp. 3d 234, 252 (E.D.N.Y. 2014), *aff'd*, 797 F.3d 192 (2d Cir. 2015) (internal citations to trial transcript omitted). The Court rejected this argument at trial and again thereafter when addressing the defendants' post-trial motion, ruling:

> Evidence of plaintiff's jail time carried a grave risk of unfair prejudice, confusing the issues, and misleading the jury. A party's past encounters with the law are generally excluded not 'because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to [litigate his case]. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice.' The evidence would have had limited probative value. Plaintiff described the basic loss of liberty any inmate experiences at Rikers Island and MDC. He did so briefly and in bare, factual terms. **There is no reason to believe his previous jail experience would have significantly alleviated his distress at being wrongfully deprived of his basic freedoms during the thirteen months he was jailed.**

*Id.* (emphasis supplied) (quoting *Michelson v. United States*, 335 U.S. 469, 475–76 (1948)).[1]

---

[1] See also transcript of proceedings from *Williams v. The City of New York, et al.*, 11 CV 5202 (JGK), Docket No. 47, pages 11-12, annexed to the Declaration of Jessica Massimi ("Massimi Decl.") at Exhibit 3 ("That argument is so problematic because it suggests that some people's liberty is entitled to less reward than other peoples' liberty because they have a less personal worth, because they're, you know, in a different tier of society, because they're a frequent inhabitant of our prison system, that their liberty is entitled to less worth, and that's a very problematic argument. The cases, as I read them, allow such things as prior arrests because of individual claims for emotional injuries, emotional distress, and so you have to evaluate how this person's emotional makeup was affected and whether they had become used to this so that claims of significant emotional distress are not to be credited. That is a very different issue from this person's liberty is worth less than that person's liberty because this person has been in jail before. Putting aside the legal problem with that, it is an imprudent argument for the city to make, but it is not for me to determine prudence. I just decide the law. A jury, experience teaches, does not react well to an argument that says this person's liberty is not worth very much, they just don't. They're far more respectful of the rights that people have. That is why we have these cases.").

Here, Plaintiff is not arguing that she suffered any particular psychological diagnosis, or anything other than "garden variety" emotional distress, by virtue of her imprisonment and other liberty deprivations following her arrest, or that she is still somehow psychologically damaged because of it. Rather, she has testified that her arrest, detention, and prosecution caused her distress, as she was required to repeatedly return to Court, and to have criminal charges hanging over her head for over a year, based upon false allegations from the Defendants.

Further, it is well-settled that a plaintiff's claim for emotional damages as a result of a period of detention is distinct and separate from a damages claim for the value of her lost liberty. *Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004). As has been noted, "[i]t is clear under Second Circuit law that damages associated with lost liberty are distinct and independent from those arising from such injuries as physical harm, embarrassment, or emotional suffering." *Nibbs v. Goulart*, 822 F. Supp. 2d 339, 344-45 (S.D.N.Y. 2011) (*citing Kerman*, 374 F.3d at 125); *Gardner v. Federated Dep't Stores, Inc.*, 907 F.2d 1348, 1353 (2d Cir.1990) ("[T]he damages for deprivation of liberty redress the denial of free movement and the violation done to Gardner's dignity as a result of the unlawful detention, and not the physical and mental injuries arising from the incident."); *Robinson v. Holder*, 2008 WL 2875291, at *2 (S.D.N.Y. July 22, 2008) (finding no evidence of physical or mental injury and calculating loss of liberty damages by comparing to other lost liberty awards on a per day basis); *Martinez v. Port Auth. of N.Y. & N.J.*, 2005 WL 2143333, at *19–20 (S.D.N.Y. Sept. 2, 2005) (finding lost liberty damages to be independent type of damages and calculating by comparison to other

awards involving similar arrest and detention scenarios and durations). As the Court in *Nibbs* noted, while

> a plaintiff's frequent arrests and detentions may diminish the emotional toll or embarrassment caused by the arrest and detention at issue, they do nothing to diminish the fundamental loss of freedom implicated in a false arrest. Therefore, *Nibbs*'s arrest history is irrelevant to the question of lost liberty damages—the only type of damages Nibbs now seeks.

*Nibbs*, 822 F. Supp. 2d at 345.

This reasoning was echoed and reaffirmed in *Perez v. Duran*, 11 Civ. 5399 (JGK) (S.D.N.Y. Sept. 18, 2014) during a pretrial conference. There, plaintiff withdrew his emotional damages claim after the Court indicated that it was going to admit his arrest and conviction history as relevant to the emotional damages claim, following which the Court stated

> [T]he jury will be instructed that a prevailing plaintiff is entitled to compensatory damages for the loss of liberty inherent in a false arrest, a malicious prosecution, and a denial of the right to a fair trial. The defendant argues that the plaintiff's prior arrests and convictions are relevant to the plaintiff's loss of liberty damages. This argument is without merit.

Transcript of proceedings annexed to Massimi Decl. as Exhibit 4 at p. 30.

When the defendants continued to press the idea that plaintiff's criminal history would still be relevant because it would provide the jury with a "frame of reference when calculating damages with respect to loss of liberty and this individual plaintiff," the Court unequivocally rejected their argument:

> That argument is so fundamentally offensive. I can't begin to explain how offensive the argument is. It suggests that the value of liberty to a person who has been arrested often is less than the value of liberty to a person who has not been arrested. And that is offensive. . . .
>
> So what is left? What is left is a claim, which the courts have recognized, that every individual has a liberty interest, which is

infringed when a person is falsely arrested or maliciously prosecuted. And every individual has a worth, and that worth is the ability to do whatever that person wants to do with that person's time, not to spend that time in jail. And the worth of an individual and that person's time is the same whether that person has been arrested a lot of times or not a lot of times. And it would be wrong to begin to assess citizens, or noncitizens, in terms of whether their time is worth more or less based upon whether they have been arrested many times before or not. It would attempt to devalue the worth of individuals, and you can't do that. That's why I said your argument is wrong. . . .

Massimi Decl., Exhibit 4 at 34-35, 38.

The Court responded to defendants' subsequent inquiry into the scope of the testimony plaintiff would be entitled to offer concerning his imprisonment, which Judge Koeltl defined as follows:

You know what the plaintiff is going to say. You have the plaintiff's deposition. No one has favored me with the specific portions, but I would think that the plaintiff would be entitled to introduce the plaintiff's testimony about how long the plaintiff was put in a cell, what the circumstances of the cell were. And, in turn, there are, as I have already indicated, some instructions: The plaintiff is not seeking emotional damages. If you find that there was a false arrest, the plaintiff is entitled to compensatory damages, not simply nominal damages.

Massimi Decl., Exhibit 4 at 38.

In light of the foregoing, the Court should preclude the Defendants from inquiring into Plaintiff's prior contacts with police and law enforcement.

## III.  THE COURT SHOULD PRECLUDE DEFENDANTS FROM INQUIRING INTO PLAINTIFF'S PRIOR CONDUCT AT OTHER DEMONSTRATIONS OR PROTESTS

Similarly, there would be no legitimate reason for the Defendants to present evidence of Plaintiff's conduct at protests or demonstrations other than the protest which gave rise to this lawsuit, because such evidence is irrelevant and would be submitted

solely for expressly prohibited purposes, i.e., to show Ms. Rocek's propensity to commit crimes and bad moral conduct as a recidivist protester. *See, e.g.,* Fed. R. Evid. 404. Further, such evidence would be of no (or only limited) probative value to any issue in the case, yet highly prejudicial. Fed. R. Evid. 403.

At Plaintiff's deposition, the Defendants asked Plaintiff whether she had ever "been involved in demonstration activity that's not related to Occupy Wall Street." Plaintiff answered as follows:

> Prior to Occupy Wall Street, I was involved with some LGBT rights groups on campus that staged some demonstrations. I also attended anti-war protests while in high school. And prior to Occupy Wall Street while living in New York I attended rallies in support of the Islamic Community Center in Lower manhattan [sic].

At Plaintiff's deposition, the Defendants also asked her whether she had been involved in any demonstration activity since the date of the incident giving rise to her lawsuit. Plaintiff answered as follows:

> Subsequent Occupy Wall Street protests, climate change actions, immigrants' rights action, anti-racism, anti-police brutality and Black Lives Matter. In most or all of those I attended as a medic.

Defendants also asked Plaintiff about her history of attending Occupy Wall Street protests – specifically, how many Occupy Wall Street demonstrations or protests she attended – other than the subject incident, to which Plaintiff answered as follows:

> I would guess around 40 counting, you know, small marches out of Zuccotti Park which happened on a, you know, sometimes more than a daily basis during the occupation.

Plaintiff also testified that, following the subject incident, she attended approximately 40 to 50 protests or demonstrations.

Plaintiff's history of going to protests and demonstrations are entirely irrelevant to the issues to be tried and – because they related to Plaintiff's political and social opinions, including her support of the Occupy Wall Street movement – could cause Plaintiff unfair prejudice with jurors who are socially conservative or who otherwise disapprove of such opinions and the politics underlying them, which issues have nothing to do with this case. Accordingly, the Court should grant this aspect of Plaintiff's motion.

## IV. THE COURT SHOULD PRECLUDE THE DEFENDANTS FROM REFERRING TO OR INQUIRING ABOUT PLAINTIFF'S POLITICAL OR SOCIAL BELEIFS, OR HER OPINIONS REGARDING OCCUPY WALL STREET

At Plaintiff's deposition, Defendants asked her about her understanding of Occupy Wall Street. Additionally, Plaintiff disclosed certain social media statements in discovery that reflected unfavorable opinions about police and law enforcement, using derogatory language to describe both.

The Court should preclude the Defendants from eliciting such evidence at trial and from inquiring into it. Plaintiff's political opinions or beliefs may be unduly prejudicial to Plaintiff because the jury may draw impermissible conclusions about Plaintiff's political affiliations or opinions of law enforcement. As argued in Point III, above, this type of evidence could cause Plaintiff unfair prejudice with jurors with different political opinions than Plaintiff or who otherwise disapprove of Plaintiff's opinions, the politics underlying them, or her manner of expressing them, which issues have nothing to do with this case. Thus, especially in light of the fact that this evidence is not relevant, the Defendants should be precluded from raising it at trial.

## V. THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCEING CERTAIN SOCIAL MEDIA POSTINGS DISCLOSED BY PLAINTIFF

Ms. Marom has produced documents (Bates Nos. P117-124) consisting of private social media postings containing statements from Plaintiff and other non-parties. The postings contain inflammatory language and opinions from Plaintiff and others about law enforcement and the NYPD and should not be offered as evidence at trial.

The Defendants should be precluded from referencing these documents at trial because (1) they constitute hearsay; and (2) they are inflammatory and unduly prejudicial and would serve no purpose other than to reveal to the jury Plaintiff's political opinions or opinions about the police and NYPD, to Plaintiff's prejudice.

The social media statements constitute hearsay because they are out of court statements by the original speaker: Plaintiff and other non-parties. *United States v. Krug*, 2019 U.S. Dist. LEXIS 17016, *10, 2019 WL 416946 (W.D.N.Y. 2019) ("The [social media] post is inadmissible hearsay under Fed. R. Evid. 803. It is an out-of-court statement offered for the truth of the matter asserted.").

Even if the Defendants should argue that they do not intend to put forward these statements in the social media postings for the truth of the matters asserted, the contents of the postings are inflammatory and would serve to unfairly prejudice the jury against Plaintiff and run the risk that the jury would issue a verdict in the Defendants' favor, not based on the facts of this case, but based in Plaintiff's political comments and comments about the police.

## VI.  THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERING TO ROCEK'S PRIOR CIVIL LAWSUITS OR SETTLEMENTS

As noted above, Rocek testified at her deposition that she was falsely arrested more than decade ago in an incident involving Delaware law enforcement. Rocek also

testified that she was arrested on or about September 24, 2011 in an Occupy Wall Street protest in New York. Both arrests served as the basis for two separate lawsuits for which Rocek ultimately received monetary settlements. Evidence of both prior lawsuits should be precluded at trial.

"It is well-settled in this Circuit that evidence of a plaintiff's litigiousness 'may have some slight probative value, but that value is outweighed by the substantial danger of jury bias against the chronic litigant.'" *Young v. Calhoun*, No. 85 Civ. 7584, 1995 WL 169020, at \*6 (S.D.N.Y., Apr. 10, 1995) (quoting *Outley v. City of N.Y.*, 837 F.2d 587, 592 (2d Cir. 1988)) (collecting authorities). The Court should apply this straightforward rule to exclude all evidence and testimony concerning other lawsuits filed by Plaintiff. Plaintiff has filed two civil rights lawsuits lawsuits alleging false arrest. These cases have nothing to do with any of the issues that will be before the jury at trial, and Defendants' only possible purpose in disclosing them to the jury would be to improperly prejudice the fact-finder against Plaintiff. *See Eng v. Scully*, 146 F.R.D. 74, 79 (S.D.N.Y. 1993) (use of irrelevant prior litigations "would potentially unfairly prejudice the jury against Plaintiff by painting him as a litigious character who lacks validity").

In the absence of any proof whatsoever that Plaintiff's lawsuits have been baseless or fraudulent, there is no basis for their use at trial. *See Young*, 1995 WL 169020, at \*6 (prior lawsuits admissible only "if defendants can prove that plaintiff has made similar claims that were found to be fraudulent"). Indeed, both prior lawsuits resulted in settlements to Plaintiff.

Injecting the merits of Plaintiff's prior lawsuits into the trial of this action would require an immense diversion of time and resources that is not justified by the vanishing

probative value of the information. *See Outley*, 837 F.2d at 594 ("In order for a jury properly to consider [other lawsuits], the particular details of each action, and the extent to which the bringing of each action was justified, must be before the jury. Opening up this area thus invites detailed inquiries, denials, and explanations, likely to lead to multifariousness and a confusion of issues."); *see also, e.g.*, *Hilburn v. N.J. Dep't of Corr.*, Civ. No. 7-6064, 2012 WL 3133890, at *24 (D.N.J. July 31, 2012) (sustaining exclusion of evidence regarding a prior settlement "to avoid confusion and to prevent the proceedings from diverging into the facts and circumstances of another lawsuit which, at best, would be a waste of time, and, at worst, could prejudicially suggest that Plaintiff was a serial litigant"). Here, the jury would need to consider the evidence concerning the prior false arrest actions; would need to be instructed on the different burdens of proof and standards of causation governing each set of claims; and would likely need to answer special interrogatories concerning the relative role of each factor in Plaintiff's ultimate damages—which Defendants have not even proposed. *See Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) (discussing requirement that defendant request that the jury be specifically asked any factual question necessary for its affirmative defense).

In short, any attempt by Defendants to use other litigations commenced by Plaintiff in their defense would be unduly prejudicial, irrelevant, and a waste of time.

## VII.  THE COURT SHOULD PRECLUDE DEFENDANTS FROM MISLEADING THE JURY BY PRETENDING DEFENDANTS WILL NOT BE INDEMNIFIED FOR ANY DAMAGES AWARD

Defendants should be precluded under Fed. R. Evid. 403 from suggesting or implying in any way that individual Defendants will have to pay any judgment in this case. Defendants should not be permitted to introduce evidence of their financial

circumstances because the City will indemnify them for any punitive damages awarded. It is the City's uniform and unwavering practice to indemnify damages awards for law enforcement personnel represented by the City Law Department. For example, in the context of the New York City Police Department, in sworn interrogatory responses in *Gyasi v. City of N.Y.*, No. 05 Civ. 9453 (S.D.N.Y.), the City swore that "there are no cases" in which the City Law Department "has represented a NYPD police officer and punitive damages have been assessed against the officer, and the City of New York has failed to indemnify the officer for punitive damages." Massimi Decl., Ex. 1 (*Gyasi* Interrogatory Response) at Interrogatory No. 5; *see also id.* at Interrogatory No. 7 ("there are no cases" where the City has failed to indemnify a police officer represented by the City Law Department for compensatory damages). In every case where compensatory or punitive damages have been awarded against a City police officer, the City, not the officer, paid. *See id*.

In light of the City's history of indemnifying law enforcement personnel when any damages, including punitive damages, are assessed, and the likelihood that that history will continue in this case, any evidence of the officers' financial circumstances is irrelevant, affirmatively misleading, and inadmissible. *See Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) ("It would be entirely inappropriate for a defendant to raise the issue of his limited financial resources if there existed an indemnity agreement placing the burden of paying the award on someone else's shoulders.").

As Judge Scheindlin held in *Gyasi*:

> I am not going to mislead [the jury], thinking that [a punitive damages award] comes out of the poor officer's pocket and have the poor officer say, I have a wife and three kids and a mortgage, I can barely afford the payments, and I earn only 38,000,

whatever. I am not going to have all that. If in fact the reality is that in the last 100 punitive damages awards the city has always indemnified, I am not going to have that testimony at all about his wife, kids and poor salary, because it's all irrelevant.

Massimi Decl., Ex. 2 (*Gyasi* Trans., June 29, 2006) at 6 (emphasis added).

Evidence of Defendants' financial circumstances has no relevance because Defendants will not pay a dime of any damages award, compensatory or punitive. But even if the evidence were somehow minimally relevant, its "relevance" would be substantially outweighed by the danger of prejudice and affirmatively misleading to the jury under Fed. R. Evid. 403. The individual Defendants "should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab." *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) (Posner, J.). Accordingly, the jury should not be influenced by misplaced sympathy or the mistaken belief that individual Defendants will pay any damages out of their own pockets.

## VIII.  IF THE COURT MIGHT PERMIT SPECIAL INTERROGATORIES, THE COURT SHOULD ORDER THE DEFENDANTS TO PROVIDE PROPOSED SPECIAL INTERROGATORIES BEFORE TRIAL STARTS

Defendants may seek to request special interrogatories, post-verdict, to support a purported qualified immunity defense. Plaintiff objects, as the evidence, if proven, would exclude any possibility that the Defendants were acting reasonably or in good faith, and they would not be entitled to qualified immunity. *See, e.g., Marom v. Blanco*, No. 15-cv-2017 (PKC), 2019 U.S. Dist. LEXIS 124343, at *37 (SDNY July 25, 2019) ("'Qualified immunity is unavailable on a claim for denial of the right to a fair trial where that claim is premised on proof that a defendant knowingly fabricated evidence and where a reasonable jury could so find.'") (quoting *Case, et al. v. City of New York, et al.*, 233 F.

Supp. 3d 372, 389 (SDNY 2017) (citing *Morse v. Fusto*, 804 F.3d 538, 550 (2d Cir. 2015)).

But if the Court might allow special interrogatories for any purpose, the Court should order Defendants to provide them well in advance of the beginning of trial. Special interrogatories elicit facts from the jury, and it is not fair to have Defendants build a defense by claiming facts are absent from the record, or have not been proven, without Plaintiff having an opportunity to know, upfront, what she needs to prove (or what Defendants claim did not happen). This cannot wait until the close of evidence, when it is too late for Plaintiff to supplement the record, *voire dire* on the special interrogatories, or propose jury instructions which address them.

IX. **THE COURT SHOULD PRECLUDE DEFENDANTS OR OTHER WITNESSES FROM TESTIFYING OR OTHERWISE PRESENTING DOCUMENTARY EVIDENCE OF MILITARY SERVICE, AWARDS OR COMMENDATIONS THEY RECEIVED DURING THE COURSE OF THEIR EMPLOYMENT AS LAW ENFORCEMENT OFFICERS.**

In police misconduct trials, law enforcement officers, whether testifying as defendants or non-party witnesses, frequently attempt to discuss awards and/or commendations that they have received throughout their career relating to acts of purported bravery, valor, etc. Because such testimony is irrelevant to any issue at trial, represents impermissible propensity evidence in violation of Fed. R. Evid. 404(b), is inadmissible hearsay and otherwise unduly prejudicial, Plaintiffs seek an Order precluding the Defendants, and any law enforcement witnesses, from presenting such evidence.

Whether the individual defendants or non-party law enforcement officers received commendations in the past has no relevance on whether Defendants violated Plaintiff's

civil rights in this case. In fact, the sole purpose of presenting such testimony in police misconduct litigation is to convince the jury that the law enforcement officers are heroes who put their life on the line to protect the citizenry, and, as a result, are more trustworthy. This purpose, however, constitutes inadmissible hearsay. *See* Fed. R. Evid. 404(b). It is also inadmissible hearsay, whose non-existent probative value is necessarily substantially outweighed by its danger of unfair prejudice. *See United States v. Nazzaro*, 889 F.2d 1158, 1168 (1st Cir. 1989) (in criminal prosecution for conspiracy to commit mail fraud and perjury, among other things, it was appropriate to exclude evidence of commendations as impermissible opinion evidence and inadmissible hearsay); *See also United States v. Washington*, 106 F.3d 983, 999 (D.C. Cir. 1997) (commendations not admissible under Fed. R. Evid. 404(a)(1), 405(a), or 405(b)).

Put most simply, these factors do not make any witness more or less credible or truthful, and thus evidence of such unrelated service would be improper bolstering, as it would wrongly enhance the officers' credibility. Accordingly, any reference to the military history, community service, and civic service of any of the NYPD witnesses, including any of the defendants, should be excluded.

## X. THE COURT SHOULD PERMIT PLAINTIFF TO EXAMINE NYPD-AFFILIATED WITNESSES THROUGH THE USE OF LEADING QUESTIONS.

Plaintiff intends to call at least some Defendants and law enforcement witnesses in her direct case. Plaintiff moves to be allowed to examine them with leading questions.

Rule 611 of the Federal Rules of Evidence provides, in relevant part, as follows:

(c) Leading Questions. Leading questions should not be used on direct examination except as necessary to develop the witness's testimony. Ordinarily, the court should allow leading questions:

> (1) on cross-examination; and
> (2) when a party calls a hostile witness, an adverse party, or a witness identified with an adverse party.

Fed. R. Evid. 611(c). By its terms, Fed. R. Evid. 611(c)(2) permits a party to examine "a hostile witness…or a witness identified with an adverse party" through the use of leading questions.

Plaintiff should be permitted to examine Defendants and other law enforcements witnesses called in Plaintiff's direct case through the use of leading questions because they are all employees of the New York City Police Department and former Defendants in the related *Caravalho* lawsuit, in which they were represented by the same counsel in this case. Therefore, they are "a hostile witness…or a witness identified with an adverse party."

As Judge Weinstein has noted, there are three reasons that historically weigh in favor of requiring non-leading questions on direct examination:

> First, that the witness is presumed to have a bias in favor of the party calling him; secondly, that the party calling a witness, knowing what that witness may prove, might by leading bring out only that portion of the witness' story favorable to his own case; and thirdly, that a witness, intending to be entirely fair and honest might assent to a leading question which did not express his real meaning.

Weinstein's Federal Evidence § 611.06, at 4-611 (citation and footnote omitted). None of these rationales apply here.

Plaintiff believes that non-party law enforcement witnesses will side with their fellow officers. Again, as Judge Weinstein has recognized, "[t]he prohibition against leading is inapplicable to hostile or biased witnesses, or to witnesses who sympathize with the opponent's cause or are unwilling for any other reason to reveal what they know." *Id. See also Bixby v. KBR, Inc.*, No. 09 Civ. 632(PK), 2012 U.S. Dist. LEXIS

143807 (D. Or. Oct. 4, 2012) ("I interpret the phrase 'a witness identified with an adverse party' as referring to a witness whose relationship to an opposing party is such that the witness' interests vis-à-vis the litigation proceedings in which the witness' testimony is offered can reasonably be expected, under all the applicable circumstances, to be either identical to those of the adverse party or, at minimum, both closely aligned with those of the adverse party and of comparable significance.") (relying on *Chonich v. Wayne Cty. Cmty. Coll.,* 874 F.2d 359 (6th Cir. 1989), and *United States v. Hicks*, 748 F.2d 854 (4th Cir. 1984)).  Plaintiff should be able to examine the Defendants and any law enforcement witnesses through the use of leading questions.

## XI.   THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCING PREVIOUSLY-DISMISSED CLAIMS, PARTIES, OR OTHER LAWSUITS STEMMING FROM THE SUBJECT INCIDENT

Defendants should be precluded at trial from referencing previously dismissed claims, previously-dismissed parties, and from referencing other related lawsuits stemming from the same incident (including *Caravalho*). To be relevant, evidence must meet the requirements of Fed. R. Evid. 401 and must tend to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.

Relevant evidence may still be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. Fed. R. Evid. 403. Thus, Defendants should be precluded from introducing any evidence of claims, parties, or other lawsuits other than the sole claims that remain in this case: Plaintiff Rocek's claims for denial of her fair trial rights. Courts routinely grant motions to preclude evidence related to

previously-dismissed claims. *Olutosin v. Gunsett*, 2019 U.S. Dist. LEXIS 189289, *45, 2019 WL 5616889 (S.D.N.Y. 2019); *Morales v. New York State Dep't of Labor*, 530 F. App'x 13, 15 (2d Cir. 2013) (affirming the district court's exclusion of evidence related to a claim that "had already been dismissed at summary judgment").

Allowing any evidence or testimony regarding these dismissed claims, parties, or other lawsuits would be wholly irrelevant and would only serve to confuse the jury as to the actual claim at issue at trial. Further, if the jury hears that certain other claims or parties were previously advanced in this action, it would be highly prejudicial to Plaintiff, as the jury may draw impermissible conclusions about the strength or merit of Plaintiff's remaining claims. In order to address any potential prejudice from admitting evidence of previously-dismissed claims, parties, or lawsuits, the Court would need to instruct the jury as to the different legal standards that were at play as well as regarding the reasons for the dismissals, and/or give the jury other instructions to reduce the possibility of the jury's drawing impermissible inferences or conclusions from such evidence. Accordingly, the Court should preclude Defendants from referencing previously-dismissed claims, parties, or other lawsuits stemming from this same incident.

## XII. THE COURT SHOULD PRECLUDE DEFENDANTS FROM REFERENCING PLAINTIFF'S MENTAL HEALTH HISTORY

Plaintiff is seeking compensatory damages for loss of liberty, related "garden variety" emotional distress, and punitive damages. As such, defendants should not be allowed to inquire into Plaintiff's mental health. "[A]s long as the plaintiff seeks only 'garden variety' emotional distress damages, he has no obligation to disclose medical information." *Gropper v. David Ellis Real Estate, L.P.*, 2014 U.S. Dist. LEXIS 22296, at *5 (S.D.N.Y. Feb. 14, 2014) (citing *In re Sims*, 534 F.3d 117, 141-42 (2d Cir. 2008); *In*

*re Consolidated RNC Cases,* No. 04 Civ. 7922, 2009 U.S. Dist. LEXIS 40293, 2009 WL 130178, at *5-7 (S.D.N.Y. Jan. 8, 2009)).

The seminal case discussing mental health injuries in civil rights litigation is *Sims v. Blot*, 534 F.3d 117 (2d. Cir. 2008).  Here, like in *Sims*, Plaintiff is not asserting a mental health damages claim.  *Id.* at 136.  As such, an inquiry into her mental health history would violate her psychotherapist-patient privilege.  The 2nd Circuit explicitly reminded the district court that the psychotherapist-patient privilege is not subject to a balancing analysis, *Id.* at 142, and that mental health evidence's exclusion, even as it relates to liability, is the rule, not the exception, *Id.* at 141-142.

 "[A] claimant does not waive the privilege simply by requesting damages for pain and suffering, but rather must affirmatively plead claims of mental or psychological injury and seek damages based upon those claims." *Pelosi v. Spota*, 607 F Supp 2d 366, 376, n 11 (EDNY 2009) (citing, *inter alia, Kunstler v. City of N.Y.*, 242 F.R.D. 261, 264 (S.D.N.Y. 2007) ("[A] party does not put his or her emotional condition in issue by merely seeking incidental, 'garden variety,' emotional distress damages.") (internal citation and quotations omitted). In fact, when a plaintiff only alleges garden variety emotional distress, these records are not even discoverable. *See Manessis v. New York City Dep't of Transp.*, No. 02-CV-359 (SAS) (DF), 2002 WL 31115032, at *2 (S.D.N.Y. Sept. 24, 2002) (collecting cases).

Mental health issues and treatment have a stigma, so admitting any evidence of mental health treatment would be inherently prejudicial. Because Ms. Rocek's mental health history is irrelevant, and because admitting evidenc about it would be distracting and prejudicial, the Court should preclude Defendants from eliciting evidence about it.

**XIII. THE COURT SHOULD PRECLUDE DEFENDANTS FROM INQUIRING INTO PLAINTIFF'S DRUG AND ALCOHOL USE**

Defendants should be precluded from inquiring into any past drug or alcohol use by Plaintiff. There is no evidence Ms. Rocek was under the influence of drugs or alcohol at the time of her arrest, detention, or any other time relevant to her claims herein. A witness's use of drugs or alcohol, in and of itself, is not probative of their character for truthfulness. *See United States v. DiPaolo,* 804 F.2d 255 (2nd Cir. 1986) ("'a general habit of intemperance tells us nothing of the witness's testimonial incapacity [unless it involves] actual intoxication at the time of the event observed or at the time of testifying…[and] it will usually not be admissible")*; Furlong v. Circle Line Statue of Liberty Ferry*, 902 F. Supp. 65, 68 (S.D.N.Y. 1995) (witness's alleged cocaine use two and one-half years before the event giving rise to the lawsuit was not proper impeachment material since it could not have affected the witness's ability to observe and perceive the events and the drug use was not probative of untruthfulness); *Nibbs v. Goulart*, 822 F. Supp. 2d 339, 346, 2011 U.S. Dist. LEXIS 106998, *15-16 (S.D.N.Y 2011) ("To permit Defendants to introduce evidence of Nibbs's long-term marijuana use or to question Nibbs about the effects of marijuana use on his memory or ability to recollect in general would be grossly prejudicial and of indeterminate relevance without scientific evidence or expert testimony. Therefore, Defendants may not raise the issue of the effects of long-term marijuana use on Nibbs's memory"); *see also In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 4410008, at *6 (S.D.N.Y. Aug. 18, 2016) (finding evidence of drug use to be highly prejudicial); *Gordy Co. v. Mary Jane Girls, Inc.*, No. 86-CV-6814 (RWS), 1989 WL 28477, at *6 (S.D.N.Y. Mar. 24, 1989) (excluding evidence of Rick James' drug use, because drug use is highly

prejudicial and "should usually be excluded in a non-narcotics trial", quoting *United States v. Ong*, 541 F.2d 331, 339–40 (2d Cir. 1976)).

Thus, the Court should not permit the Defendants to inquire into these issues.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her motions *in limine* in their entirety.

/S/

_____

Gideon Orion Oliver
*Attorney for Plaintiff*
Miriam Rocek
277 Broadway, Suite 1501
New York, NY 10007
Tel: (646) 263-3495
Fax: (646) 349-2914
Email: gideon@gideonlaw.com

/S/

_____

Jessica Massimi
*Attorney for Plaintiff*
Miriam Rocek
99 Wall Street, Suite 1264
New York, NY 10005
jessica.massimi@gmail.com
646-241-9800