# EXHIBIT 3

# *WILLIAMS* TRANSCRIPT

C73JWILC                              Conference

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    JIMMY WILLIAMS,

4                    Plaintiff,

5              v.                              11 Civ. 5202 JGK

6    THE CITY OF NEW YORK, et al.,

7                    Defendants.

8    ------------------------------x

9                                             July 3, 2012
                                              11:00 a.m.
10

11

12   Before:

13                        HON. JOHN G. KOELTL,

14                                            District Judge

15

16                            APPEARANCES

17

18   DARIUS WADIA, LLC
          Attorneys for plaintiff
     BY:  DARIUS WADIA, Esq.
19                   Of counsel

20

21   MICHAEL A. CARDOZO,
     Corporation Counsel for the
     City of New York
22        100 Church Street
          New York, New York  10007
23   MELISSA WACHS,
     MORGAN DAVID KUNZ,
24        Assistant Corporation Counsel

25

C73JWILC                        Conference

1              (In open court)

2              (case called)

3              THE COURT:  Good morning.

4         All right.  This is the final pretrial conference,

5    though it is possible we may have another.  I reviewed the

6    joint pretrial order, and the joint pretrial order is fine.  I

7    would note that there are plainly some exhibits that have not

8    been agreed to.  I'll sign the joint pretrial order.

9              I need requests to charge and voir dire from the

10   parties.  I have motions in limine, but I don't have requests

11   to charge and voir dire.  You should get that to me by Friday,

12   that will be July 6th, and you all are on ready trial 48 hours'

13   notice.  On this Friday, July 6th.

14             I did it that way because I have another case that is

15   going to trial on Monday, and if for some reason that case

16   doesn't go to trial on Monday, I will be available to try your

17   case beginning either on Monday or Tuesday.  If that case does

18   go to trial, the case is supposed to last less than two weeks

19   and so you're next, and that would be July 23, but you're on 48

20   hours' notice beginning July the 6th.

21             Looking at the time limits that you all set out for

22   the trial, the parties expect the trial to last no more than

23   four days, so each side will have seven hours for testimony,

24   either direct, cross, redirect, rebuttal testimony.  When

25   you're examining a witness, that will be charged to your side.

C73JWILC                    Conference

1    It is only testimony that will count towards your clock.  When

2    you start examining a witness until the time you end examining

3    that witness, it is charged to your clock.  Openings,

4    summations don't get charged against the clock.

5            You should get my trial rules from Mr. Fletcher if you

6    haven't already gotten them.  Have you gotten them already?

7            MR. WADIA:  No, your Honor.

8            THE COURT:  We'll make sure that Mr. Fletcher gives

9    you the trial rules, and one of the things that I want to

10   stress is that I discourage sidebars.  I am prepared to meet

11   with you in the morning before the jury comes, at lunchtime, at

12   breaks, at the end of the day.  Mr. Fletcher will give you the

13   trial rules and the jury rules before you leave.

14           So you can send me faxes if there is an issue that you

15   anticipate coming up, raise it with me in advance so that we

16   can talk about it and we don't have to waste the jury's time

17   while they watch the lawyers gather with the judge at the

18   sidebar.

19           The first day of trial we begin at 9:00 am, so that if

20   any issues come up, we can talk about them before we actually

21   bring up the voir dire panel.  Other than the first day of

22   trial, we'll sit 9:30 to 12:45 and 2:00 until 4:30.  There will

23   usually be a break in the morning and in the afternoon.

24           If there is something to be taken up with me, I'll ask

25   you to come in at 9:00.  If there is nothing to be taken up

C73JWILC                    Conference

1   with me, I'll ask you to come in at 9:15 so that you're here

2   before the jury comes.  The jury will go to the jury room, but

3   that way you avoid passing the jury in the hall.

4           You should get my jury rules.  I use the struck panel

5   method.  I'll seat 8 jurors.  The case is expected to last less

6   than two weeks, so you'll have 14 jurors in the box during jury

7   selection.  They will be asked questions.  If it is necessary

8   to remove a juror for cause, another juror from the pool will

9   replace that juror and we'll continue with the jury selection.

10          At the end of the -- I urge you, if there are any

11  objections to cause, to bring them up to me as we go along.  It

12  will probably arise at the sidebar because if there is any

13  answer from a juror that I think should be followed up, I'll

14  bring the juror to the sidebar.  If both sides agree on a

15  challenge for cause, I will probably agree on that challenge

16  for cause and it will expedite the jury selection process.

17          After the voir dire is complete, I'll ask at the

18  sidebar if there are any challenges for cause and if there are

19  any further questions to be asked of the jury.  Then you'll

20  have the opportunity to exercise your peremptories in the

21  robing room.  Each side gets three peremptories, so after you

22  exercise your peremptories, three on each side against the 14,

23  we'll be left with your jury of eight trial jurors.

24          The decision of the jury has to be unanimous unless

25  you all agree on a less than unanimous verdict.  If you have,

C73JWILC                    Conference

1    let me know about that.

2            I now have the group of motions in limine, but I don't

3    have responses to the motions.  So it may be that all of these

4    cannot be resolved now without a response, but I think that

5    many of them can simply be resolved because I don't think that

6    many of them are really disputed in some way.  Let's start with

7    the plaintiff's motions in limine.

8            MR. WADIA:  Your Honor, may I address -- I didn't want

9    to interrupt your Honor.

10           Your Honor, I have been working on responses which I

11   will be happy to submit to the court.  I did want to raise -- I

12   understand your Judge's order, and of course I understand the

13   importance of abiding by your Honor's order -- I did want to

14   address two things regarding the scheduling.

15           I am leaving for the 4th of July weekend and won't be

16   back until Monday.  Your Honor, on Tuesday I have scheduled a

17   criminal trial in state court in which my client has been

18   incarcerated for approximately 9 months.  As your Honor

19   probably knows well, criminal cases in state court are often

20   scheduled for trial and then don't go to trial.

21           However, if the case doesn't go to trial in July, your

22   Honor, my client may then, because of everybody's vacation

23   schedules, be tried in September which is something that I know

24   about the state court, and my client might want to avoid that

25   happening since he is incarcerated.

C73JWILC                    Conference

 1              THE COURT:  That is fine.  A certificate of

 2    engagement --

 3              MR. WADIA:  I just didn't want to sneak it on you.

 4              THE COURT:  If you are otherwise engaged -- I expect

 5    my other case really to be going forward -- if you are

 6    otherwise engaged on this coming Tuesday, you couldn't be

 7    called on this case.  I accept that.

 8              MR. WADIA:  Unless this case is -- my concern is that

 9    we start on Monday, and then I'll be engaged on this case, I

10    understand that, your Honor.

11              THE COURT:  No, you won't be.

12              MR. WADIA:  Okay.

13              THE COURT:  No.  The criminal case takes precedence,

14    and you tell me you have a firm trial date for next Tuesday,

15    and I'll honor that.  It is not a problem.

16              MR. WADIA:  Also regarding scheduling, I will, if your

17    Honor orders him to be in by Friday, I will have my proposed

18    voir dire and jury instructions, but I would --

19              THE COURT:  No.  I can extend that.

20              MR. WADIA:  -- ask for an extension and also the

21    opportunity to reply to the motions which I probably will have

22    for your Honor by Friday insofar as you're almost done.

23              THE COURT:  The requests to charge and voir dire I can

24    set another date first, and second I really believe that many

25    of the motions can be resolved without responses from the other

C73JWILC                    Conference

1   side.  Let's see where we are at the end of the day with

2   respect to the motions in limine on both sides.

3           MR. WADIA:  Sure.  Yes, your Honor.

4           THE COURT:  For example, there is dispute between the

5   parties with respect to the defendant's prior criminal history

6   and prior arrest records.  That is something that can be

7   substantially resolved if not completely resolved.  The city is

8   usually fairly astute with respect to what is admissible and

9   what is not admissible in that area, but we'll get to that.

10          There is no reason that either side has to submit

11  papers on motions that can easily be resolved at this

12  conference, so we'll see where we are.

13          MR. WADIA:  Very good.  Just the one other thing I

14  wanted to raise, your Honor, is my client's work schedule.  He

15  would want, for fear of losing his job, he would want more than

16  48 hours' notice because he can take the days off for the

17  trial, your Honor, but he has told me that with two weeks'

18  notice, he would be able to take the days off without worrying

19  about losing his job.  He works in maintenance for I think it

20  is Hudson County Light Rail, but a light rail in New Jersey,

21  your Honor.

22          It appears to me that he does have some flexibility

23  with his schedule, but he just needs to let them know in

24  advance.

25          THE COURT:  It sounds like July 23 is a firm trial

C73JWILC                    Conference

1    date.

2              MR. KUNZ:  Your Honor, we put in a letter I believe

3    outlining the officers' trial unavailability dates, and I just

4    sent an e-mail to try to get a copy of that, but we would like

5    to glance at that real quick and confirm our officers don't

6    have conflicts.

7              THE COURT:  Okay.

8              MR. KUNZ:  I'll let you know as soon as that comes in,

9    but we can proceed first with the conference.

10             MR. WADIA:  Thank your Honor.

11             THE COURT:  Plaintiff's motion, we begin with the

12   plaintiff wants to essentially exclude any evidence of the

13   plaintiff's prior criminal history.  The plaintiff's prior

14   criminal history, and, of course, this is related to a defense

15   motion, but the plaintiff's prior criminal history is set out

16   on Page 3 of the plaintiff's motion.  It consists of four

17   convictions, two felonies, two misdemeanors.  The felonies

18   occurred in 1986 and 1988 for controlled substance offenses.

19   The misdemeanors occurred in 1993 and 2004 for petty larceny

20   and criminal possession of marijuana.

21             As I read the defendant's papers, first the defendant

22   doesn't -- and there are three arrests for controlled

23   substance, criminal possession of a controlled substance 1983,

24   1984, 1988 -- first, the defendant doesn't seek to introduce

25   any of the prior convictions or the arrests under Section 404

C73JWILC                      Conference

1    (b) for some purpose such as motive, intent, pattern, and it's

2    not clear to me that the defendant seeks to introduce, or

3    attempt to introduce, any of the prior convictions, whether

4    felonies or misdemeanors, for the purposes of impeachment under

5    Section 609 if the plaintiff decides to take the stand.

6          The only issue I think -- and the defendant on this

7    can correct me if I am wrong -- is that the defendant would

8    seek to introduce the plaintiff's arrest history in order to

9    counter plaintiff's possible testimony about the emotional

10   impact of his arrest and confinement in this case with the

11   argument that the plaintiff's description, description of the

12   emotional impact on the plaintiff is not credible because this

13   was perhaps the 7th time that the defendant was arrested and

14   kept in jail for some period of time, that this was not new to

15   him, that the strip-search was not new.

16         On the other hand, the plaintiff says that the

17   plaintiff will not seek, as I understand it from the papers,

18   any damages for emotional distress.  The plaintiff makes it

19   clear that the plaintiff is making no claim for, "emotional,

20   physical or mental injury."

21         So given that, the cases that defendant relies on

22   don't appear to be providing that the -- in fact, the plaintiff

23   doesn't provide testimony about the emotional impact of the

24   arrest, and the court instructions the jury that, instructs the

25   jury there is no claim in this case for damages for emotional,

C73JWILC                          Conference

1    physical or mental injury.

2            So with that as the background, here is why I wanted

3    the parties to explain to me what their positions are because

4    both sides make their own arguments about this.  At the end of

5    the day, I don't believe that the city is attempting to offer

6    any of the prior convictions or any the arrests, provided

7    that the plaintiff abides by what the plaintiff says, that

8    there is no claim for emotional, physical or mental injury.

9    That is my overview on that issue from the papers.  So let me

10   start with the defendants.  Am I right?

11           MS. WACHS:  You are right, your Honor.

12           However, at the time of writing the motions in limine,

13   the defendants were not aware the plaintiff was willing to

14   stipulate Mr. Williams did --

15           THE COURT:  By the way, I am not faulting either

16   parties.  There are motions in limine submitted on both sides.

17           MS. WACHS:  I didn't believe you were.

18           At this point, however, we would still argue that

19   while they're only seeking compensatory damages, when the court

20   and when the jury is looking at the deprivation of liberty,

21   that that value is not an absolute, it is still something that

22   needs to be determined relative to the person from whom the

23   liberty was allegedly deprived.  We don't think it is a unit of

24   measure that can be meted out to every person who is in jail

25   for X amount of hours.

C73JWILC                    Conference

1        Please don't think the person who was imprisoned and

2   their life experiences mitigates the amount of liberty that

3   they were subject to the deprivation of.  For those reasons we

4   still would seek and would, if your Honor gives the right in

5   ops, our position his past incarceration history has everything

6   to do with how he experiences current deprivation of liberty.

7        THE COURT:  Of course, I will let you give me a paper

8   once we have defined the issues on this.  That argument is so

9   problematic because it suggests that some people's liberty is

10  entitled to less reward than other peoples' liberty because

11  they have a less personal worth, because they're, you know, in

12  a different tier of society, because they're a frequent

13  inhabitant of our prison system, that their liberty is entitled

14  to less worth, and that's a very problematic argument.

15       The cases, as I read them, allow such things as prior

16  arrests because of individual claims for emotional injuries,

17  emotional distress, and so you have to evaluate how this

18  person's emotional makeup was affected and whether they had

19  become used to this so that claims of significant emotional

20  distress are not to be credited.  That is a very different

21  issue from this person's liberty is worth less than that

22  person's liberty because this person has been in jail before.

23       Putting aside the legal problem with that, it is an

24  imprudent argument for the city to make, but it is not for me

25  to determine prudence.  I just decide the law.

C73JWILC                     Conference

1          A jury, experience teaches, does not react well to an

2     argument that says this person's liberty is not worth very

3     much, they just don't.  They're far more respectful of the

4     rights that people have.  That is why we have these cases.

5          MS. WACHS:  We are not seeking to implicate some sort

6     of cast system.  That is not our intent, not the valuation of

7     the deprivation, but the experience of deprivation.  The same

8     way a person experiences the emotional damages when he is

9     incarcerated, someone who has had their liberty -- I understand

10    you don't appreciate the prudence of this argument, but we feel

11    it still needs to be relative to the person whose liberty was

12    deprived.

13          THE COURT:  There is also a monumental 403 question

14    that I would have to resolve.

15          MS. WACHS:  We wouldn't seek to introduce the nature

16    of the arrest, just the time that was spent in incarceration,

17    and we wouldn't seek at all to go into arrest charges at all.

18    It is just the amount of time that was spent in jail.

19          MR. KUNZ:  If I could just say two little points here.

20          I think what we're saying is that when you're looking

21    at deprivation of liberty damages, the circumstances of the

22    custody are relevant, how long they were in, where they were

23    in, the conditions of the confinement that they faced, all of

24    those are relevant considerations.

25          THE COURT:  Right.

C73JWILC                    Conference

1          MR. KUNZ:  As is we believe that person's experience,

2     prior experience in custody.

3          THE COURT:  I get that.  I hear the words.  I hear the

4     argument.

5          MR. KUNZ:  In addition, your Honor, the case that the

6     plaintiff cites to, Mims, a decision by Judge Marrero in a

7     trial that we did I think within the last year, and Judge

8     Marrero ruled, which in language is what it seems like your

9     Honor is headed and did not allow that evidence to come in.  It

10    became a problem at trial because functionally when the

11    plaintiff takes the stand and begins to talk about his damages,

12    he necessarily is going to talk about the impact that the

13    custody had on him, thereby opening the door to the exact same

14    thing that the plaintiff says is not going to come out.  We see

15    a difficult problem here.

16         THE COURT:  First of all, it is not a problem to say

17    that if the plaintiff opens the door, then the defendants can

18    admit the testimony.  If a plaintiff got up and said, you know,

19    to use the most extreme case, a plaintiff took the stand and

20    said this deprivation of liberty was emotionally shattering

21    because it was unique, that obviously would not be allowed to

22    stand without rebuttal.

23         If the plaintiff took the stand and said, on the other

24    hand, I was arrested, I was placed in custody for 11 days, I

25    was strip-searched, here are the details of the strip-search,

C73JWILC                    Conference

1   with no testimony about how that impacted the plaintiff, how

2   the plaintiff responded to the impact of the strip-search, then

3   the question would be why by that testimony the plaintiff

4   opened the door to testimony that, well, it didn't affect you

5   because you had been through this before, right?

6           Particularly if there were an instruction that the

7   plaintiff is not seeking damages for, the plaintiff says,

8   emotional, physical or mental injury.

9           MR. KUNZ:  I think we totally understand what your

10  Honor is saying.  We would appreciate, and we think it is

11  prudent in this case, to give an instruction to clarify the

12  types of damages that the plaintiff is seeking.

13          THE COURT:  I may have overstated the plaintiff's

14  position.  I will listen to the plaintiff in a moment.  The

15  reason it is helpful to talk this out rather than having people

16  do more paper, which you're always entitled to do, is it seems

17  clear to me that after reading the papers, the defendants are

18  not seeking to admit any of the prior conviction history and

19  certainly not the arrest for any of the normal 404 (b) purposes

20  and not so far as I can see, with the possible exception of the

21  misdemeanor for petty larceny, for impeachment of the plaintiff

22  under 609.

23          The only thing that the defendants want to introduce

24  is the arrest history and possibly the arrests that led to the

25  convictions for the purposes of responding to any claims of

C73JWILC                    Conference

1    emotional impact on the plaintiff.  Am I right so far with

2    respect to the defendant's position?

3              MS. WACHS:  Yes.

4              MR. KUNZ:  Yes, your Honor.

5              THE COURT:  Okay.  Are you seeking to introduce for

6    impeachment the misdemeanor for petty larceny?

7              MR. KUNZ:  No, no.

8              THE COURT:  So the only issue that the defendants have

9    is you want to introduce his arrest record, and would that

10   include the arrests also for the convictions?

11             MR. KUNZ:  Yes.

12             THE COURT:  So the number of times that the plaintiff

13   has been arrested and gone through the system for the purpose

14   of placing in context or responding to any possible argument of

15   the plaintiff about the impact of this arrest on the plaintiff,

16   right?

17             MR. KUNZ:  Yes.

18             MS. WACHS:  Yes.

19             THE COURT:  Okay.  I now have the defendants'

20   position.

21             Plaintiff, am I right that the plaintiff is saying no

22   claim for emotional, physical and mental injury and the court

23   can so instruct the jury?

24             MR. WADIA:  You are correct, your Honor, yes.

25             THE COURT:  Okay.

C73JWILC              Conference

1              MR. WADIA:  I guess the -- look, I am going to be

2       exceedingly careful.  Mr. Williams was arrested at a time where

3       I believe he missed Easter and his wife's birthday, and I won't

4       do it if I have a fear that will open the door, but I don't

5       think that that's -- I think that falls even under the

6       threshold of the garden variety of emotional damages that he

7       missed certain events because he was incarcerated.

8              Your Honor, I would like to introduce that, but I will

9       err on the side of caution if I have any hint that will open

10      the door because obviously I don't want to open the door and I

11      will instruct my client not to offer that type of evidence.

12              I believe, just looking through the transcript of the

13      deposition, and I don't know if it is in there, there are

14      questions if one testifies that a strip-search was humiliating

15      or something like that, which is again not emotional damages,

16      but I will look, will take efforts to avoid that and not to

17      open the door to that, although I think it might be worth

18      having a discussion of what the parameters of what is less than

19      emotional injury are.

20              I will note that I did not allege emotional injuries

21      anywhere.  The language in the defendants' motion regarding the

22      plaintiff's allegations is, I think, you know, maybe they're

23      boilerplate language.  It is not out of anything plaintiff

24      said, although except to the extent in response to

25      interrogatory, I said he suffered emotional damages.  I am

C73JWILC                    Conference

1   afraid that might have been my -- I would say that it is true

2   in theory, but that might have been just my response without

3   having thought of the issue, but we're withdrawing that claim

4   and we will be very careful not to have him talk about any

5   emotional injuries.

6          THE COURT:  It really is very easy because we can

7   certainly talk about the parameters, but a convenient dividing

8   line would be that the plaintiff can talk about what happened

9   in all of its details, the details of the strip-search which

10  are laid out in the papers without talking about how did that

11  affect the plaintiff.

12         MR. WADIA:  I will fully abide by that, your Honor,

13  because the last thing I want to do is open the door to his

14  arrests, your Honor.

15         THE COURT:  And so it seems to me Easter and the

16  wife's birthday really falls on the line of the impact on him

17  because you're asking the jury to -- but I am perfectly happy

18  to take papers on this.

19         MR. WADIA:  I would sooner just avoid it, your Honor.

20         THE COURT:  Okay.  It appears the only issue is the

21  city may want to submit papers on why they think that this

22  evidence should be allowed as a basis for cross-examination

23  even if the plaintiff doesn't open the door and accepts an

24  instruction from the court that the plaintiff is not seeking

25  emotional, physical or injuries.

C73JWILC                    Conference

1            MR. KUNZ:  May we have a few days, and if we decide to

2      put it in writing, I will do it by the Friday deadline?

3            THE COURT:  I will give you a new deadline.  The city

4      will think about it and the plaintiff is comfortable, so it is

5      the city who may want to put in a paper.

6            That takes us to the third plaintiff's motion in

7      limine which is the plaintiff wants to exclude evidence of the

8      plaintiff's prior drug use.  It says that it is not relevant,

9      not relevant under 404, and the plaintiff says it is not

10     relevant for impeachment, and unlike Mims, there is no evidence

11     that it affected the plaintiff's perception of what was going

12     on on the day of the incident.

13            So the question is, does the city intend to or want to

14     attempt to cross-examine the plaintiff with respect to prior

15     drug use?

16            MS. WACHS:  No, your Honor.

17            THE COURT:  Okay.  So that is resolved, no

18     cross-examination of the plaintiff on prior drug use.

19            Fourth, the plaintiff seeks to preclude references to

20     the plaintiff's marital infidelity.  Does the city intend to

21     explore the plaintiff's marital infidelity?

22            MR. KUNZ:  Well, not precisely, your Honor, no.  We

23     are not arguing his marital infidelity goes to his character

24     for truthfulness.  However, there is an added kink in this

25     case.  The plaintiff's explanation of why he had a big wad of

C73JWILC                          Conference

1    cash was that he went to his children's house with his mother,

2    got the money and was going to buy presents for his kids on the

3    day in question.  We feel if he is allowed to talk about that

4    aspect of his night, painting himself as an upstanding family

5    man and leaving out the other relevant part, which is after

6    doing that, he went to his mistress' house, borrowed her car,

7    took the money and went and spent the night gambling, he will

8    be giving the jury an inaccurate picture of who he is and what

9    happened that night.

10            So to the extent that plaintiff intends to offer the

11   family history himself as an explanation for why he had the

12   cash, we feel like the jury should get the full picture.

13            MR. WADIA:  Your Honor, I think what Mr. Kunz is

14   saying is exactly what we are trying to avoid.

15            THE COURT:  You can avoid it.

16            MR. WADIA:  The full picture in their mind is that he

17   is trying to paint himself as an upstanding character.  He is

18   giving an explanation why he had money to buy his kids

19   presents, not to -- look, I hear the words and I understand

20   their position, but I disagree with it.  My concern is -- and

21   this is based also by the questioning that came out in

22   deposition -- did your wife know that you were in your

23   girlfriend's car or you had use your girlfriend's car, and the

24   answer was no.

25            So questions like that I think will paint the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C73JWILC                     Conference

1   plaintiff as someone who is of bad moral character.  I know

2   this is not such a big deal in this day and age that somebody

3   is having -- unfortunately, it is probably never a big deal in

4   any day and age -- someone is having an extramarital affair,

5   but it is a side issue.  It is not relevant to the issues here,

6   and it is for those reasons that I think that the prejudice

7   outweighs any probative value.

8          THE COURT:  But it would appear that there is a fair

9   point by the defense.  To the extent that the plaintiff wants

10  to use the money as a hook to portray himself to the jury as a

11  fine family person buying presents for his children, and the

12  fuller picture of the money is he has a lot of money, he is

13  going to use some of it for presents for his children and the

14  rest of the money he's going to spend to party and gamble, to

15  leave out the second part makes the first part misleading.

16         MR. WADIA:  Your Honor, I don't intend to leave out --

17  well, there was no partying, your Honor -- I don't intend to

18  leave out the second part about gambling.  That is interwoven

19  in this narrative.

20         It also is another explanation as to why he had the

21  cash, why he had the denominations that he had, why he left the

22  money in the car because he didn't want to gamble at all.  That

23  is part of the narrative, and I am not getting away from it and

24  I wasn't going to -- I can't get away from it, your Honor, even

25  though the fact that he is taking this money, and I guess the

C73JWILC                    Conference

1   city is free to argue that he is taking money that was maybe

2   earmarked for his children's presents and taking that money for

3   gambling, that is a fair argument because that is part of the

4   narrative here.

5              However, the fact that he did not tell his wife that

6   he was borrowing and using his girlfriend's car I don't think

7   is relevant in any way.

8              THE COURT:  That sounds correct.  Some questions go

9   too far.  Whether he told his wife about his girlfriend doesn't

10  seem to be relevant to the money so long as there is a

11  sufficient picture of the money, and if he goes to his girl's

12  house, girlfriend's house and uses his girlfriend's car, does

13  he see his girlfriend?

14             MR. WADIA:  In order to pick --

15             THE COURT:  What happens?  He has a lot of money.  He

16  goes and visits his children and gives them presents?

17             MR. WADIA:  No, your Honor.  He went shopping using

18  his girlfriend's car and he didn't buy any presents.  He was

19  going to continue shopping another day.  In the interim is the

20  night in question where he takes a portion of that money to the

21  gambling parlor, and obviously the plaintiff will testify as to

22  the reason, but he didn't want the money to be stolen because

23  those are dangerous places, and I think there is also --

24             THE COURT:  I am sorry.  What I am not getting, it

25  seems to me whether he tells his wife about his girlfriend is

C73JWILC                    Conference

1    not relevant to the facts as I've heard described.  That he is,

2    you know -- whose car is he using?  Does he see his girlfriend

3    on that day?  Is his girlfriend involved at all in terms of the

4    money?

5              MR. WADIA:  No, your Honor, but he doesn't see his

6    girlfriend because he is arrested on his way to return the car.

7    I think the issue and why I think it has to be said that it is

8    his girlfriend's car is that a friend, quote-unquote, a friend

9    wouldn't just lend somebody their car.

10             THE COURT:  Okay.

11             MR. WADIA:  All my point is, is that in the deposition

12   he was asked whether or not he's told his wife about his

13   girlfriend, and the answer was no.  Now he has at this point,

14   your Honor, and he is living with his wife and his kids at this

15   point, your Honor.  I don't know the status of him and his

16   former girlfriend who owned the car, but I think it is a side

17   issue that doesn't help the jury in any way, but it acts to

18   prejudice the plaintiff.

19             THE COURT:  Why, why is it not sufficient?  The

20   plaintiff intends to adduce it was his girlfriend's car and

21   that he had intended to visit his girlfriend.  Why isn't that

22   sufficient, without asking the additional question, the

23   relevance of which is strained, did he tell his wife he had a

24   girlfriend?

25             MS. WACHS:  That was a one-off question in a

C73JWILC                      Conference

1     deposition.  It wasn't anything the defendants intended to

2     introduce at the trial.  We wanted the fact the girlfriend

3     owned the car, and after having dinner with his family, he went

4     to get the car from his girlfriend.  We weren't trying to

5     introduce what his wife knew or what --

6              THE COURT:  Then there is no issue.

7              MR. WADIA:  There is no issue.  I don't think there is

8     anything wrong with asking if he was having dinner with his

9     family.  This is modern age where people have families and

10    girlfriends as well, your Honor.  So that is fine.  He was with

11    his kids and his kids' mother.

12             THE COURT:  There is no issue.

13             MR. WADIA:  Great!

14             THE COURT:  Plaintiff wants to preclude reference to a

15    prior lawsuit against a billiard parlor.  The city wasn't

16    intending to introduce it anyway, right?

17             MS. WACHS:  Correct.

18             THE COURT:  No issue.

19             Fifth, the plaintiff wants to exclude the fact that

20    the plaintiff was expelled from junior high school for fighting

21    and that he was involved in a fight in 2008.  The city doesn't

22    intend to introduce that, either, right?

23             MS. WACHS:  That's correct.

24             THE COURT:  Okay.  Finally, the plaintiff says that

25    plaintiff wants to make sure that the impeachment of any

C73JWILC                        Conference

<table>
</table>

1   witness is properly limited under 605, and I am sure the

2   defendant would say the defendant will abide by the Federal

3   Rules of Evidence, including Rule 609?

4               MS. WACHS:  We would.

5               THE COURT:  There you go!  Those are the plaintiff's

6   motions, and the only issue is whether the city wishes to put

7   in a paper on the use of prior arrests in the circumstances of

8   this case.

9               We then go to the defendants' motions in limine.

10              First the defendants say that the plaintiff can't have

11  a malicious prosecution claim against the police defendants at

12  this point because the officers have absolute immunity for

13  their testimony before a grand jury under the Supreme Court's

14  decision in Rehberg.  The plaintiff?

15              MR. WADIA:  Well, as to Point 1 and also Point 2, your

16  Honor, regarding the Monell claim, the plaintiff's position

17  from the start is that the city did not make their dispositive

18  motions at a time ordered by your Honor.

19              THE COURT:  Yes.

20              MR. WADIA:  These are motions in limine at this point.

21  I have countless cases, your Honor, which -- they're only

22  instructive.  Obviously, your Honor makes your own rulings what

23  you're going to do -- really countless cases that discuss the

24  purpose of the motions and in limine as to ruling about

25  admissibility of disputed evidence.

C73JWILC                    Conference

1           THE COURT:  Look, right, yes, I could deny both of the

2    motions, the first two motions on the grounds they're improper

3    motions in limine, that they're really motions for summary

4    judgment masquerading as motions in limine.

5           Also I could authorize on very short notice a proper

6    motion in limine on both of the first two issues because

7    they're important issues.  With respect to the absolute

8    immunity issue, there is certainly a reason why a motion was

9    not made earlier because the Supreme Court's case is fairly

10   recent.  It probably came out before the deadline of

11   dispositive motions.

12           MR. WADIA:  It did, your Honor.

13           THE COURT:  Absolute immunity is a pretty important

14   doctrine and it applies to immunity not only from liability, as

15   you know, so it is an important issue.

16           And, second, with respect to the Monell violation, I

17   went over the pretrial order.  I looked at the proposed

18   exhibits, and we ought not to be going to -- we were able to

19   resolve all of the plaintiff's motions in limine in what I

20   thought was a constructive way, but the city got up and said

21   yes, we are not going to introduce that.  I then look at a

22   Monell claim, and the city says there is no evidence.  Yes,

23   that should be made in a motion for summary judgment, not in a

24   motion for limine.

25           On the other hand, if there is not going to be

C73JWILC                    Conference

1    evidence to support a Monell claim and it has got to be

2    dismissed at the end of plaintiff's case, we should know that

3    now.  I could well authorize on very short notice motions for

4    summary judgment on both of those claims, absolute immunity and

5    no Monell.

6              I really, frankly, look to the plaintiff on this as to

7    whether, you know, these are real at this point and the

8    plaintiff wants to press those claims because if they are, then

9    yes, we should have quick motions in limine.  They don't have

10   to be long.  I mean the one is based on one Supreme Court case

11   that says absolute immunity, these officers cannot be liable

12   for malicious prosecution based upon their grand jury testimony

13   and it is the only way in which they are kept in for malicious

14   prosecution.  On Monell, it is a straightforward there is no

15   evidence in this case of a Monell violation.

16             On the other hand, if the plaintiff says, you know,

17   you're right, we've gotten to the end of discovery and we're

18   not pursuing a Monell claim, and as to absolute immunity I'll

19   look at the case and if I agree, we won't pursue the malicious

20   prosecution claim.

21             I am not going to -- they're not proper motions in

22   limine, but I would authorize very quick motions for summary

23   judgment on those issues if these are issues that the plaintiff

24   believes in good faith these are claims that, despite the

25   argument of absolute immunity and no evidence of Monell

C73JWILC                    Conference

1   violation, the plaintiff believes these cases can, that these

2   claims can go to trial and the plaintiff wants them to go to

3   trial.

4           MR. WADIA:  Your Honor, I mentioned this to defendants

5   as well, I am more prepared to concede as far as the Monell

6   claim.  We have the discovery.  Factually speaking, this is not

7   a claim that plaintiff feels that he can make out with the

8   facts that were adduced during discovery in this case.

9           THE COURT:  You're withdrawing the Monell claim?

10          MR. WADIA:  We are withdrawing the Monell claim.

11          THE COURT:  That is the only claim against the city.

12          MR. WADIA:  That's correct.

13          THE COURT:  No vicarious liability claim or state law

14  claim?

15          MR. WADIA:  That's correct.

16          THE COURT:  The city is dismissed as a defendant?

17          MR. WADIA:  While we are at it, we are dismissing the

18  John Does as well.

19          THE COURT:  The John Does defenses are dismissed.

20          MR. WADIA:  However, as to the malicious prosecution

21  claim, your Honor, I obviously read Rehberg, the Supreme Court

22  case which ruled the officers have absolute immunity for their

23  testimony in the grand jury, but there are some other issues

24  regarding that.

25          Firstly, as far as a time-frame concerning the amount

C73JWILC                     Conference

1   of time that the plaintiff was incarcerated, the indictment

2   appears to have been voted after the plaintiff was in custody

3   for approximately six days.  I say appears, your Honor, because

4   there is no date on the indictment.  There is a letter

5   contained in the file by which the assigned Assistant District

6   Attorney writes to the court stating that there has been a

7   voted indictment.

8          However, there is no District Attorney or Assistant

9   District Attorney on the witness list and there is no certified

10  copy of any indictment or other public record on the exhibit

11  list or that was turned over in discovery.  There is an

12  unsigned copy of -- unsigned, undated copy of an indictment.

13  So that is also an issue.  I guess it would be a second issue.

14  The first one, I don't read Rehberg to say that the officers

15  testifying in the grand jury retroactively undoes any malicious

16  prosecution claim up until the point of the grand jury.

17         Even if your Honor grants, I don't know, I should say

18  grants summary judgment based on Rehberg, even if the officers

19  have immunity from malicious prosecution based on their

20  testimony in the grand jury, does that absolve them of any

21  liability that they might have had up until the time of the

22  grand jury?

23         I don't know the answer, your Honor.  Obviously, I

24  know what my position would be.  I know what the city's

25  position would be, but I would argue that it would not.

C73JWILC                    Conference

1          Also I think Rehberg is clear, and I am sorry, your

2     Honor, I thought I printed out a copy.  I must have left it

3     somewhere.  I think Rehberg is clear in the decision that if

4     there are extraneous influences -- and perhaps I am using the

5     incorrect words -- that that is something that should be

6     considered in considering whether or not the malicious

7     prosecution claim lies.

8          In this case, there was, it is our position, falsified

9     affidavits, a falsified -- well, as important to this case, of

10    a complaint that was signed by the arresting officer which

11    stated that the drugs were in the back seat of the car, which

12    obviously it is our position, your Honor, was not true, but

13    that is perjury or violation of the statute which makes making

14    a false statement a misdemeanor.

15         So it is not based solely on the officers' testimony.

16    I think there is those two/three issues regarding Rehberg and

17    regarding the malicious prosecution claim based on the facts

18    and what I consider to be the unclear parameters of Rehberg.

19    It left, I believe, an opening and an unclear time when the

20    immunity would start.

21         You can think of an example of a case where there

22    might have been malicious prosecution, and in order to avoid

23    liability, you can just present the case to a grand jury.  That

24    would seem to be an anomalous result, your Honor.

25         I have looked at every case, your Honor, on WestLaw

C73JWILC                      Conference

1    that I could find interpreting Rehberg, and I have not found

2    these issues addressed.  So obviously I would either, if it

3    comes up, I guess we could brief the court on it or we could

4    see what happens at trial.

5           Clearly, if the jury finds for the defendant, there is

6    no need to -- there is going to be a false arrest claim here

7    anyway, so it is only one or two more instructions to the jury.

8    Clearly if the jury finds for the defendants, then it is not an

9    issue.  The testimony will not be any different except maybe

10   from the defendants' side, but I don't know how that is going

11   to be tremendously different, and it is an issue that can be

12   dealt with after trial.

13          THE COURT:  Part of your direct case would be the

14   grand jury testimony of the officers, right?

15          MR. WADIA:  No, sir.  I actually have the grand jury

16   testimony of the officers.  I got it from the -- either from my

17   client or one of his lawyers that represented him.  Apparently,

18   through oversight, I did not disclose it to the defendants.

19   They brought this to my attention.  I went back and looked at

20   the Rule 26 (a) disclosures.  I didn't disclose it to them.

21          It was a complete error on my part, and I agreed that

22   I would not use the grand jury testimony in any way.  I don't

23   intend to.  I intend to have my client state that he was

24   incarcerated for 11 days and then there is also another issue,

25   he was reincarcerated having to do with this case for a period

C73JWILC                    Conference

1    of one day.  I think that just confuses the issue and I might

2    just as soon leave that out, your Honor, that was after the

3    indictment but, no, I am not going to rely on the grand jury

4    testimony at all.  I mean I guess I could ask the officers if

5    they testified in the grand jury, but my client didn't testify

6    in the grand jury and my client doesn't have any personal

7    knowledge of when an indictment was voted or filed.

8            THE COURT:  Okay.  If that is the case, then it is

9    not -- I will listen to the city -- it is not clear to me why

10   Rehberg -- it is not clear to me how the plaintiff is going to

11   make out a malicious prosecution claim.

12           When the plaintiff says that the plaintiff is not

13   going to rely on the grand jury testimony of the officers, then

14   the fact that the officers have absolute immunity for their

15   grand jury testimony is not clear to me why that would require

16   dismissal of a malicious prosecution claim which is not based

17   on the officers' grand jury testimony.

18           MR. WADIA:  If I might just clarify.

19           You asked about the grand jury testimony itself, not

20   the fact that the officers testified in the grand jury.  In

21   other words, I am not seeking to introduce the testimony.  I

22   may, although it wouldn't be in my case in chief, your Honor,

23   because I don't intent on calling the officers, but I may ask

24   the officers whether or not they actually testified in the

25   grand jury.

C73JWILC                    Conference

1        THE COURT:  You're not calling the officers as part of
2    your direct case at all?
3        MR. WADIA:  I don't think I will.  I have listed them.
4    I may.  I don't think I will.  I think I have an idea of the
5    way my case is going at this point with the witnesses I have,
6    but I would like to know that I can if I need to, but yes.
7        THE COURT:  Okay.  It is not so -- I mean does the
8    city want to talk about this?
9        MR. KUNZ:  Yes, just real briefly, your Honor.  I
10   would just say this is a malicious prosecution claim.
11       THE COURT:  Sorry?
12       MR. KUNZ:  This is a malicious prosecution claim.
13   Probable cause is an element of malicious prosecution.  A grand
14   jury indictment creates a presumption of probable cause for the
15   purposes of a malicious prosecution claim, and there is a grand
16   jury indictment in this case.  There was a presumption there
17   was probable cause to prosecute the plaintiff for this crime.
18   That gets rid of the malicious prosecution claim.  I don't see
19   how the plaintiff can possibly rebut that presumption without
20   talking about the grand jury testimony.
21       Setting that issue aside, Rehberg does say that the
22   malicious prosecution claim should be dismissed under absolute
23   immunity because he cannot get around the presumption because
24   the officers are absolutely immune.
25       With regard to the six days, eleven days issue, I will

C73JWILC                    Conference

1    say Wallace V. Kato, the Supreme Court decision from 10 years

2    ago, says a false arrest claim runs from the arrest until the

3    arraignment.  As soon as a person is detained pursuant to legal

4    process, it is a malicious prosecution claim.  It doesn't

5    matter if the grand jury indictment happens within the 180, 80

6    days, the 60 days or months later, there is a presumption of

7    probable cause for malicious prosecution claim.

8            THE COURT:  When the defendant is arraigned on the

9    complaint?

10           MR. KUNZ:  Absolutely, that's correct, your Honor.

11           We believe that the malicious prosecution claim has to

12   be dismissed under Rehberg and that even if it is not, the

13   plaintiff will have a very difficult time overcoming the

14   presumption at the case, and as a result, his damages will be

15   limited, need to be limited to arrest to arraignment.

16           THE COURT:  It is an issue that affects my explanation

17   to the jury about what the claims in the case are at the

18   outset.  If the claims should be dismissed as a matter of law,

19   then it shouldn't be in the case when it goes, when it starts

20   to the jury.

21           The plaintiff is right that this is a motion for

22   summary judgment.  I'll let the city make it and let the

23   plaintiff respond and the city reply.  The city can move for

24   summary judgment on the malicious prosecution claim on Friday,

25   July 6th.  Plaintiff can respond July 12th.

C73JWILC                      Conference

1           Is that okay, Mr. Wadia?

2           MR. WADIA:  That is okay, your Honor, provided that I

3    am not on trial.  If I am, I will let your Honor know.

4           THE COURT:  Okay.  You couldn't get it done even if

5    you're --

6           MR. WADIA:  Well, your Honor, I am out until July 9th,

7    and I would rather not, I would rather not work on my vacation.

8    If I have to, I will.  I would rather not.

9           THE COURT:  July 13th, is that better?

10          MR. WADIA:  That is better, your Honor.

11          THE COURT:  July 13, and the city reply July 17.  I

12   will get it resolved.

13          The third defendants' motion in limine was the

14   evidence of arrest and convictions which we have already

15   disposed of.

16          The fourth defendants' motion was to preclude Donald

17   Williams from testifying.  The city says his testimony is

18   irrelevant.

19          MR. WADIA:  Your Honor, I can explain the relevance of

20   his testimony, but I can also offer a solution that may work,

21   your Honor.

22          The facts I don't think are set forth properly in the

23   defendants' motion.  What happened in this case, according to

24   both the officers' testimony in the grand jury and the

25   officers' sworn statement in the search warrant affidavit and

C73JWILC                    Conference

1    also I believe some documents that aren't going to be

2    introduced in evidence from the District Attorney's Office, is

3    that one of the officers states that at 2:00 o'clock in the

4    morning -- remember this arrest happened at approximately

5    5:30 -- at approximately 2:00 o'clock in the morning, as they

6    were driving down the block of 128th Street, one of them saw

7    the person he later recognized to be, later found out to be

8    plaintiff Jimmy Williams sitting on a stoop.

9            The other officer at about the same time told him

10   somebody just whistled, warning that we're coming down, the

11   police are coming down the street.

12           The other statement in the search warrant affidavit

13   that is in the paragraph they were on patrol for break-ins, car

14   break-ins and burglaries.  All of this is at the same time,

15   saying that plaintiff Jimmy Williams is on the street.

16   Mr. Williams states that he was at his friend's -- there is no

17   relation, your Honor -- Donald Williams' house in the Bronx at

18   this time.

19           I think the reference to hearsay, although I am not

20   sure because it contains a statement that Donald Williams

21   learned from her son some evidence and there is no talk about

22   Donald Williams being her son, your Honor, who gave him that

23   information, but I think the talk about hearsay may be that my

24   client made a phone call to Donald Williams at minutes before

25   2:00 o'clock in the morning.  Then he left Donald Williams'

C73JWILC                    Conference

1  house to buy a six pack of beer and then go back to Donald

2  Williams' house.

3        So it is the fact of the phone call, which I don't

4  intend to introduce the phone records or anything like that,

5  your Honor, but it is the fact of the phone call that he can

6  place himself in the Bronx at Donald Williams' home at the time

7  that the police say that he was on the street lurking on the

8  stoop, responding when somebody is whistling.

9        At the outset, in opposing the defendants' motion, I

10  would argue that it is not cumulative.  Donald Williams is a

11  first-hand witness to say that Jimmy Williams was there.  I

12  could go on a little bit about that.

13        My thought is this after reading, going back and

14  looking at the search warrant affidavit and the grand jury

15  testimony, I think I probably should have moved in limine to

16  keep out any reference to the officers seeing the person that

17  they later knew, later recognized to be Jimmy Williams on the

18  stoop under these circumstances because that is extremely

19  prejudicial, and I think it is included in the search warrant

20  affidavit in order to show the search, the search warrant

21  affidavit is a certain warrant for their cell phones.

22        As far as I know, nothing has come of that.  I think

23  it is included in there to say that they have probable cause to

24  think that Jimmy Williams was somehow dealing drugs with the

25  co-defendant.  I don't think that actually shows that they have

C73JWILC                    Conference

1      probable cause, the fact he is on a stoop.

2              Now, in reviewing it, if there is any way you can make

3      a cross-motion in limine, my motion would be to keep out the

4      testimony entirely and, thus, obviating the need for Donald

5      Williams' testimony, which is just fine.  I wouldn't want to

6      call Donald Williams for any other purpose but to show that

7      Mr. Williams, plaintiff Jimmy Williams, wasn't sitting on the

8      stoop at 2:00 o'clock in the morning while another person, and

9      other person happened to be a passenger in the car, whistled

10     when he saw the police.

11             THE COURT:  Okay.  The defendant?

12             MR. KUNZ:  A few things here.  I guess if Donald

13     Williams is only going to testify I received a phone call from

14     plaintiff at about 2:15 in the morning, I don't necessarily see

15     what the relevance of that would be.

16             THE COURT:  No, no.  He is also going to testify that

17     the plaintiff was with him at about 2:00 o'clock in the

18     morning.  There was a telephone call and there was a personal

19     visit, right?

20             MR. WADIA:  That's correct.  They spent the entire

21     evening together watching a basketball double-header.  So it

22     would also have been part of Mr. Williams' narrative of what he

23     was doing, but I certainly don't -- you know, it is just the

24     fact that -- it is just to set forth the facts of what he was

25     doing that evening leading up to his arrest.  It is nothing

C73JWILC                     Conference

1   that I care to dwell on.  The only reason that I would consider

2   calling Donald Williams is to rebut possible --

3              THE COURT:  He wasn't there on the stoop?

4              MR. WADIA:  That's correct.

5              MR. KUNZ:  Our point is that, so plaintiff says in his

6   deposition that from about 8:00 pm until 3:00 am, 3:15 am, he

7   is at Donald Williams' house but for a period of time there he

8   leaves at some point to go buy some more beer, I believe.

9   Correct me if I am wrong.

10             It is during that period of time he places a cell

11  phone call to Donald, his friend, to ask if he needs anything

12  else.  That is sort of the telephone call he wants to testify

13  about.  Obviously, that telephone call could have been placed

14  from anywhere, including the stoop in question.

15             So we don't necessarily see how the fact that Donald

16  Williams made a -- sorry -- Jimmy Williams made a telephone

17  call to Donald is probative towards any fact.  If that is the

18  only thing he will testify to, you know, we don't have a huge

19  problem with it other than its tenuous relevance.

20             THE COURT:  Let's take it in order.

21             The plaintiff says the plaintiff should have made a

22  motion in limine to exclude the portion of the search warrant

23  affidavit that attempts to place Jimmy Williams on the stoop at

24  2:00 o'clock in the morning.

25             MR. WADIA:  That's right, to exclude any evidence

C73JWILC                    Conference

1    regarding that, your Honor, yes.

2          MR. KUNZ:  That is not what the search warrant was

3    for.  The search warrant was for the belief that these three

4    individuals that were stopped and arrested were involved in a

5    conspiracy to sell drugs.  It is based on our experience, the

6    NYPD experience that people use cell phones to do that.

7          MR. WADIA:  And that is exactly what the jurors should

8    not hear, yes.

9          THE COURT:  So the plaintiff says you should exclude,

10   redact the portion of the search warrant affidavit that

11   attempts to place the plaintiff on the stoop at 2:00 o'clock in

12   the morning.  Does the defendant want to do that?

13         MR. KUNZ:  There is another issue here, too, which I

14   don't believe the officers testified that it was exactly 2:00

15   o'clock in the morning.

16         THE COURT:  At about 2:00.  It is the portion of

17   the -- I want to take this in order.

18         The first thing is plaintiff says we can resolve all

19   of this, just redact the portion of the affidavit that attempts

20   to place -- or testimony, don't have people testify or have the

21   affidavit that the plaintiff, Jimmy Williams, was on the stoop

22   at about 2:00 o'clock in the morning.  So the question is, is

23   the defendant prepared to do that?

24         MR. KUNZ:  No, your Honor.

25         THE COURT:  I didn't think so.  I don't see a basis to

C73JWILC                    Conference

1    do that.  Certainly there is no motion in limine.  If there

2    were, it is part of the basis for the officers believing that

3    they have probable cause.

4         Whether that was sufficient under all of the

5    circumstances is certainly a question for the jury, and then we

6    come to the question of having Donald Williams testify, and the

7    city's position now is they don't care if the plaintiff wants

8    to introduce Donald Williams, including a telephone call

9    exchanged between Donald Williams and Jimmy Williams, the city

10   doesn't care.  The city's argument is there was a break-in

11   time, and at that break-in time he could have been on the

12   stoop.

13        MR. WADIA:  They would be free to make the argument.

14        I will just say in my proffering Donald Williams, I

15   don't think that Donald Williams -- I don't know whether or not

16   Donald Williams remembers any phone call.  He knows that he was

17   with the plaintiff watching basketball that night and I believe

18   he got a call later from the precinct.

19        So again it is just to show he was there.  It is

20   plaintiff who would, if asked the question, would testify that

21   he can place the time that he left to get beer at I think 1:53

22   because he has his phone records that show that time.

23        Now, I didn't put the phone records on the exhibit

24   list because I don't really think I need to get into that type

25   of detail.  He was at his friend's house until about

C73JWILC                      Conference

1    3:00-something in the morning.

2              THE COURT:  There is no objection to Donald Williams

3    testifying, and you certainly made clear that there is relevant

4    testimony for Donald Williams to give.  So the motion to

5    preclude Donald Williams from testifying is denied.

6              The defendants' next motion is to exclude complaints,

7    unsubstantiated complaints about the defendant officers.

8              MR. WADIA:  I'll concede that, your Honor.

9              THE COURT:  Okay.  So there appears to have been only

10   one, as I adduce from the papers, one substantiated complaint

11   which had to do with failure to make a note in a memo book

12   relating to Officer Pengel.

13             MR. WADIA:  I don't intend to go into that, your

14   Honor.

15             THE COURT:  So that motion to exclude the complaints

16   about the defendants is granted.

17             There is a motion to exclude reference to the patrol

18   guide.  I don't know what the plaintiff wants to introduce from

19   the patrol guide.

20             MR. WADIA:  Two things, your Honor, but not in the way

21   that the defendants have couched it, your Honor.  I don't

22   intend to show that or to argue that the defendant officers'

23   violation -- to use a word I think they used -- of the patrol

24   guide was the cause of the violation of his civil rights.

25             The reason that I'd like to introduce the patrol guide

C73JWILC                      Conference

1  and why I did want some of it, but not exploring necessarily

2  the way I might do at trial, is that again it is specific to

3  the facts of this case, your Honor.  The question, the main

4  question in this case is whether or not the officers recovered

5  the -- or first saw the narcotics in question in plain view on

6  the seat of the car or whether they recovered it from the

7  passenger's person, from his pocket.

8          There is testimony that Officer Ehrenreich, who is not

9  the arresting officer and, therefore, not the vouchering

10 officer, took the drugs he says from the back of the car.  He

11 is not sure if he -- he uses the word "recovered" -- he is not

12 exactly sure.  He said at some point he took them and put them

13 back in the car where he says he found them in order to

14 recreate, I believe is his word, where the drugs were.  So he

15 puts them back in the car at the precinct and takes photographs

16 of them.

17         It is the plaintiff's position that he did not

18 originally see or recover the drugs from the back seat of the

19 car, but that he or he and his partner arrested Mr. Williams

20 and needed evidence of the arrest, and so he took the drugs,

21 placed them on the back seat of the car, which he did for

22 reasons I won't go into, and took pictures of them.

23         I think the provisions of the patrol guide having to

24 do with vouchering evidence could be relevant in this regard,

25 your Honor.  Now, the patrol guide doesn't say don't take the

C73JWILC                    Conference

1    evidence and put it in the car and take a picture of it.

2    However, I believe I should be able to ask the officer about

3    his knowledge of the patrol guide and of invoicing and

4    vouchering evidence.

5              THE COURT:  Defendant.

6              MS. WACHS:  If the pictures of Officer Ehrenreich's

7    recreation of the scene are sought to be introduced at trial,

8    he will fully explain the pictures he took weren't on the

9    scene, weren't taken before the drugs were touched or recovered

10   in any way.  The patrol guide doesn't speak to vouchering, but

11   has to do with chain of custody in order to keep the integrity

12   of the contraband so it can be introduced sufficiently at the

13   criminal trial.  Whether or not photographs were taken doesn't

14   have anything to do with the line of custody, as they're still

15   in the possession of the officer.

16             THE COURT:  Why is it not fair cross-examination of

17   the officer, at the very least for the purposes of credibility,

18   to ask the officer whether the procedures that the officer

19   followed were consistent with the procedures set out in the

20   patrol guide, whether he was familiar with the patrol guide,

21   whether he regularly followed the patrol guide and whether he

22   did that in this case?

23             You say well, the patrol guide doesn't really speak to

24   this.  The plaintiff says the plain implication of the patrol

25   guide is that he didn't do what he was supposed to do.

C73JWILC                    Conference

1    Plaintiff says it does deal with vouchering.  You say it is

2    really only with respect to chain of custody.

3         Why isn't that at least fair cross-examination and

4    argument from that on both sides?  The plaintiff is not arguing

5    that the violation of the patrol guide is a basis for

6    liability.  He is simply arguing that whether the patrol guide

7    was complied with or not is something to be explored for the

8    purposes of the officers' credibility as to whether he did what

9    he claims to have done.

10        If what he did was inconsistent with the regular

11   practice in the patrol guide, you would think that the jury

12   should be allowed to take that into consideration for the

13   credibility of whether the officer did what he now claims he

14   did.

15        MR. KUNZ:  There are a couple of issues here, your

16   Honor.  In the comfort of this courtroom and among lawyers, we

17   can maybe draw that distinction.  I believe the jury would get

18   confused, and this would cause prejudice to the defendants

19   because they might think that a purported violation of the

20   patrol guide is the equivalent of a constitutional violation.

21        THE COURT:  I can easily deal with that with a

22   limiting instruction as to why the patrol guide is being used

23   and what it cannot be considered for and that the violation of

24   the patrol guide is not a violation of the plaintiff's

25   constitutional rights.

C73JWILC                    Conference

1          MR. KUNZ:  We would absolutely want that instruction.

2     There is other issues here as well which is that --

3          THE COURT:  You can give me a proposed limiting

4     instruction with respect to the patrol guide.

5          MR. KUNZ:  -- there is another issue here as well

6     which is that we don't believe there was a patrol guide

7     violation in this case.  If the witness is asked did you

8     violate the patrol guide, I believe the answer is going to be

9     no.  I don't see how the plaintiff can impeach him on that.

10         He didn't do a 30 (b)(6) witness to help him interpret

11    the provisions of the patrol guide.

12         THE COURT:  He could do one to introduce those

13    provisions of the patrol guide that he says a reasonable

14    officer would have interpreted as not allowing what the officer

15    did in this case, and you both can argue from the patrol guide

16    as to whether the patrol guide allowed this or not.

17         If it is clear to you that what the officer did was

18    perfectly okay in terms of the patrol guide, then the

19    plaintiff's examination on this issue goes nowhere, it hurts

20    the plaintiff's case.  The plaintiff is trying to rely on

21    something that really, you know, it doesn't support the

22    plaintiff's case.

23         It is difficult to see what the unfair prejudice is to

24    the defendants from the introduction of portions of the patrol

25    guide that the plaintiff says undercuts the officers'

C73JWILC                    Conference

1   credibility.  The defendants say no, it doesn't.  There is

2   nothing in the patrol guide that undercuts the officers'

3   credibility when the jury is instructed that the patrol guide,

4   a violation of the patrol guide is not a constitutional

5   violation, the patrol guide is not being offered as a basis for

6   liability, but is being offered solely for the purposes of

7   considering the officers' credibility.

8            MR. KUNZ:  That is my last point on this, your Honor.

9            I don't understand how if, even if the officer did

10  something in contravention of the patrol guide, I don't

11  necessarily agree that goes to his or her credibility.  The

12  patrol guide is a guide.  The fact there may have been a

13  technical violation of its provisions I don't think in any way

14  goes to the credibility of the officer.  In fact, I think it

15  would be the opposite.  If the officer says he does something

16  that is different in the patrol guide, you think it is a

17  statement to be made it is more credible.  I am troubled by the

18  suggestion a violation of the patrol guide somehow undercuts

19  the credibility of the witness.

20           MR. WADIA:  I don't argue -- and I would also say

21  there may be other provisions of the patrol guide I would seek

22  to ask him about, not just the invoicing and vouchering.  I

23  don't argue that a violation of the -- I don't want to use the

24  word "violation," I don't argue actions taken in contravention

25  of the patrol guide, to use Mr. Kunz's words, are per se

C73JWILC                    Conference

1   evidence affecting officers' credibility.

2          My argument is that in this case where it is the

3   plaintiff's position that the officer did something that was in

4   contravention of his duties as a police officer, the fact that

5   it was also in contravention of the procedures set forth in the

6   patrol guide is relevant.

7          THE COURT:  The gist of what the plaintiff is arguing

8   is that the officers are not credible, Officer Ehrenreich, when

9   he claims that this is what he did and why he did it.  They

10  use, plaintiff uses the patrol guide in order to support an

11  argument that it makes no sense for the jury to conclude that

12  the officer really acted in a way the officer presently claims.

13         It would appear to me that the patrol guide could be

14  used like a habit or routine practice which is admissible under

15  406 if the officer, if the officer testifies that he is

16  familiar with the patrol guide, he regularly follows the patrol

17  guide, he uses it in order to follow regular procedures, and in

18  this case the plaintiff argues that what the officer says he

19  did was inconsistent with what the patrol guide would provide,

20  then the jury can be asked to question whether the officer

21  acted contrary to the regular procedure, regular habit, regular

22  practice set out in the patrol guide.

23         Now, the defendant can argue what the officer did is

24  perfectly consistent with his regular practice, perfectly

25  consistent with the patrol guide, and both sides can read the

C73JWILC                    Conference

1    patrol guide and the plaintiffs can say look what he did, you

2    know, it wasn't the way in which you would expect the police

3    officer to.  The defendant can say no, there is no reason the

4    officer can't take the evidence, secure it at the scene, take

5    the car back to the station house and put the evidence back on

6    the seat and take a picture in order to reflect that's where I

7    found the evidence.

8           It appears that that has some relevance, that it is

9    not unfairly prejudicial and that an instruction from the court

10   can make it lucidly clear what the patrol guide is being used

11   for.  So long as the defendant is correct all of this is

12   perfectly, you know, acceptable procedure under the patrol

13   guide, then there can't possibly be any prejudice much less

14   unfair prejudice because the defendant will argue that all of

15   this is perfectly consistent with the patrol guide.

16          That is what officers do all the time, they take

17   evidence and they secure it and at the station house they

18   recreate the scene.

19          MR. KUNZ:  I understand what you're saying, your

20   Honor.  I don't believe that habit testimony under 403 and

21   404 --

22          THE COURT:  406.

23          MR. KUNZ:  406, I am sorry, it meant in that

24   particular way.  I think that that is sort of a side issue and

25   I understand what your Honor's saying.

C73JWILC                    Conference

1              One additional point I want to make in this, is that

2       no provisions of the patrol guide were produced by either side

3       in discovery.  The patrol guide is a public document and the

4       plaintiff can actually download it on an Iphone.

5              THE COURT:  Isn't it on the exhibit list?

6              MR. KUNZ:  No, I don't believe so.

7              THE COURT:  No?

8              MR. KUNZ:  I don't believe it is.

9              THE COURT:  The plaintiff can answer.

10             MR. WADIA:  No, your Honor.  I am afraid that may have

11      been an oversight on my behalf.

12             MR. KUNZ:  The question is which version of the patrol

13      guide?  Is it when this incident happened?  Is it the current

14      version?

15             THE COURT:  No.  It would be the version at the time

16      of the event in question, and the parties can agree on it.

17             At this point this is a defendants' motion in limine

18      to prevent the plaintiff from using the patrol guide, and I

19      have taken it will be used on cross-examination of the

20      officers; am I correct?

21             MR. WADIA:  Correct, your Honor.

22             THE COURT:  You don't normally have to put an exhibit

23      to be used only on cross on the exhibit list.

24             MR. KUNZ:  For impeachment?

25             THE COURT:  For impeachment, and that is what the

C73JWILC                    Conference

1    plaintiff would intend to do to use it with the officers.

2          But you're right to say the issue has come up, it came

3    up in the defendants' motion in limine and the plaintiff should

4    provide the correct version of the specific provisions of the

5    patrol guide that he wants to examine the witnesses on so that

6    both sides have it and it should be the copy that was in effect

7    at the time.

8          You're right, it is a public document.  It is also a

9    document that has, unless I am wrong, come up in lots of cases

10   under very similar circumstances, cross-examination of officers

11   on whether they followed the regular procedures of the patrol

12   guide when they did something.

13         MR. KUNZ:  In the trials I have done where the patrol

14   guide has come up, it goes to a claim against the City of New

15   York in regard to a municipal policy or practice.  I don't

16   believe I have seen it in cases where there is no Monell claim

17   and they are proceeding against individual officers, but I

18   think at this point we're absolutely crystal clear on your

19   Honor's point of view.

20         We would like to take a look at the patrol guide

21   provisions the plaintiff gets us, and if we want to provide

22   additional arguments, we can do that.

23         MR. WADIA:  I'll get them two provisions, but I will

24   do that.  It is not just the invoicing provision.  There is

25   also a provision regarding cameras, checking out cameras, your

C73JWILC                    Conference

1    Honor.  I didn't want it to be said I am springing it on

2    anybody.

3              THE COURT:  Thank you.  You're very forthcoming.  I

4    appreciate it.

5              7.  Exclude evidence that the city potentially

6    indemnifies the defendants.

7              MR. WADIA:  Your Honor, I had prepared my arguments

8    based on the fact that the city at the time that I was

9    preparing my arguments would be a party to this case insofar as

10   the people didn't move to dismiss the Monell claims as they

11   were ordered to in your Honor's schedule.

12             So I don't want to make an argument.  I would rather

13   tell you I am unprepared to argue this rather than make an

14   argument off the cuff.

15             THE COURT:  I will give you guidance on this and you

16   can certainly brief it.  It is not conceivable to me -- but you

17   are welcome to brief it -- that the issue of indemnification

18   could ever come up rightfully in the trial except perhaps on

19   the determination of punitive damages, on the amount of

20   punitive damages if the financial status of the officers became

21   an issue.

22             It really doesn't appear to be any different from

23   insurance cases, and if the defendants don't say or put in

24   issue their financial status in order to get consideration from

25   the jury to reduce an amount of punitive damages, then the

C73JWILC                    Conference

1    plaintiff shouldn't be entitled to say, to broach the subject

2    of possible indemnification subject to all of the problems of

3    indemnification when the city hasn't agreed on indemnification

4    yet.  Put those problems aside.

5             The only conceivable place where indemnification would

6    come up is the amount of punitive damages, and then only I

7    think if the defendants made a claim of financial inability in

8    some way.  So the defendants could open up the possibility of

9    the issue depending upon what position they took.

10            If either party thought that there would be testimony

11   about financial status, either for or against either financial

12   ability or inability, it would not go to any issue other than

13   the amount of punitive damages; and, therefore, I would

14   bifurcate the amount of damages, I would allow the jury to

15   decide liability and whether the jury determined that punitive

16   damages should be awarded.

17            I would then, after the jury brought in that verdict,

18   I would allow the parties to introduce any other evidence which

19   went solely to the amount of punitive damages, including

20   financial status, and I would listen to arguments over

21   indemnification.

22            If the parties don't seek to introduce any other

23   evidence on the issue of the amount of punitive damages, then I

24   cannot even bifurcate because I can give the entire case to the

25   jury and ask them whether there is liability, what the damages

C73JWILC                    Conference

1   are, do they believe that punitive damages should be awarded

2   and, if so, what amount of punitive damages because the parties

3   aren't seeking to introduce any other evidence which goes

4   totally to punitive damages.

5           So the parties should, and you're welcome to brief

6   your issue of indemnity if you want, but the parties should

7   advise me at trial whether they will seek to introduce any

8   other evidence which relates solely to the issue of punitive

9   damages.

10          MR. WADIA:  I will abide by your Honor's ruling.

11          THE COURT:  Okay.  If you want to brief it, you are

12  welcome to.

13          MR. WADIA:  If I want to brief it, I will get it to

14  you by Friday, your Honor, but I don't believe I will be.

15          THE COURT:  Okay.  The next is defendant says the

16  plaintiff should be precluded from referring to a specific

17  dollar amount.

18          MR. WADIA:  I understand that to be the law, your

19  Honor.

20          THE COURT:  You'll follow it.

21          MR. WADIA:  I will follow it.

22          THE COURT:  The 9th motion in limine is to strike the

23  John and Jane Doe defendants.

24          MR. WADIA:  Which we have done.

25          THE COURT:  The plaintiff agreed.

C73JWILC                    Conference

1          MR. KUNZ:  Since the City of New York is dismissed, to

2     remove the city from the caption as well.

3          THE COURT:  Yes, sure, I'll issue an order which

4     strikes the city and the Doe defendants in the caption.

5          MR. WADIA:  Your Honor, before we finish with the

6     motions in limine, after listening again to the defendants and

7     your Honor regarding the testimony of a police officer who says

8     they saw Mr. Williams on the street at 2:00 o'clock in the

9     morning, and something Mr. Kunz said and your Honor said about

10    the totality of the circumstances as far as probable cause,

11    this case is a little bit unique in that, I don't know how

12    unique it is, but probable cause here rises and falls, on the

13    way I see it, your Honor, on whether there were drugs in the

14    back seat of the car.

15          So even if the officers saw Mr. Williams and even if

16    they were highly suspicious of Mr. Williams, if there were not

17    drugs on the back seat of the car, anywhere open in the car,

18    they would not have been able to rely on the automobile

19    presumption and arrest Mr. Williams.

20          This is where the officers' observations of

21    Mr. Williams is not relevant to the ultimate question of

22    probable cause because even though normally probable cause

23    is -- and I guess we'll discuss this when we discuss the jury

24    instructions -- probable cause relies on the totality of the

25    circumstances.

C73JWILC                    Conference

1          Here there are no other circumstances which I believe

2     would give the officers probable cause to arrest Mr. Williams

3     even with the money in the car and the fact, if the jury

4     accepts it as true, he looked like a shady character sitting on

5     a stoop.  "Shady" is my words, not the officers' words.

6          So it is hearing the defendants and listening to your

7     Honor's ruling, it now strikes me as even less relevant and

8     more prejudicial than I originally had thought.

9          THE COURT:  It would be, it would be remarkable to me

10    if the jury were not allowed to hear the circumstances under

11    which the officers claim they had seen the defendant on the

12    same night.  It would be a partial description of what led up

13    to the arrest and the background to the arrest.

14         I understand, I understand what you've said and we can

15    certainly talk about it in terms of instructions to the jury,

16    and, if necessary, special interrogatory in order to clarify

17    your issue, but it is certainly part of the background to the

18    arrest.

19         The premise of your argument is that it has nothing to

20    do with the arrest, the arrest must turn solely on the drugs in

21    plain view in the car.  If that is right, then, of course, it

22    is not prejudicial because, as you say, it is simply irrelevant

23    that the defendant was allegedly with that group on the stoop

24    earlier in the early morning.  It is not unfairly prejudicial

25    because it has such, as far as you're concerned, such little

C73JWILC                    Conference

1    weight, such little impact.  It doesn't indicate anything.  In

2    my view, its relevance is not substantially outweighed by the

3    danger of unfair prejudice.

4            MR. WADIA:  I can tell you why I think it is

5    prejudicial.  Obviously, I know your Honor's ruling, although I

6    think it is unduly prejudicial because of the circumstances of

7    the officers saying that they were doing patrol regarding

8    break-ins and burglaries and that as they were driving down the

9    street, one of the co-defendants, Mr. Stevenson, whistled.

10           This was slightly inconsistent, I believe, but I might

11   not be correct in that with the deposition testimony, but

12   somebody whistled.  There is no indication that the whistling

13   was to plaintiff, but only because the officers I guess don't,

14   don't know who whistled out.  The innuendo is that, the

15   implication is that he was whistled, and which shows him not

16   only to be somebody who lurks on stoops at 2:00 o'clock in the

17   morning or whatever time in the morning, but also somebody that

18   the police were suspicious may have been involved in break-ins

19   and burglaries.

20           This is going to come up another time, your Honor, and

21   I haven't -- again it is when the officers say they see a car

22   with the windows down parked on the street and that's what

23   brought their attention to the car in the first place.  So I am

24   not arguing against that.  I understand how that is part of the

25   police officer narrative, but the police officers also state --

C73JWILC                          Conference

1    and I asked in deposition whether or not they knew when they

2    pulled over the car or approached the car originally, if the

3    person who was driving was the same person that they saw on the

4    stoop at a few hours before, and my recollection is the answer

5    was no, that they didn't know that.

6            Then that also goes to the lack of probative value and

7    I think the prejudice is that again, to use a cliché, paints

8    the plaintiff as someone with criminal tendencies, your Honor.

9            THE COURT:  Okay.  Mr. Kunz.

10           MR. KUNZ:  Well, we agree with your Honor's statement

11   before, and I would just point out that we think that these

12   issues are directly relevant to the questions presented in this

13   case.  The reason the officers stopped their patrol for the

14   burglary pattern that was in the area and they started to

15   observe the corner where the plaintiff was ultimately arrested

16   was because they saw him engage in behavior that was consistent

17   with drug trafficking.  That is what they did.

18           Just as the plaintiff wants to be able to talk about

19   his night that night and what he was doing before to provide

20   his explanation, the defendants are entitled to provide their

21   explanation.  We think it is relevant and we don't think it is

22   prejudicial.

23           THE COURT:  Okay.  There is no motion directly on

24   this, but if there were, there has been no showing what the

25   relevance is, that the evidence is relevant or the relevance is

C73JWILC                    Conference

1    outweighed by the danger of unfair prejudice.

2           Okay.  It appears to me that we'll go to trial on --

3    at this point I have very little else you have to give me.  We

4    have really disposed of almost all the motions in limine, and I

5    should have another final pretrial on July 19, at 4:30.

6           MR. KUNZ:  Your Honor, we did get a chance to look at

7    the letter we sent in with trial unavailability dates.  The

8    defendant Pengel is scheduled for a vacation from 7-22 to 7-29.

9    Defendant Ehrenreich returns from a vacation on 7-23.  So both

10   those conflicts make the 7-23 date difficult for us.

11          THE COURT:  All right.  Well, what that means is two

12   things:  First, you're on 48 hours ready trial on July 19.  I

13   honor actual engagements and vacations about which I am

14   informed in advance prior to the date when you receive the call

15   from Mr. Fletcher to come on down in two days.  So you've got

16   to send me a letter prior to -- better get it to me.

17          MR. KUNZ:  I believe there is actually a letter you

18   have already been provided with.

19          THE COURT:  With all of your commitments between now

20   and September?

21          MR. KUNZ:  Yes, yes, that is what we said.  I can give

22   you -- if we can't do it now, I have --

23          THE COURT:  No, I don't.  Could you fax it to me

24   again?

25          MR. KUNZ:  Yes.

C73JWILC              Conference

1            THE COURT:  And, Mr. Wadia, you should give me the

2     same.

3            MR. WADIA:  Okay, I will do it.

4            THE COURT:  The last item is any possibility that the

5     case could be settled at this point?

6            MR. WADIA:  May I fax the letter or ECF?

7            THE COURT:  It is always better to fax to me,

8     212-805-7192.

9            MR. WADIA:  Proposed jury instructions should be faxed

10    or ECF?

11           THE COURT:  ECF.  As much as I prefer fax, it is

12    better to do it on ECF.

13           MR. WADIA:  Disk or something to your Honor, which is

14    correct?

15           THE COURT:  Yes, that would be very useful.

16           MR. WADIA:  Sorry, I didn't mean to interrupt.

17           THE COURT:  That is all right.

18           Any possibility the case can be settled?

19           MS. WACHS:  No.

20           MR. WADIA:  There is a possibility on plaintiff's end,

21    your Honor.

22           MS. WACHS:  Not on this end, your Honor.

23           THE COURT:  Sorry?

24           MS. WACHS:  The case will not be settled.

25           THE COURT:  Okay.  All I can do is -- I won't send you

C73JWILC                    Conference

 1   to the magistrate judge because my sense is that is a waste of

 2   time.  I will say that you should talk about settlement, so

 3   there should be a settlement discussion between you all.  If

 4   the case can be settled, fine; if it can't be, I look forward

 5   to trying it, okay?  Good to see you all.

 6          By the way, the reason that I tell you to talk about

 7   settlement right before trial is you know now that the case is

 8   going to trial.  There is no benefit in litigation posture.

 9   There is no element of weakness or anything like that because I

10   have told you to talk about settlement, and you all can

11   realistically evaluate the case.

12          One side has to be wrong because cases have a value,

13   and between the offer and demand one side is wrong, and the

14   jury will tell us at the end of the day which side is wrong.

15   The only way you have to protect against being on the wrong

16   side of that is if you settle.

17          I appreciate the constructive arguments on the motions

18   in limine.  Thank you, all.

19          (Court adjourned)

20

21

22

23

24

25