# EXHIBIT 4

# *PEREZ* TRANSCRIPT

```
                                                                    1
     E9I8PERC

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   JUTHER PEREZ,

 4                   Plaintiff,

 5              v.                          11 Cv. 5399 (JGK)

 6   P.O. ELVIS DURAN,

 7                   Defendant.

 8   ------------------------------x
                                            September 18, 2014
 9                                          11:40 a.m.

10   Before:

11                      HON. JOHN G. KOELTL

12                                          District Judge

13                         APPEARANCES

14   COHEN & FITCH LLP
          Attorneys for Plaintiff
15   BY:  GERALD M. COHEN
          KATHERINE SMITH
16        ILYSSA FUCHS

17   ZACHARY CARTER
          Corporation Counsel of the City of New York
18   BY:  JOSHUA J. LAX
          DUANE G. BLACKMAN
19        Assistant Corporation Counsel

20

21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300
```

1     (Case called)
2     THE DEPUTY CLERK:  Will all parties please state who
3  they are for the record.
4     MR. COHEN:  Gerald Cohen for substitute party Jaylemn
5  Arrieta for the deceased plaintiff, Juther Perez.  Good
6  morning, your Honor.
7     I am accompanied by Katherine Smith, who is going to
8  be my co-counsel, she just stepped outside to make a quick
9  phone call, and my associate here to observe, Ilyssa Fuchs.
10    MR. BLACKMAN:  Good morning, your Honor.  Duane
11 Blackman On behalf of the defendants.  I am with co-counsel
12 Joshua Lax.
13    THE COURT:  Good morning.
14    Motions in limine.  The defendant has made, in effect,
15 eight motions.  The plaintiff has made three.  So I will deal
16 with the defendant's motions first.  And if the parties want to
17 say anything else in addition to their papers on any of this,
18 you're welcome to tell me anything else.
19    First, the defendant moves to preclude the plaintiff
20 from introducing evidence of prior or subsequent allegations of
21 misconduct against Police Officer Elvis Duran or other police
22 officer witnesses.  The motion is unopposed and therefore it is
23 granted.
24    Second, the defendant moves to preclude the plaintiff
25 from referring to the City of New York as a defendant and from

Case 1:16-cv-02267-KPF Document 193-4 Filed 04/13/20 Page 4 of 15
Case 1:16-cv-02276-KPF Document 119-3 Filed 01/24/20 Page 4 of 15

28

E9I8PERC

```
 1   probable cause for the arrest, or at least supports the
 2   plaintiff's position.  See, e.g., Florida v. Royer, 460 U.S.
 3   491, 507 (1983).  Moreover, without evidence of the source of
 4   the cash, the jury may conclude that the cash was, in fact,
 5   evidence of drug activity.  Therefore, the evidence is relevant
 6   and its relevance is not outweighed by the danger of unfair
 7   prejudice or confusion for purposes of Federal Rule of Evidence
 8   403.  Therefore, the motion is denied.
 9            The plaintiff has made three motions in limine.
10            First, the plaintiff moves to preclude any evidence of
11   his prior arrests or convictions.  The plaintiff was arrested
12   on numerous prior occasions.  He was convicted of felony
13   assault as a result of a November 18, 2009, arrest and
14   convicted of a misdemeanor for aggravated unlicensed operation
15   of a motor vehicle as a result of an August 17, 2010 arrest.
16            Anyone want to be heard on this?  I am prepared to
17   rule.
18            MR. COHEN:  Your Honor, basically, I think we laid it
19   out very thoroughly in our papers that prior arrests should
20   have no bearing whatsoever on this arrest.  It really is
21   impermissible character evidence.  We are not talking about his
22   credibility.  None of the arrests deal with credibility.  This
23   would just be used for propensity purposes.  I would like to
24   see what your Honor's feeling is on damages.
25            THE COURT:  Fine.  Why don't I tell you, on the basis
```

1   of the papers, what my conclusions are.
2            MR. COHEN:  Can we change your mind?
3            THE COURT:  Do you want to argue first?
4            MR. COHEN:  I would like to hear what your Honor's
5   view is.
6            THE COURT:  Frankly, this is a motion with various
7   alternatives that the plaintiff has set out.  So let me explain
8   to you where I am based on the papers that have been submitted.
9            Before I do that, does the defendant want to be heard
10  on this at all?
11           MR. BLACKMAN:  Similar to plaintiff's counsel, I would
12  like to hear your leaning and then I would like to respond.
13           THE COURT:  All right.  The plaintiff argues that the
14  criminal history, including the extensive arrest record, is
15  irrelevant to any issue in the case.  The defendant argues that
16  the plaintiff's criminal history is relevant to damages because
17  it lessens the emotional injury that the plaintiff allegedly
18  suffered from the arrest.
19           The defendant is partially correct.  The jury could
20  find that for a person who has been detained and arrested
21  multiple times, the emotional trauma of a single arrest is
22  minimum.  However, the crimes for which the plaintiff was
23  arrested are not relevant to damages, and would have a
24  prejudicial impact that would outweigh any probative value.
25  See, e.g., Phillips v. City of New York, 871 F.Supp.2d 200, 207

Case 1:16-cv-02261-KPF Document 193-4 Filed 04/13/20 Page 6 of 15
Case 1:16-cv-02261-AKH Document 119-4 Filed 04/13/20 Page 6 of 15

30
E9I8PERC

1  (E.D.N.Y. 2012); Green v. Baca, 226 F.R.D. 624, 657 (C.D. Cal.
2  2005).
3       The plaintiff states in his reply brief that, if the
4  court views this history as relevant to emotional damages, the
5  plaintiff will withdraw the claim of emotional damages. (Reply
6  brief at 2-3). As I have said, the number of arrests and the
7  timing of the arrests would otherwise be relevant to the issue
8  of emotional damages, and there was an extensive arrest
9  history. Therefore, the plaintiff's claim for emotional
10 damages is withdrawn, and the jury will be instructed that the
11 plaintiff is not seeking an award of emotional damages.
12      On the other hand, the jury will be instructed that a
13 prevailing plaintiff is entitled to compensatory damages for
14 the loss of liberty inherent in a false arrest, a malicious
15 prosecution, and a denial of the right to a fair trial. See,
16 e.g., Kerman v. City of New York, 374 F.3d 93, 124-31 (2d Cir.
17 2004).
18      The defendant argues that the plaintiff's prior
19 arrests and convictions are relevant to the plaintiff's loss of
20 liberty damages. This argument is without merit. "Though a
21 plaintiff's frequent arrests and detentions may diminish the
22 emotional toll or embarrassment caused by the arrest and
23 detention at issue, they do nothing to diminish the fundamental
24 loss of freedom implicated in a false arrest."  Nibbs v.
25 Goulart, 822 F.Supp.2d 339, 344-45 (S.D.N.Y. 2011).

```
 1              The defendant also argues that the arrest record and
 2      convictions would impeach the plaintiff's testimony that, as
 3      reflected in the deposition, the plaintiff's friends would say:
 4      "Good dude, I don't get in trouble.  I don't get no problems."
 5      This testimony is plainly inconsistent with the actual record
 6      of the plaintiff's numerous arrests and two criminal
 7      convictions.  Therefore, this testimony should be stricken, and
 8      thus, it will not be used as a basis for admitting the prior
 9      arrest record or convictions.  If the plaintiff does not agree
10      to withdraw this testimony, the Court would reconsider the
11      admissibility of the plaintiff's prior criminal history.  It is
12      plain that the plaintiff could not argue simultaneously that
13      the people in the neighborhood would say that he doesn't get in
14      trouble or he doesn't get no problem, and at the same time not
15      allow the defense to introduce the extensive arrest and
16      conviction record showing that the testimony is simply not
17      true.
18              The defendant also argues that a statement by the
19      plaintiff's father -- testifying that he informed the plaintiff
20      that he should be careful around police, especially on Tuesdays
21      and Thursdays -- justifies the admission of the plaintiff's
22      prior arrests and convictions.  This testimony by the
23      plaintiff's father is unrelated to the plaintiff's good
24      character and does not justify introducing the plaintiff's
25      prior arrests and conviction history.
```

            The defendant next contends that the plaintiff's
conviction for felony assault should be admitted to impeach the
plaintiff's testimony pursuant to Federal Rule of Evidence
609(a). Although the plaintiff was convicted for a felony
within ten years of his testimony, the probative value of the
conviction is substantially outweighed by the danger of unfair
prejudice. See Federal Rule of Evidence 609(a)(1)(A); Federal
Rule of Evidence 403. The Court examines the following factors
to determine the admissibility of the prior conviction: (1)
the impeachment value of the prior crime, (2) remoteness of the
prior conviction, (3) the similarity between the past crime and
the conduct at issue, and (4) the importance of the credibility
of the witness. Daniels v. Loizzo, 986 F.Supp. 245, 250
(S.D.N.Y. 1997).

            The most important factor is whether the crime, by its
nature, is probative of the witness's veracity. United States
v. Ortiz, 553 F.2d 782, 784 (2d Cir. 1977). The assault
conviction is not particularly probative of the plaintiff's
credibility. See, e.g., United States v. Estrada, 430 F.3d
606, 617-18 (2d Cir. 2005). Also, the credibility of the
plaintiff is directly at issue, and the admission of evidence
of an unrelated crime would bear the danger that the jury would
disbelieve the plaintiff's testimony simply because he had been
convicted of a prior felony.

            The defendant is correct that the conviction is well

```
 1    within the ten year limit, and the conviction is not similar to
 2    the events at issue in this case.  However, given the low
 3    probative value of the conviction and the high likelihood of
 4    prejudice, the conviction should not be admitted for purposes
 5    of impeachment.  The defendant does not argue that the
 6    misdemeanor conviction should be admitted for the purposes of
 7    impeachment.
 8            Yes.
 9            MR. COHEN:  I will strike that one sentence, the part
10    where you said "dude."  Consider it stricken.  I have nothing
11    else to say.
12            THE COURT:  It's withdrawn.  It's stricken.  OK.
13    Fine.
14            MR. BLACKMAN:  So it's my understanding that plaintiff
15    has withdrawn his emotional damages claim and he is going with
16    a loss of liberty claim.  So let me address the loss of liberty
17    claim.  And I want to put it in context of our earlier
18    discussion when you talked about how it's the jury's
19    determination, and they are going to have to reason with
20    whatever the damages can be.  So if there is a finding of
21    liability with respect to loss of liberty, i.e., loss of time,
22    there is presumed damages.  Therefore, they now must calculate,
23    well, how much is this time worth?
24            In making that determination, your Honor, they can't
25    do that in the abstract; they need some type of guidance.  I
```

1  agree they draw upon their own experiences, but, also, they
2  need to look at this specific individual and his life
3  experiences, the fact that this individual since 2004 was
4  arrested every single year, except for the year 2008.
5  Individuals may value a loss of time/loss of liberty
6  differently than one another.  If I am continuously arrested
7  and know I can go to jail, meaning I will lose my free time,
8  then that's a conscious decision I am making and I am saying, I
9  don't value that time, I value committing this crime more.  So
10  individuals value time differently.
11         So in that respect, to introduce his prior arrests
12  will give the jury some frame of reference when calculating
13  damages with respect to loss of liberty and this individual
14  plaintiff.  So that's why I believe it's very relevant that we
15  introduce this type of evidence, your Honor.
16         THE COURT:  That argument is so fundamentally
17  offensive.  I can't begin to explain how offensive the argument
18  is.  It suggests that the value of liberty to a person who has
19  been arrested often is less than the value of liberty to a
20  person who has not been arrested.  And that is offensive.
21         Hold on.  It is true that if a person has been
22  arrested frequently, that the impact in terms of emotional
23  distress, emotional damages will be lessened, one can infer,
24  and certainly justified in the cases, because it would be
25  unfair actually for a person to come in and say, this came as a

1   complete shock, out of the blue, I can't tell you how awful
2   this was, implying that I had never experienced something like
3   this before and it was so awful.  Obviously, the person
4   couldn't say, I have never experienced this before, because the
5   person could be impeached by the fact that he had been arrested
6   numerous times before, but would attempt to imply from various
7   other ways that the person was emotionally devastated by the
8   impact of being arrested.  So the cases make clear that you
9   can't make that argument, and therefore the jury can be
10  instructed that the plaintiff is not seeking emotional damages.
11          So what is left?  What is left is a claim, which the
12  courts have recognized, that every individual has a liberty
13  interest which is infringed when a person is falsely arrested
14  or maliciously prosecuted.  And every individual has a worth,
15  and that worth is the ability to do whatever that person wants
16  to do with that person's time, not to spend that time in jail.
17  And the worth of an individual and that person's time is the
18  same whether that person has been arrested a lot of times or
19  not a lot of times.  And it would be wrong to begin to assess
20  citizens, or noncitizens, in terms of whether their time is
21  worth more or less based upon whether they have been arrested
22  many times before or not.  It would attempt to devalue the
23  worth of individuals, and you can't do that.  That's why I said
24  your argument is wrong.
25          MR. BLACKMAN:  If I may?

1             THE COURT:  To put it gently.
2             MR. BLACKMAN:  Number one, I didn't want to offend the
3     Court.
4             Two, the argument is not attempting to devalue the
5     individual.  However, it is saying that an individual may value
6     his time differently than another individual.  If you have an
7     individual who says, you know what --
8             THE COURT:  What difference does it make how the
9     person values his time?  It's the jury who has to make the
10    determination of what is a fair and appropriate measure of
11    damages for a person who has been deprived of their liberty for
12    a specific period of time.  Does it make a difference that the
13    person comes in and says, I am unemployed, I have lots of free
14    time, and someone else says, Hey, I was in jail, it kept me
15    away from my job for half a day, once it's clear that the
16    person is not seeking emotional damages and is not seeking, I
17    take it in this case, economic damages, right?
18            MR. COHEN:  That's correct.
19            THE COURT:  Not seeking emotional or economic damages.
20    So the jury has to determine what a loss of liberty for a
21    specific time is worth.  And now the argument is that the loss
22    of liberty to a person who has been arrested often is worth
23    less than the loss of liberty to a person who has not been
24    arrested.
25            Go ahead.

1            MR. LAX:  If I may, your Honor, I think that what Mr.
2   Blackman is ultimately getting at is:  What is plaintiff's
3   argument going to be in favor of assessing what the loss of
4   liberty damages should be?  Because if you take out emotional
5   damages --
6            THE COURT:  And you take out economic damages.
7            MR. LAX:  Exactly.  Is the pitch going to be, well,
8   this was really unfair to me, my loss of dignity?  Then you're
9   starting to make noises that sound like emotional damages.
10           So you have withdrawn the emotional damages in favor
11  of precluding evidence, but you're still using similar types of
12  evidence that would ordinarily be rebutted by the time in
13  custody to argue for a certain damage calculus in another
14  context.
15           THE COURT:  So?  We have a legal structure, which says
16  that the loss of liberty entitles a person to compensatory
17  damages, because the loss of liberty is worth something to
18  every person who has been unjustifiably deprived of their
19  liberty.  How much the jury in an individual case is prepared
20  to assess what that loss of liberty is is, of course, up to the
21  jury.  We know that it's worth more than nominal damages
22  because the Court of Appeals has told us that.  And it is the
23  loss of a fundamental right that exists for every person
24  irrespective of status and irrespective of prior record.
25           MR. LAX:  I suppose what I am advocating for is, if

```
 1   that's the Court's ruling, then plaintiff should really be
 2   limited to just introducing the number of hours he maintains he
 3   was in custody, and that should be the only evidence of
 4   damages.  The evidence shouldn't go beyond that for the loss of
 5   liberty.
 6           THE COURT:  As opposed to what?
 7           MR. LAX:  As opposed to trying to suggest what I was
 8   saying before, talking about fairness, talking about sitting
 9   there thinking about the emotional impact.
10           THE COURT:  You know what the plaintiff is going to
11   say.  You have the plaintiff's deposition.  No one has favored
12   me with the specific portions, but I would think that the
13   plaintiff would be entitled to introduce the plaintiff's
14   testimony about how long the plaintiff was put in a cell, what
15   the circumstances of the cell were.  And, in turn, there are,
16   as I have already indicated, some instructions:  The plaintiff
17   is not seeking emotional damages.  If you find that there was a
18   false arrest, the plaintiff is entitled to compensatory
19   damages, not simply nominal damages.
20           I am not clear what you're saying the plaintiff should
21   not be able to introduce.
22           MR. LAX:  I guess what I am saying is, looking
23   prospectively at the progress of the trial, if the attempt is
24   made to try and talk about the emotional impact of the
25   incarceration in some specific way, I just think that that
```

1    would open up the door to evidence that is now being precluded.
2    So I just want it to be clear for the record and for our own
3    planning.  And I accept that your Honor has been as clear as
4    you should be for our purposes today.  So I am going to be
5    seated.
6              THE COURT:  OK.
7              Second, the plaintiff moves to preclude any evidence
8    about the circumstances of his conception or the circumstances
9    of his death.  The defendant agrees, and both parties should
10   not reference these subjects.
11             Third, the plaintiff moves to preclude the defendant
12   from introducing evidence that the plaintiff's father, Juther
13   Perez, Sr., was convicted of murder 38 years ago.  The
14   defendant argues that the conviction is admissible under
15   Federal Rule of Evidence 404(b) as evidence of motive to
16   testify falsely in this case.
17             I am prepared to rule.  Do the parties wish to be
18   heard on this?
19             MR. BLACKMAN:  There are two points to this.  There is
20   the motive argument, but there is also the other point that we
21   made, in that it's relevant to plaintiff's narrative.  And to
22   the extent that it is relevant to plaintiff's narrative of
23   events, then we should be able to elicit testimony on his
24   criminal history.  I can get more specific if your Honor would
25   like.