UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
YOTAM MAROM AND MIRIAM ROCEK,

                    *Plaintiffs*,                                        15 CV 2017 (PKC)(SN)


          -against-


NYPD SERGEANT FIOR BLANCO, NYPD LEGAL
BUREAU LIEUTENANT DANIEL ALBANO,
NYPD LEGAL BUREAU DETECTIVE KENNETH
O'DONNELL, NYPD OFFICER MICHAEL
GALGANO, SHIELD NO. 2671, NYPD OFFICER
CYNTHIA BOYLE, SHIELD 06663,

                    *Defendants*.

-----------------------------------------------------------------X


---

## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*

---

Gideon Orion Oliver
*Attorney for Plaintiff*
Miriam Rocek
277 Broadway, Suite 1501
New York, NY 10007
Tel: (646) 263-3495
Fax: (646) 349-2914
Email: gideon@gideonlaw.com

Jessica Massimi
*Attorney for Plaintiff*
Miriam Rocek
99 Wall Street, Suite 1264
New York, NY 10005
jessica.massimi@gmail.com
646-241-9800

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES .......................................................................................... iv

I.    PLAINTIFF'S RESPONSES TO DEFENDANTS' POINT I ............................................. 1

    A.    While The Court Should Instruct The Jury That Plaintiff's Arrest And Initial Detention Were Lawful, The Court Should Not Instruct The Jury That Plaintiff's Detention, or Prosecution, Were Lawful ................................................................................................. 1

    B.    Plaintiff Has No Interest in Re-Litigating "Failed Claims" ............................................. 1

    C.    The Court Should Not Preclude Plaintiff From Offering Relevant Testimony From Former *Caravalho* and *Marom* Defendants .............................................................. 2

    D.    Plaintiff Has No Interest In Mentioning Or Offering Any Evidence That Esposito and Winski Were Once Defendants ................................................................................... 4

II.    PLAINTIFF'S RESPONSES TO DEFENDANTS' POINT II ........................................... 4

    A.    Plaintiff Agrees to Refrain from Referring to Defense Counsel as "City Attorneys." ... 4

    B.    The Court Should Not Preclude Plaintiff from Inquiring About Relevant City of New York Training, Policies, and Practices. ........................................................................... 5

III.    THE COURT SHOULD DENY DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM SUGGESTING THAT THE CITY WILL INDEMNIFY THE DEFENDANTS ................................................................................................................ 6

IV.    THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM TESTIFYING ABOUT OTHER INSTANCES OF "ALLEGED POLICE ACTIONS GENERALLY" ........... 6

V.    THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM ELICITING TESTIMONY OR ARGUING ABOUT OTHER INSTANCES OF ALLEGED POLICE MISCONDUCT RELATED TO THE OCCUPY WALL STREET MOVEMENT ................... 8

VI.    THE COURT SHOULD PERMIT PLAINTIFF TO TESTIFY THAT SHE WAS IN ZUCCOTTI PARK FOR THE OCCUPY PROTEST ON THE DATE OF INCIDENT BECAUSE SHE WAS EXERCISING HER FIRST AMENDMENT RIGHTS ........................ 9

VII.    EVIDENCE AND TESTIMONY PERTAINING TO THE ARRESTS OF NON-PARTIES BY NON-PARTY OFFICERS IS RELEVANT AND THE COURT SHOULD PERMIT PLAINTIFF TO INTRODUCE SUCH EVIDENCE AT TRIAL ............................. 10

VIII.    THE COURT SHOULD NOT PRECLUDE PLAINTIFFS FROM PRESENTING CRITICAL VIDEO EVIDENCE TO THE JURY BASED ON THE TITLES OF THE VIDEO FILES (WHICH CAN BE CHANGED) OR FOR ANY OTHER REASON ........................... 12

IX.    THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM INTRODUCING CERTAIN EVIDENCE THAT DEFENDANTS CLAIM WAS NOT PRODUCED DURING DISCOVERY IN THIS CASE ............................................................................................. 13

X.    THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE REGARDING HER TORN COAT ......................................................................... 14

XI.      THE COURT SHOULD PERMIT PLAINTIFF TO OFFER EVIDENCE
CONSISTING OF AND CONCERNING NEW YORK CITY POLICE DEPARTMENT
PATROL GUIDE PROVISIONS...............................................................................................15

XII.      THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM INTRODUCING
EVIDENCE PRODUCED BY DEFENDANTS CONSISTING OF NYPD SUMMARIES OF
THE MARCH 17, 2012 ARRESTS MADE AT THE SAME TIME AND LOCATION AS
PLAINTIFF'S AND PROCESSED ALONG WITH PLAINTIFF'S .......................................16

XIII.      THE COURT SHOULD PERMIT PLAINTIFF TO INTRODUCE THE LEGAL
BUREAU OLBS NARRATIVE PRODUCED IN DISCOVERY BY FORMER DEFENDANT
STEVEN VALENTINE AT TRIAL .........................................................................................17

XIV.      THE COURT SHOULD PERMIT PLAINTIFF TO INTRODUCE DOCUMENTS
FROM THE OFFICE OF THE DISTRICT ATTORNEY, INCLUDING THE ACCUSATORY
INSTRUMENT DEFEDANT BOYLE LODGED AGAINST HER .........................................19

XV.      THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM INTRODUCING
HER JOURNAL ENTRY REGARDING THE INCIDENT, OR PARTS THEREOF .............21

XVI.      THE COURT SHOULD PERMIT PLAINTIFF TO INTRODUCE DEFENDANT
ALBANO'S AND O'DONNELL'S OVERTIME REPORTS AND TRACKING SHEETS ...21

XVII.      THE COURT SHOULD PERMIT PLAINTIFF TO QUESTION DEFENDANTS
ABOUT AND OFFER EVIDENCE OF CERTAIN PRIOR LAWSUITS AGAINST THE
OFFICERS (UNRELATED TO THE MARCH 17, 2012 INCIDENT) ....................................22

XVIII.      PLAINTIFF SHOULD BE PERMITTED TO SUGGEST A DOLLAR AMOUNT
TO THE JURY .........................................................................................................................25

CONCLUSION............................................................................................................................ 26

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arbuckle v. City of New York*,
  2016 U.S. Dist. LEXIS 136857, 2016 WL 5793741 (S.D.N.Y. September
  30, 2016) ...................................................................................................................................24

*Bourguignon v. Lantz*,
  No. 05-cv-0245, 2008 U.S. Dist. LEXIS 68242, 2008 WL 4183439 (D.
  Conn. September 10, 2008) ......................................................................................................23

*Collado v. City of New York*,
  No. 11 CIV. 9041 (DAB), 2017 U.S. Dist. LEXIS 161094, 2017 WL
  4533772 (S.D.N.Y. Sept. 27, 2017) (Batts, J.) ........................................................................16

*Demirovic v. Ortega*,
  2017 U.S. Dist. LEXIS 170206 (E.D.N.Y. 2017) ....................................................................14

*Edwards v. City of New York*,
  2011 WL 2748665 (E.D.N.Y. July 13, 2011) ...........................................................................25

*Gogol v City of NY*,
  2017 US Dist LEXIS 221874 ...................................................................................................16

*Holmes v. City of New York*,
  2018 U.S. Dist. LEXIS 53419 (S.D.N.Y. March 19, 2018) ......................................................24

*Ismail v. Cohen*,
  899 F.2d 183, 1990 U.S. App. LEXIS 4669 (2d Cir. 1990) .....................................................23

*Jean-Laurent v. Hennessy*,
  840 F. Supp. 2d 529, 2011 U.S. Dist. LEXIS 122767, 2011 WL 6945679
  (E.D.N.Y. 2011) ..........................................................................................................................5

*Jenkins v. City of New York*,
  No. 10 CV 4535 (AJN), 2013 U.S. Dist. LEXIS 33331, 2013 WL 870258
  (S.D.N.Y. Mar. 6, 2013) ...........................................................................................................21

*Law Co. v. Mohawk Constr. & Supply Co.*,
  577 F.3d 1164 (10th Cir. 2009) ................................................................................................18

*Lightfoot v. Union Carbßide Corp.*,
  110 F.3d 898 (2d Cir. 1997) .....................................................................................................25

*MacNamara, et al. v. City of New York*,
  04 Civ. 9216 (SDNY) (RJS) (JCF) ..........................................................................................24

*Marom v. Blanco,*
2019 U.S. Dist. LEXIS 124343, 2019 WL 3338141 (S.D.N.Y. July 25,
2019) ................................................................................................................*passim*

*Marom v Blanco,* (No. 15-cv-2017 (PKC), 2016 US Dist LEXIS 165536
(SDNY Nov. 30, 2016)....................................................................................... 11, 17

*Marom v. Esposito,* (No. 15-cv-2017 (PKC), 2019 US Dist LEXIS 60969
(SDNY Apr. 21, 2017)........................................................................................ 11, 17

*Nnodimele v. Derienzo,*
13 CV 3461(ARR)(RLM), 2016 WL 3561708 (E.D.N.Y. June 27, 2016)...........16

*Schiller, et al. v. City of New York, et al.,*
04 Civ. 7922 (SDNY) (RJS) (JCF) ......................................................................24

*Skinner v. City of New York,*
2017 U.S. Dist. LEXIS 104650 (E.D.N.Y. April 7, 2017) ...................................23

*Smith v. City of New York,*
2015 U.S. Dist. LEXIS 102669, 2015 WL 4643125 (S.D.N.Y. Aug. 5,
2015) ......................................................................................................................16

*Tardif v. City of New York,*
13 CV 4056, 2017 US Dist. LEXIS 135607, 2017 WL 3634612 (S.D.N.Y.
Aug. 23, 2017) .......................................................................................................16

*Tardif v. City of New York,*
13 CV 4056,344 F Supp 3d 579 (SDNY 2018)....................................................16

*United States v. Brennan,*
798 F.2d 581, 1986 U.S. App. LEXIS 28086 (2d Cir. August 11, 1986) ............23

*United States v. Santiago,*
110 Fed. Appx. 161, 2004 U.S. App. LEXIS 19391 (2d Cir. 2004)............... 10, 19

*United States v. Sinclair,*
433 F. Supp. 1180 (D. Del. 1977) .........................................................................19

*United States v. Ulbricht,*
858 F.3d 71 (2d Cir. May 31, 2017) ......................................................................20

*White v. Lenox Hill Hosp.,*
65 Fed. R. Evid. Serv. (CBC) 709, 2004 U.S. Dist. LEXIS 20679
(S.D.N.Y. Oct. 18, 2004) .......................................................................................18

*Woods v. City of Chicago,*
234 F.3d 979 (7th Cir. 2000)....................................................................................0

**Other Authorities**

FRE 402 ....................................................................................................................4

FRE 403 .............................................................................................................. 4, 24

FRE 801(c) ...............................................................................................................7

FRE 801(d)(1) ............................................................................................. 11, 15, 21

FRE 801(d)(2) .................................................................................................. 18, 20

FRE 803(1) .............................................................................................................21

FRE 803(5) .............................................................................................................21

FRE 803(6) ..................................................................................................11, 17, 20

FRE 803(8) ..................................................................................................11, 17, 20

FRE 901 ..................................................................................................................17

FRE 901(a) .............................................................................................................18

FRE 901(b)(4) .................................................................................................. 17, 18

FRE 901(b)(7) .........................................................................................................17

U.S. Const. amend. I ............................................................................................ 8, 9

Plaintiff Miriam Rocek respectfully submits this Memorandum of Law in Opposition to Defendants' Memorandum of Law in Support of Defendants' Motions *In Limine* (Dkt. 199, "Def. MOL").

## I.    PLAINTIFF'S RESPONSES TO DEFENDANTS' POINT I

### A.    While The Court Should Instruct The Jury That Plaintiff's Arrest And Initial Detention Were Lawful, The Court Should Not Instruct The Jury That Plaintiff's Detention, or Prosecution, Were Lawful

The law of the case is that Plaintiff's arrest and *initial* detention by unidentified NYPD Officers was lawful. Plaintiff has no objection to the Court's instructing the jury that Plaintiff's damages do not extent to her arrest or her *initial* detention. However, after Plaintiff's initial detention, and after Plaintiff was hopelessly separated from any identifiable officer who had been involved with her arrest, the police were no longer justified in detaining Plaintiff, and should have released her. And, to the extent that she was detained thereafter as a result of the Defendants' involvement in creating false arrest processing paperwork, and forwarding it to prosecutors, and giving prosecutors further false statements, including those contained in the sworn criminal complaint against Plaintiff, that detention was not lawful. Beyond that, the Court should not instruct the jury that Plaintiff's prosecution was lawful, because Plaintiff's remaining claims are premised on the fact that it was not. In this connection, while probable cause to arrest for any offense privileges an arrest at the time of the arrest, probable cause to prosecute must exist for each offense to be prosecuted, and whether such probable cause exists is analyzed based on the facts known at the time the prosecution is initiated. At the time Defendant Boyle initiated the prosecution against Plaintiff by swearing out the charging document, she had no probable cause to prosecute Plaintiff for anything because she had not observed Plaintiff engage in any pre-arrest conduct.

### B.    Plaintiff Has No Interest in Re-Litigating "Failed Claims"

Plaintiff has no interest in re-litigating – or even mentioning - what Defendants call "failed claims." However, to the extent Defendants' application on this point employs broad language seeking to "restrict…plaintiff's presentation of her case-in-chief" to prevent Plaintiff from introducing "any evidence or testimony regarding the claims", it goes too far. For example, as seen in the 56.1 practice around Defendants' motion for summary judgment and below, Plaintiff intends to elicit testimony regarding the events leading up to her arrest, the so-called "mix-up" in which arrestees were separated from their actual arresting officers, and the mass arrest processing at the Precinct and at the Office of the District Attorney of New York County ("DANY") that led to the fabrication of evidence against Plaintiff. That will necessarily include presenting evidence or testimony including some facts that relate to some of the dismissed claims. Of course, Plaintiff can, and intends to, do that without eliciting testimony that is explicitly about or that specifically refers to any dismissed legal claim(s).

### C.    The Court Should Not Preclude Plaintiff From Offering Relevant Testimony From Former *Caravalho* and *Marom* Defendants

Plaintiff intends to offer testimony from former *Marom* Defendants, some of whom were also former *Caravalho* Defendants, at trial. Each of the proposed witnesses has unique and relevant testimony regarding the events leading up to Plaintiff's arrest[1]; the arrest processing and DANY screening; their own observations and actions, as well as the actions of their fellow officer Defendants and witnesses, in connection with those events; as well as related, relevant policies, practices, and procedures, and training, that were covered in

---

[1] It is true that none of the proposed third-party witnesses has personal knowledge about Plaintiff's pre-arrest conduct. However, Plaintif does not seek to call them to testify on that topic. In that connection, based on their portions of the parties' proposed Joint Pre-Trial Order ("JPTO") and the 56.1 practice in the case, Defendants apparently intend to call third-party witness Winski to testify about the events leading up to Plaintiff's arrest, and possibly other matters, although he has no such personal knowledge; and to introduce certain video evidence regarding the events leading up to Plaintiff's arrest, which does not depict Plaintiff or, as far as counsel is aware, any of the Defendants.

discovery (including during their depositions), and whether Defendants followed them in connection with Plaintiff's case.

The mere fact that some claims were dismissed against some Defendants does not mean that their testimony about the underlying events would be irrelevant in this case. (If that were so, the testimony Defendants apparently intend to elicit from Defendant Winksi should be precluded). To the extent Defendants claim that none of the *Caravalho* defendants were deposed "in *Marom*", that is only the case because this Court accepted the *Marom* as related to *Caravalho*, directed that discovery proceed as coordinated, (*see, e.g.,* 3/24/15 Docket Entries; Dkts. 4, 6, 13, 14), and throughout the litigation, including in all the *Marom* depositions, the parties used the discovery produced in *Caravalho* and marked at depositions in *Caravalho* rather than re-disclosing it in *Marom*, or re-deposing former *Caravalho/Marom* Defendants who were *Marom* third-party witnesses, and who had already given testimony about the relevant events in *Caravalho*. Additionally, this Court considered the *Caravalho* deposition testimony included in the record as part of Plaintiffs' 56.1 practice in connection with the summary judgment briefing. *See Marom v Blanco*, (No. 15-cv-2017 (PKC), 2019 US Dist LEXIS 124343, at *2, n 2 (SDNY July 25, 2019).

In arguing that the Court should preclude *all* of the third-party witness testimony that Plaintiff seeks to elicit, Defendants do not cite any authority. Additionally, although extensive parts of the deposition testimony from all of the third-party witnesses at issue is in the record in this case, as well as in the related *Caravalho* matter, in connection with the summary judgment briefing in both cases,[2] Defendants make no effort to muster any actual examples in or

---

[2] For example, Plaintiffs' Response to Defendants' Local Civil Rule 56.1 Statement of Facts (Dkt. 158) refers to testimony and other evidence related to Valentine (¶¶ 15, 114, 116, 117, 118, 119, 217, 218); Esposito (¶¶ 10, 18, 23); Winski (¶¶ 2, 9, 10, 97); Viviano (¶ 11); Rodriguez (¶¶ 153, 159); and Li (¶¶ 9, 10, 153, 155, 156, 157); the prior version of that

arguments based on the record to support their conclusory statements that any particular testimony would be irrelevant under Fed. R. Evid. 402 or wasteful, cumulative, unfair, misleading, prejudicial, or confusing under Fed. R. Evid. 403.

To the extent Defendants suggest, without providing any authority or support, that the jury might infer that the Defendants are somehow culpable because they "remain as parties" whereas other witnesses "were dismissed", on Plaintiff's view, there is no reason the jury should ever know that the third-party witnesses were former parties or had claims against them in connection with *Caravalho* or *Marom*.

Finally, to the extent it might please the Court, or assist the Court in determining this prong of Defendants' motion, Plaintiff would be pleased to provide a further written and/or oral evidentiary proffer summarizing the proposed testimony from each third-party witness at or before the final pre-trial conference.

### D.   Plaintiff Has No Interest In Mentioning Or Offering Any Evidence That Esposito and Winski Were Once Defendants

Plaintiff has no interest in mentioning or offering any evidence that Esposito and Winski were once Defendants in this case, unless Defendants, or Esposito or Winski, open the door during their testimony as third-party witnesses.

## II.   PLAINTIFF'S RESPONSES TO DEFENDANTS' POINT II

### A.   Plaintiff Agrees to Refrain from Referring to Defense Counsel as "City Attorneys."

---

document (Dkt. 138) included additional allegations regarding Valentine (¶¶ 160, 161, 162, 163, 215, 216), Ahmed (¶¶ 219, 298), Rodriguez (¶¶ 138, 155); and Li (138). And, similarly, the *Caravalho* 56.1 practice incorporated testimony and other evidence related to Esposito (¶¶ 8, 51, 52, 60, 64, 65, 66, 73, 74, 78, 94, 100); Winski (¶¶ 53, 54, 55, 56, 57, 59, 61, 67, 68, 69, 70, 71, 75, 76, 77, 85, 86, 87, 88, 89, 90, 93, 95, 96, 101) and Viviano (¶¶ 62, 63, 82, 83, 84, 91, 97, 98, 99) in *Caravalho* Dkt. 203; and Esposito (¶¶ 989, 993, 1090-1183); Winski (¶¶ 1184-1284); Viviano (¶¶ 896-984); Ahmed (¶¶ 757-846); Rodriguez (¶¶ 656-756); and Li (¶ 847-895) in *Caravalho* Dkt. 212.

Particularly in light of the Court's ruling in *Phoenix Feeley v. City of New York, et al.*, 15 CV 8349 (PKC), Transcript of Pre-Trial Hearing With *In Limine* Rulings, Exhibit 1 to the February 21, 2020 Declaration of Jessica Massimi, Esq. (Dkt. 204) (the "*Feeley* Tr."), at 26:10-27:16, Plaintiff agrees to not refer to defense counsel as "City attorneys."

## B. The Court Should Not Preclude Plaintiff from Inquiring About Relevant City of New York Training, Policies, and Practices.

Each of the Defendants, as well as the third-party witnesses, were asked certain questions about NYPD training, policies, and practices in topics relevant to Plaintiff's fair trial rights claim such as: crowd control; making arrests (including large-scale arrests during protests and civil disorder); arrest processing (and filling out arrest processing paperwork); and mass or large-scale arrest processing (and filling out related paperwork).  Additionally, certain documents – including NYPD Patrol Guide provisions as well as certain training materials - reflecting some of the NYPD's related training, policies, and practices in those areas were exchanged in discovery, or referred to in deposition testimony.  The Defendants do not cite any case law or other authority for their argument that the Court should preclude Plaintiff from inquiring about such relevant training, policies, and practices.  Instead, the Defendants cite *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 2011 U.S. Dist. LEXIS 122767, 2011 WL 6945679 (E.D.N.Y. 2011), which does *not* stand for the proposition – as the Defendants argue – that it is proper for the Court to preclude inquiry about any City of New York training, policy, and practice.  Rather, the Court in *Jean-Laurent* held that, since the action was not brought against the City of New York, municipal officials or individuals with policy-making authority "any mention of an *unconstitutional municipal policy* or practice would be improper under Federal Rule of Evidence 402 because such reference is irrelevant and under Rule 403 because it would likely result in unfair prejudice against defendants or confusion of the issues, or mislead the jury." *Jean-Laurent*, 840 F. Supp. 2d 529, 549 (emphasis added).  This decision,

however, does did not preclude Plaintiff from questioning the individual Defendants and witnesses about their training, policies and practices which they follow or are required to follow.  As such, the Court should not entertain Defendants' requests to apply *Jean-Laurent* for this baseless proposition.  Indeed, for the same reasons that the Court should permit Plaintiff to inquire about provisions of the Patrol Guide relevant to Plaintiff's claims, and whether Defendants followed them, as set forth in Point XI below, so too should the Court permit Plaintiff to inquire about relevant training, policies, and practices.

### III.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO PRECLUDE PLAINTIFF FROM SUGGESTING THAT THE CITY WILL INDEMNIFY THE DEFENDANTS

The Defendants ask the Court to issue a blanket ruling precluding Plaintiff from suggesting that the City will indemnify the Defendants, but inquiry into the issue of indemnification may be appropriate if the Defendants attempt to suggest that the individual Defendants will be liable for any verdict. *See* Point VII in Plaintiff's Memorandum of Law in Support of Plaintiff's Motion *In Limine* (Dkt. 192) and Plaintiff's Reply Memorandum of Law in Support of Plaintiff's Motion *In Limine*.

### IV.   THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM TESTIFYING ABOUT OTHER INSTANCES OF "ALLEGED POLICE ACTIONS GENERALLY"

The Court should permit Plaintiff to testify about "other instances of alleged police actions generally" – to use Defendants' wide-ranging, vague phrasing – including other experiences she had with NYPD officers that informed her relevant conduct in connection with this case, since such testimony will be integral to contextualizing the circumstances of Plaintiff's arrest, why she engaged in certain conduct at the time of her arrest, why she pleaded "not guilty" to the charges, and why she eventually accepted an Adjournment in Contemplation of Dismissal ("ACD") to resolve the case.  For example, to the extent Plaintiff

believed that she was arrested or prosecuted based on false allegations "to send a message", or she pleaded "not guilty" to "send a message", she should not be precluded from so testifying. Such testimony would provide necessary background and/or other relevant evidence. Further, Defendants' suggestion that any such testimony from Plaintiff would violate the hearsay rules in baseless, since Defendants have not even identified which statements in particular they believe would constitute hearsay under Rule 801(c).

Additionally, as noted above, Plaintiff was arrested on three prior occasions, including twice in connection with Occupy Wall Street, two of which gave rise to lawsuits which resulted in settlements to Plaintiff.  If Defendants are permitted to inquire about these prior arrests and lawsuits, as they have requested permission to do, it would be impossible and plainly inequitable for Plaintiff to be precluded from testifying about police misconduct, since that is the very reason she filed the prior lawsuits. Beyond that, Defendants seek to admit evidence from Plaintiff's private Facebook posts consisting of negative statements about the police. If the Court grants their application to do so, evidence of other instances of "alleged police actions generally" will be necessary context for the jury to understand some of those statements.

Moreover, the Defendants have not provided any legal authority for their argument that Plaintiff's counsel sanitize their opening and closing arguments before trial has even begun, and that counsel and Plaintiff refrain from using the phrase "send a message" during the trial.  Plaintiff respectfully submits that there is no reason to prevent counsel from making such arguments, particularly in connection with any arguments about punitive damages, part of the purpose of which is to "send a message."

To the extent Defendants argue that some prejudice might result from using the phrases that concern them, the Court will, of course, provide instructions to the jury on how

they may weigh the evidence and render the verdict, and can then provide any additional limiting instructions, if necessary.

Finally, the Defendants' application to bar Plaintiff "from using terminology and colloquialisms" contained in the last sentence of this Point is so vague that it is meaningless, and Plaintiff respectfully requests that the Court deny this part of the Defendants' motion.

## V.   THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM ELICITING TESTIMONY OR ARGUING ABOUT OTHER INSTANCES OF ALLEGED POLICE MISCONDUCT RELATED TO THE OCCUPY WALL STREET MOVEMENT

The Court should deny Defendants' broad application to preclude Plaintiff from eliciting testimony or arguing about police misconduct, including related to the Occupy Wall Street ("OWS") movement, for the reasons set forth in Point IV above, and for the following reasons. Notably, Defendants cite neither legal authority, nor examples from the record, to support their broad application to preclude testimony about any aspect of OWS. During Plaintiff's deposition, in addition to inquiring about the events of March 17, 2012 – including a "long day of marches" that came before - and Plaintiff's subsequent prosecution, Defendants questioned Plaintiff extensively about her history of attending demonstrations both prior to and after OWS, which covered dozens of protest actions, including questions about what "Occupy Wall Street" meant to her; and her interactions with police, including whether she had been obedient to police orders, before and after her March 17, 2012 arrest.

As to Defendants' second argument, there is no reason to believe that Plaintiff will seek to "highlight or dramatize any tensions between police and protesters" during OWS. However, there were such tensions, including leading up to and in connection with Plaintiff's arrest and prosecution. The fact that such tensions escalated into injuries to protesters was a major factor in Plaintiff's acting as a volunteer medic during OWS. Relatedly, the Court should reject Defendants' assertion that OWS "has no bearing

whatsoever on plaintiff's claim for denial of a fair trial" and attempt to preclude her from testifying in ways Defendants might think "glamorize" the movement. Therefore, some testimony about OWS, and Plaintiff's experiences regarding OWS, including some testimony that Defendants might think "glamorizes" the movement and/or that portrays tensions between police and OWS protesters, will provide necessary background regarding Plaintiff's conduct and decisions.

On Defendants' third argument, the Court should deny Defendants' application to preclude all "evidence or testimony about defendants' role in the Occupy Wall Street movement" [sic] because not all such evidence would be irrelevant or unduly prejudicial. For example, testimony and evidence about Defendants' prior experiences in connection with policing protests, making and/or supervising mass arrests, and engaging in and/or supervising in mass arrest processing, and/or related prosecutions, whether in connection with OWS or not, are at least potentially relevant, and not unduly prejudicial.

## VI.    THE COURT SHOULD PERMIT PLAINTIFF TO TESTIFY THAT SHE WAS IN ZUCCOTTI PARK FOR THE OCCUPY PROTEST ON THE DATE OF INCIDENT BECAUSE SHE WAS EXERCISING HER FIRST AMENDMENT RIGHTS

Defendants' argument on this point is a non-sequitur and the Court should deny their application. First, Defendants argue that because Plaintiff voluntarily withdrew her claims for First Amendment retaliation, she should be precluded from testifying that she was in the park to exercise her First Amendment rights. However, Plaintiff has no intention of claiming that the Defendants violated her First Amendment rights. And, as seen in Point I(A) above, Plaintiff does not oppose an appropriately limited instruction to the jury that her arrest was lawful. It does not follow, however, that Plaintiff should be prevented from explaining why she was in Zuccotti Park in the first place: in part, to exercise her First Amendment rights by

protesting and associating with the OWS protesters and by acting as a volunteer medic to support them (a further form of protest and/or association).

Second, Defendants' argument that "Plaintiff's actions as a protester do not have the tendency to make any fact more or less probable, is not of consequence and are irrelevant" is absurd, since Plaintiff was literally arrested at a protest, Defendants arrested her and others *en masse*, and then applied NYPD large-scale arrest processing processes employed at protests that resulted in the creation of the boilerplate OLBS narratives at issue in this case, including the one that ultimately resulted in the criminal charges Defendant Boyle lodged against Plaintiff.

Finally, Defendants argue that the jury will be confused by "[a]ny mention of plaintiff's exercising First Amendment rights," but there is no basis to expect that this will be the result, especially since Plaintiff will not claim at trial that her First Amendment rights were violated, and in light of the fact that the Court will likely instruct the jury that Plaintiff's arrest was lawful, and because the Court can issue any limiting instruction that might become necessary.

## VII.   EVIDENCE AND TESTIMONY PERTAINING TO THE ARRESTS OF NON-PARTIES BY NON-PARTY OFFICERS IS RELEVANT AND THE COURT SHOULD PERMIT PLAINTIFF TO INTRODUCE SUCH EVIDENCE AT TRIAL

The Court should permit Plaintiff to introduce Pls. JPTO Exs. QQ-AAAA at trial because these documents are official NYPD or DANY records documenting relevant statements. The documents consist of: Just over 50 OLBS Reports created by Defendants (including Defendant Blanco, *who approved and signed off on all of them*); DANY Decline to Prosecute ("DP") Forms covering 23 of the arrests in those OLBS Reports; and DA Datasheets and Criminal Court Complaints memorializing statements made to DANY covering the remaining arrests made by Defendants or the other third-party officers who were

supervised by Defendant Blanco and assisted by Defendants Albano and/or O'Donnell in creating their OLBS Reports[3]; as well as the relevant memo book entries of those officers.

All of those records are relevant under Fed.R.Evid. 401. This Court has repeatedly that the OLBS Reports are relevant, s*ee, e.g., Marom v City of NY*, No. 15-CV-2017 (PKC)(SN), 2016 US Dist LEXIS 165536, at *7 (SDNY Nov. 30, 2016), *aff'd, Marom v Esposito*, No. 15-cv-2017 (PKC)(SN), 2017 US Dist LEXIS 60969, at *7 (SDNY Apr. 21, 2017), and most recently, in the Court's decision determining Defendants' summary judgment motion, which discusses Defendants' OLBS Reports and Criminal Court Complaints, as well as the third-party OLBS Reports, *see, generally, Marom v. Blanco*, No. 15-cv-2017 (PKC)(SN), 2019 US Dist LEXIS 124343 (SDNY July 25, 2019). The records in question are not hearsay under Fed. R. 801 to the extent that they are not being offered for the truth of the statements contained in them (except perhaps to the limited extent that some of the records may be offered to establish the timing of certain events, such as interviews with DANY prosecutors, the times Criminal Court Complaints were signed, or the times DP Forms were created). And to the extent that some of the records may contain statements that would otherwise constitute hearsay, they would be admissible under an exception such as Fed.R.Evid. 801(d)(1), 803(6), or 803(8).

Defendants argue that the officers who created the arrest processing paperwork had "no personal involvement in plaintiff's arrest," but that does not mean those officers lack relevant testimony about Plaintiff's arrest processing, related NYPD policies, procedures, and training and whether they were followed, or other permissible areas of inquiry. Defendants also express concern that Plaintiff will somehow unfairly "harass" and "embarrass" the

---

[3] The DP Forms, DA Data Sheets, and Criminal Court Complaints were first produced by DANY pursuant to a subpoena and subsequent litigation, then re-produced by Defendants and utilized in discovery and summary judgment practice in this case. *See, e.g.,* Dkts. 133, 135.

Defendants with these official NYPD documents. Those concerns are not fleshed out and are at any rate unfounded.

As detailed more clearly in Plaintiff's papers in opposition to Defendants' summary judgment motion, taken together with each other along with Defendants' testimony, the testimony of third-party witnesses, and other evidence (such as the NYPD Patrol Guide provisions governing the creation of such paperwork), the documents provide critical both direct and circumstantial evidence to support Plaintiff's claims that Defendants fabricated material testimony by creating boilerplate testimony and that certain false statements Defendant Boyle made against Rocek were included by design and not as the result of mistake or some other innocent reason. Additionally, Plaintiff may introduce some of these documents to attack Defendants' credibility – a completely legitimate endeavor in a trial in which much will hinge on credibility.

With respect to Defendants' remaining arguments, as seen in Point I(C) above, the only testimony concerning the arrests of non-parties that Plaintiff seeks to elicit is relevant and the Court should not preclude Plaintiff from presenting it.

## VIII.  THE COURT SHOULD NOT PRECLUDE PLAINTIFFS FROM PRESENTING CRITICAL VIDEO EVIDENCE TO THE JURY BASED ON THE TITLES OF THE VIDEO FILES (WHICH CAN BE CHANGED) OR FOR ANY OTHER REASON

The four videos Plaintiff seeks to admit portions of all depict Plaintiff and/or Plaintiff's arrest. Defendant Boyle identified herself in specific parts of those videos, and could not identify herself in other parts. Notably, she could not identify herself arresting Plaintiff; and she did identify herself elsewhere, doing other things, shortly after she claims she arrested Plaintiff. Their relevance is clear. Defendants' only argument that the videos should not be introduced has to do with the purported prejudice that would come from the jury's viewing the titles of the video files. Those titles are simply the names that the videos had when they

were taken from the internet links that the parties exchanged in discovery. First, Plaintiff respectfully submits that the titles are not unduly prejudicial. The parties employed those same titles during deposition questioning, so keeping the titles would help create clarity in the event the deposition transcripts are used to refresh Boyle's, or any other witness's, recollections or to impeach them. And changing the titles might create confusion and practical trial management problems as a result. Rather than precluding the jury from seeing the titles, the Court could issue an appropriate limiting instruction.

That said, it would be a simple matter to change the names of the digital files to any other names, so that the new names would appear in the videos and in Plaintiff's proposed stills; and to change the attendant names of the exhibits in the JPTO accordingly. Therefore, if the Court is convinced by Defendants' arguments about prejudice, there is a simple work-around that will allow Plaintiff to present her case in a manner that raises none of Defendants' articulated concerns.

## IX.   THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM INTRODUCING CERTAIN EVIDENCE THAT DEFENDANTS CLAIM WAS NOT PRODUCED DURING DISCOVERY IN THIS CASE

The Court should reject Defendants' argument that it would "violate the principle of fairness and prejudice Defendants" to allow Plaintiff to introduce Pls. JPTO Exs. B, S-EE, and UU[4] into evidence because they were allegedly not produced "in this case".  Plaintiff's proposed exhibits B and S-BB were all produced by the parties in *Caravalho* and utilized in depositions in this related case consistent with the Court's directions that discovery proceed in a coordinated fashion, as described in Point I(C) above. Additionally, Plaintiffs submitted some or all of those records as part of Plaintiffs' opposition to Defendants' summary judgment

---

[4] Document UU was meant to be Defendant Boyle's Memo Book, which counsel had forgotten Defendant Boyle had lost.

motion in this case (and, in many cases, in connection with *Caravalho,* including in connection with the Second Circuit appeal).

The Defendants cite *Demirovic v. Ortega*, 2017 U.S. Dist. LEXIS 170206, at *29 n.24 (E.D.N.Y. 2017) for their argument that the previously produced *Caravalho* documents – which were the subject of extensive litigation and testimony in both the *Caravalho* and *Marom* cases and which the Defendants do not dispute receiving – should not be used at trial.  But, in *Demirovic*, the parties disagreed about whether the documents had ever been produced at all. *Id.* ("At the hearing, the parties appeared to disagree about whether the defendants ever produced certain documents to the plaintiffs."). Here, there can be no disagreement about whether the documents were produced. Defendants now seek to complain they were not produced *again, separately, with separate Bates Numbers,* in this litigation.

Finally, Plaintiff's proposed exhibits CC-EE are sections of the NYPD Patrol Guide that were produced or referred to in discovery, including in some Defendants' and third-party witnesses' depositions. These records are NYPD documents that were, upon information and belief, in effect in March of 2012. The Defendants would suffer no prejudice or undue surprise by way of Plaintiff's use of these documents at trial. These documents are relevant and admissible, including for the reasons set forth in Point XI below. To the extent Defendants claim they cannot authenticate such records, Plaintiff respectfully submits that Defendants should produce versions of those same Patrol Guide sections that they agree were in effect in March of 2012.

## X.   THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE REGARDING HER TORN COAT

Plaintiff attended the protest wearing a coat with red tape affixed on the outside in a red cross identifying herself as a volunteer street medic. The officers who arrested Plaintiff and transported her to the NYPD vehicle in which she was lodged before transportation to

the NYPD precinct where the arrest processing occurred – who were not Defendant Boyle - physically touched her and manipulated her body in such that they tore her coat "at the right lapel, under the arm of the left sleeve, and nearly all the way around the right sleeve." (*See, e.g.,* Plaintiff's Affirmative 56.1, (Dkt. 157), Paragraph 47 (citing Rocek deposition testimony). Plaintiff brought the coat to her deposition and gave evidence about the coat and how it was damaged for what amounted to several pages' worth of transcribed testimony. Additionally, Plaintiff took a picture of her torn coat shortly after her release, which Plaintiff seeks to admit. Plaintiff's coat is visible in the videos depicting Plaintiff's arrest.

That Plaintiff is not seeking damages for her torn coat is irrelevant. Defendant Boyle did not damage her coat and the coat was damaged in the course of Plaintiff's arrest, which this Court has decided was authorized. So, Plaintiff cannot seek such damages related to her fair trial rights claim.

That Plaintiff was wearing a coat with a big, red "X" on it, that the coat is identifiable in the video, as well as that, and the manner in which, the coat was damaged in the course of Plaintiff's arrest – and not by Defendant Boyle – are all reasons that the coat, the photograph of the coat, and testimony about the coat, are relevant. Finally, depending on how the evidence plays out at trial, Plaintiff may seek to admit certain discrete statements she made regarding the coat on Facebook, for example as prior consistent statements under Fed. R. Evid. 801(d)(1)(B). Based on the foregoing, this Court should deny Defendants' application.

## XI.    THE COURT SHOULD PERMIT PLAINTIFF TO OFFER EVIDENCE CONSISTING OF AND CONCERNING NEW YORK CITY POLICE DEPARTMENT PATROL GUIDE PROVISIONS

In addressing a similar motion *in limine* in *Williams v. City of New York*, 11 CV 5202 (JGK) the Honorable John G. Koeltl stated that if what an officer "did was inconsistent with the regular practice in the patrol guide, you would think that the jury should be allowed to take

15

that into consideration for the credibility of whether the officer did what he now claims he did." See *Williams* Transcript, Exhibit 3 to Memorandum of Law In Support of Plaintiff's Motion *In Limine,* at 44:3-14. Simply put, "[t]he Patrol Guide has frequently been accepted as evidence of the standard of care to be exercised by a police officer." *Smith v. City of New York*, 2015 U.S. Dist. LEXIS 102669, *10, 2015 WL 4643125 (S.D.N.Y. Aug. 5, 2015) (citing cases); *see also Nnodimele v. Derienzo*, 13 CV 3461(ARR)(RLM), 2016 WL 3561708, at *14 (E.D.N.Y. June 27, 2016); *Tardif v. City of New York*, 13 CV 4056,344 F Supp 3d 579, 608 (SDNY 2018) (denying nearly identical motion *in limine*); *Tardif v. City of New York*, 13 CV 4056, 2017 US Dist. LEXIS 135607, 2017 WL 3634612, at *6 (S.D.N.Y. Aug. 23, 2017); *accord, Gogol v City of NY*, 2017 US Dist LEXIS 221874, at *13 (SDNY Sep. 26, 2017); *Collado v. City of New York*, No. 11 CIV. 9041 (DAB), 2017 U.S. Dist. LEXIS 161094, 2017 WL 4533772, at *3 (S.D.N.Y. Sept. 27, 2017) (Batts, J.) (collecting cases).

In this case, whether the Defendants complied with the applicable Patrol Guide provisions, or other NYPD policies and procedures, is relevant to liability (in terms of the reasonableness and appropriateness of their conduct) as well as to their credibility and thus not subject to exclusion on a motion *in limine*. The Court addressed this very question at a Pre-Trial hearing in *Feeley,* ruling that Plaintiff would be permitted to make reference to City training, policies, and practices, and that the Court would give appropriate jury instructions. *See Feeley* Tr. at 36:11-24. Plaintiff respectfully submits that the Court should do the same here.

## XII.   THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE PRODUCED BY DEFENDANTS CONSISTING OF NYPD SUMMARIES OF THE MARCH 17, 2012 ARRESTS MADE AT THE SAME TIME AND LOCATION AS PLAINTIFF'S AND PROCESSED ALONG WITH PLAINTIFF'S

The three documents identified by Defendants include two arrest summaries, including a spreadsheet-type record called a "Mass Arrest Report", created by the NYPD to

document the time and location of the arrests as well as the officers who processed the arrests and other, similar information, as well as a NYPD record created to summarize arrest-related information, as well as the identities of certain NYPD officers who were present in connection with or informed about the March 17, 2012 arrests. (Pls' JPTO Exhs. A, B, and X). This Court has found that the Mass Arrest Report was relevant, s*ee Marom v City of NY*, No. 15-CV-2017 (PKC)(SN), 2016 US Dist LEXIS 165536, at *7 (SDNY Nov. 30, 2016), *aff'd, Marom v Esposito*, No. 15-cv-2017 (PKC)(SN), 2017 US Dist LEXIS 60969, at *7 (SDNY Apr. 21, 2017). The Mass Arrest Report and other records are admissible as business records under Fed.R.Evid. 803(6) and public documents under Fed.R.Evid. 803(8). Additionally, contrary to Defendants' suggestions, the records can be authenticated under Fed. R.Evid. 901, including, for example, 901(b)(1), 901(b)(4), or 901(b)(7). The Court should therefore deny this prong of Defendants' application.

## XIII.  THE COURT SHOULD PERMIT PLAINTIFF TO INTRODUCE THE LEGAL BUREAU OLBS NARRATIVE PRODUCED IN DISCOVERY BY FORMER DEFENDANT STEVEN VALENTINE AT TRIAL

Defendants argue that the highly relevant Legal Bureau OLBS narrative, Pls. JPTO Ex. FF, should be excluded from evidence at trial because it "is not self-authenticating" and because it "constitutes inadmissible hearsay." The Court should reject both arguments.

Defendants do not dispute the relevance of this document. Numerous witnesses testified they were provided with either information from or a written narrative from the NYPD Legal Bureau to use in creating their OLBS Reports. Pls. JPTO Ex. FF was marked with and still bears the exhibit designation of "Valentine1", because it was marked as such at the deposition of NYPD Police Officer Steven Valentine *after it was produced that same day by his attorneys – the defense attorneys in this case*. Valewntine was questioned about this document at this deposition, and relevant excerpts are attached as "Appendix A". They show, *inter alia,* that

Defendants produced the document by e-mail the morning of the deposition, and that Valentine testified that a Legal Bureau attorney was the source. *see* Appendix A at 14-16, 21-23, and 109-111; *see also Marom v. Blanco*, 2019 U.S. Dist. LEXIS 124343, *14, 16 (S.D.N.Y. July 25, 2019).

Authentication under FRE 901(a) does not erect particularly high hurdle. *White v. Lenox Hill Hosp.*, 65 Fed. R. Evid. Serv. (CBC) 709, 2004 U.S. Dist. LEXIS 20679 (S.D.N.Y. Oct. 18, 2004). Thus, the context of this document (Pls. JPTO Ex. FF a/k/a "Valentine1"), the manner of its production, combined with the deposition testimony of Valentine and Albano, are sufficient to authenticate it. Rule 901(b)(4) of the Federal Rules of Evidence allows the authentication of documents via circumstantial evidence coupled with distinctive characteristics. *See* for example *Law Co. v. Mohawk Constr. & Supply Co.*, 577 F.3d 1164 (10th Cir. 2009) ("On plaintiff contractor's motion for summary judgment, defendant subcontractor's submitted exhibits may have been sufficiently authenticated for purposes of Fed. R. Civ. P. 56(c)—taking into consideration appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances, pursuant to Fed. R. Evid. 901(b)(4)—even if documents did not appear on contractor's letterhead."). "Circumstantial evidence may be used to establish authenticity; and proof of authenticity need not be beyond a reasonable doubt." *United States v. Sinclair*, 433 F. Supp. 1180 (D. Del. 1977).

Equally baseless are Defendants' contentions that this document constitutes inadmissible hearsay, since Plaintiff is not seeking to admit the statements contained therein for the truth of the matters asserted. Even assuming, *arguendo,* that the document was or hearsay, the document would be admissible under a hearsay exception, for example Fed.R.Evid. 801(d)(2) or Fed.R.Evid. 803(6).

In sum, Defendants themselves produced this document, multiple witnesses provided abundant testimony to contextualize and authenticate this document, and Plaintiff does not seek to admit this document for the truth of the matters asserted therein. Officer Valentine is free to testify at trial consistent with his deposition testimony that he does not know who drafted the narrative on the scrap paper, but the jury should see this evidence. Accordingly, Plaintiff respectfully requests that the Court allow Plaintiff to admit this document into evidence at trial.

## XIV.   THE COURT SHOULD PERMIT PLAINTIFF TO INTRODUCE DOCUMENTS FROM THE OFFICE OF THE DISTRICT ATTORNEY, INCLUDING THE ACCUSATORY INSTRUMENT DEFEDANT BOYLE LODGED AGAINST HER

Defendants identify only one document – Pls. JPTO Ex. MM – in this section of their motion. Accordingly, the Court should deny that portion of Defendants' motion asking the the Court preclude the Plaintiff from introducing documents of the office of the district attorney generally, since the Defendants to not specify which documents they want precluded.

Pls. JPTO Ex. MM is a criminal complaint which was unquestionably (i.e. it says it right on the face of the document) made on the basis of sworn statements made by Defendant Boyle to DANY about Plaintiff, and which was signed by Defendant Boyle under oath and penalties of criminal prosecution. This document memorializes certain false statements Defendant Boyle provided to DANY, based on which Plaintiff was prosecuted, about her own observations and actions – the types of statements that can form the basis of a fair trial rights claim. *See, e.g., Marom v. Blanco*, 2019 U.S. Dist. LEXIS 124343, *19-20, 2019 WL 3338141 (S.D.N.Y. July 25, 2019).

Defendants also argue that the Criminal Complaint should not be admitted at trial because they jury may "give the statements in the document more credence than appropriate." This is a perplexing argument, since Plaintiff certainly does not intend to argue to the jury that

Defendant Boyle's statements in the Criminal Complaint should be credited for their truth at all. In that vein, Plaintiff does not intend to seek to admit the Criminal Complaint for the truth of the matters asserted therein, but rather to establish simply that Boyle made the statements under oath and forwarded them to DANY. "If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." *United States v. Ulbricht*, 858 F.3d 71, 111 (2d Cir. May 31, 2017). Accordingly, Defendants are incorrect that this document constitutes hearsay since Plaintiff intends to offer the document to show only that Boyle made the statements therein which formed the basis of Plaintiff's prosecution, not for the truth of those statements.

The Criminal Complaint is also not hearsay under Rules 801(d)(2), 803(6), and 803(8). The Criminal Complaint is not hearsay under Rule 801(d)(2) because it is an opposing party's statement. The Criminal Complaint is also not hearsay under 803(6) and 803(8) because it is a business record and public record. Defendant Boyle's recounting of what she claims happened giving rise to Plaintiff's arrest is set forth in the Criminal Complaint which was provided to FANY and filed in New York City Criminal Court. The Criminal Court Complaint itself it admissible as a business record under Federal Rule of Evidence 803(6) and as a public record under Federal Rule of Evidence 803(8). *See, e.g., Jenkins v. City of New York*, No. 10 CV 4535 (AJN), 2013 U.S. Dist. LEXIS 33331, 2013 WL 870258, at *2 (S.D.N.Y. Mar. 6, 2013) ("[E]ntries in a police report based on an officer's own observations and knowledge may be admitted as business records . . . [and] may also be considered public records . . . ."); *Woods v. City of Chicago*, 234 F.3d 979, 986 (7th Cir. 2000)(finding a criminal complaint to be admissible under the business records exception).

While the statements made by Defendant Boyle in her sworn criminal complaint are not admissible for their truth, they are admissible to establish that she fabricated evidence in

the form of false statements and forwarded those statements to DANY. Accordingly, the Court should deny this prong of Defendants' application.

## XV. THE COURT SHOULD NOT PRECLUDE PLAINTIFF FROM INTRODUCING HER JOURNAL ENTRY REGARDING THE INCIDENT, OR PARTS THEREOF

Plaintiff created certain a journal within a relatively short period of time after her release from custody that contains, among other things, accounts of events that occurred leading up to her arrest, and after her arrest during her arrest processing. Although such prior out-of-court statements made by the declarant and offered for the truth of the matter asserted would not be inadmissible hearsay, the Court should not preclude their admissibility outright. For example, they may be admissible under Fed. R. Evid. 801(d)(1)(B)(i) or (ii) as prior consistent statements; under Rule 803(1) as a present sense impression; or under Rule 803(5) as a recorded recollection. Although Defendants complain they cannot read Plaintiff's handwriting, they had the opportunity to have Plaintiff read the entry at her deposition, or otherwise to conduct discovery about the entry, which they did not avail themselves of. At this stage, the Court should deny Defendants' application.

## XVI. THE COURT SHOULD PERMIT PLAINTIFF TO INTRODUCE DEFENDANT ALBANO'S AND O'DONNELL'S OVERTIME REPORTS AND TRACKING SHEETS

The Defendants do not explain how it would be prejudicial for Plaintiff to introduce evidence of Albano's and O'Donnell's overtime reports and tracking sheets.  To be sure, this information is certainly relevant and tends to prove Plaintiff's claims that O'Donnell and/or Albano were on duty during the arrest processing and directly participated in depriving Rocek of her fair trial rights.  In Defendants' request to preclude Plaintiff from introducing this evidence, they do nothing more than protest that the overtime reports and tracking sheets "would only be used to attempt to prove that either or both of these officers were present at

arrest processing on March 17-18, 2012." However, is it axiomatic that evidence is not properly precluded from admission at trial simply because it tends to prove a particular party's (in this case, Plaintiff's) claims or defenses. In fact, in considering the record evidence – including both Defendants' inability to remember whether one or the other participated in the relevant arrest processing, and other witnesses' testimony about which Legal Bureau attorney was involved - and partially denying Defendants' motion for summary judgment Your Honor noted: "[a] reasonable jury could also conclude that either or both O'Donnell and Albano 'directly participated' in depriving Rocek of her fair trial rights." *Marom v. Blanco*, 2019 U.S. Dist. LEXIS 124343, *34, 2019 WL 3338141 (S.D.N.Y. July 25, 2019).   Thus, Plaintiff respectfully requests that the Court deny this aspect of Defendants' motion.

## XVII.  THE COURT SHOULD PERMIT PLAINTIFF TO QUESTION DEFENDANTS ABOUT AND OFFER EVIDENCE OF CERTAIN PRIOR LAWSUITS AGAINST THE OFFICERS (UNRELATED TO THE MARCH 17, 2012 INCIDENT)

The Court should permit Plaintiff to introduce evidence regarding certain prior lawsuits against the Defendants and third-party NYPD trial witnesses.  The Defendants ask the Court to preclude Plaintiff from doing so, but the Defendants do not identify which lawsuits they seek to have precluded.[5]  There is no *per se* ban in this Circuit on admission of

---

[5] Notably in this connection, after the Court granted Plaintiff's motion to amend to add Defendants Albano and O'Donnell as parties, and even after the Court denied Defendants' motion for summary judgment with respect to them, Defendants did not supplement their interrogatory responses, or document responses, to include written interrogatory responses, or document discovery, from or in connection with Albano or O'Donnell at all, let alone to provide information about and/or records bearing on potential prior bad acts. To this day, Defendants have not responded to Plaintiff's interrogatories and document demands requesting that Defendants identify and produce documents about their prior history of potential "bad acts" in the form of prior NYPD disciplinary matters, including Internal Affairs Bureau ("IAB") and Civilian Complaint Review Board ("CCRB") matters, and potentially relevant lawsuits. The disclosure of much of that information is required under the so-called 1983 Plan codified in Local Civil Rule 83.10, and Plaintiff sought related discovery from all Defendants through written interrogatories and document demands propounded in this case.

prior lawsuits against police officers in federal civil rights trials.  Many courts in this Circuit have allowed such evidence to come in at trial when it is relevant and probative, which "depends on the nature and substance of such actions, including whether the action is sufficiently related to the instant case, as well as the purpose for which such evidence will be used at trial." *Skinner v. City of New York*, 2017 U.S. Dist. LEXIS 104650, *11-12 (E.D.N.Y. April 7, 2017). "[L]awsuits that are factually similar and are introduced for a purpose other than to demonstrate the defendants' propensity for specific behavior, may be properly introduced." *See, e.g., Bourguignon v. Lantz*, No. 05-cv-0245, 2008 U.S. Dist. LEXIS 68242, 2008 WL 4183439, at *1 (D. Conn. September 10, 2008) (denying motion to exclude evidence of other factually similar lawsuits that was not being offered to show propensity). "Under the inclusionary approach followed in this circuit, evidence of prior crimes, wrongs, or acts is admissible for any purpose other than to show a defendant's criminal propensity, as long as it is relevant to some disputed issue in the trial and satisfies the probative-prejudice balancing test of Fed. R. Evid. 403." *United States v. Brennan*, 798 F.2d 581, 589, 1986 U.S. App. LEXIS 28086, *24 (2d Cir. August 11, 1986)(internal quotation marks and citations omitted). Courts in this Circuit have admitted such evidence to show "pattern, intent, [and] absence of mistake." *Ismail v. Cohen*, 899 F.2d 183, 188, 1990 U.S. App. LEXIS 4669, *17 (2d Cir. 1990).

As seen above, Defendants have not identified any lawsuit(s) they seek to preclude testimony about. However, there are some facts about similar lawsuits already in the record[6]

---

[6] For example, although Defendants Albano and O'Donnell were not parties at the time, the First Amendment Complaint ("FAC", Dkt. 21, Paragraph 26, at pp. 8-9) identifies several lawsuits in which Albano or O'Donnell were named as Defendants, and in which significant discovery was conducted, including depositions in which, upon information and belief, they gave testimony relevant to policing demonstrations, large-scale arrests at demonstrations, and processing such arrests, involving claims that they were involved in assisting NYPD officers in creating OLBS reports and/or Criminal Court Complaints that contained false statements.

or otherwise readily available through a *Lexis* search. Defendant Albano has been sued repeatedly for allegedly participating in the fabrication of evidence in the form of false statements against protesters in connection with the so-called "RNC" cases and Critical Mass bicycle ride" cases referred to in the FAC. *See, e.g., MacNamara v. City of New York*, 04 Civ. 9216 (RJS) (JCF), 2007 WL 3196295, at *1-2 (S.D.N.Y. Oct. 30, 2007); *MacNamara, et al. v. City of New York*, 04 Civ. 9216 (RJS) (JCF), 2007 WL 755401, at *8 (S.D.N.Y. Mar. 14, 2007); *Schiller, et al. v. City of New York, et al.,* 04 Civ. 7922 (RJS) (JCF), 2008 WL 200021 at *2-5 (S.D.N.Y. January 23, 2008). Defendant Albano was deposed in those cases. Similarly, Defendant O'Donnell was previously sued in *Arbuckle v. City of New York*, 2016 U.S. Dist. LEXIS 136857, *1, 2016 WL 5793741 (S.D.N.Y. September 30, 2016), a case stemming from an OWS protest in which Defendant O'Donnell was involved in arresting one Plaintiff and in which, similar to this case, in denying Defendants' motion to dismiss with respect to Defendant O'Donnell, the Court determined that Plaintiffs had sufficiently alleged his personal involvement in created false paperwork containing false information. *Id.* at *40. Defendant O'Donnell was also sued in *Holmes v. City of New York*, 2018 U.S. Dist. LEXIS 53419 (S.D.N.Y. March 19, 2018) for civil rights violations stemming from an OWS protest in a case involving fabricating statements against a protester, based on which she was prosecuted. (*Holmes* was also specifically mentioned in the FAC in this case, Dkt. 21, Paragraph 26, at p. 9). Upon information and belief, substantial discovery, including deposition testimony, was conducted in that case.

In this case, Plaintiff could seek to question Albano and/or O'Donnell in appropriately limited ways about those cases and/or relevant facts that emerged in connection with those cases for any legitimate reason, such as to demonstrate an absence of mistake and/or to prove intentional conduct in this case under Rule 404(b). Plaintiff lists these cases here as mere

examples of lawsuits she may seek to inquire about at trial since the Defendants did not identify which lawsuits they would seek to exclude and because, with respect to at least Defendants Albano and O'Donnell, Defendants have not provided relevant discovery. Instead, the Defendants ask the Court to apply an across-the-board, *per se* rule against admitting any testimony about such lawsuits – a rule which does not exist in the Second Circuit. The Court should deny this prong of Defendants' application.

## XVIII. PLAINTIFF SHOULD BE PERMITTED TO SUGGEST A DOLLAR AMOUNT TO THE JURY

The Second Circuit long ago rejected a *per se* prohibition on counsel suggesting a specific sum of damages. *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 912 (2d Cir. 1997). While such a practice is disfavored, the district courts retain the discretion as to whether to allow counsel to reference specific figures or give cautionary instructions should they allow the parties to discuss concrete numbers. *Id.*; *Edwards v. City of New York*, 2011 WL 2748665, at *2 (E.D.N.Y. July 13, 2011) (allowing counsel to suggest a dollar figure but instructing the jury that such a recommendation is neither evidence nor the law). At this stage of the proceedings, Plaintiff asks that the Court either grant her the right to suggest a figure to the jury, or defer ruling until the Court has read the charge to the jury. How the Court ought to exercise its discretion with respect to this question would be better resolved after the Court has heard the evidence and the issues before the jury are more clearly and concretely established. At that point, the Court will have the benefit of an actual record upon which it can rely in deciding whether to permit or preclude plaintiff from suggesting a specific dollar amount or range during closing arguments. Further, the Court may not have finalized the jury charge until the close of trial. Particularly if the Court decides to include in the charge an instruction on nominal damages (to which Plaintiff has objected and would object), Plaintiff respectfully submits that her counsel should be allowed to suggest a dollar amount to the jury.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motions *in limine*.

DATED:        February 21, 2020

Brooklyn, NY

/S/

_____

Gideon Orion Oliver
*Attorney for Plaintiff*
Miriam Rocek
277 Broadway, Suite 1501
New York, NY 10007
Tel: (646) 263-3495
Fax: (646) 349-2914
Email: gideon@gideonlaw.com

/S/

_____

Jessica Massimi
*Attorney for Plaintiff*
Miriam Rocek
99 Wall Street, Suite 1264
New York, NY 10005
jessica.massimi@gmail.com
646-241-9800